Honorable Marsha J. Pechman
Honorable Theresa L. Fricke

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEREK TUCSON, ROBIN SNYDER,
MONSIEREE DE CASTRO, and ERIK
MOYA-DELGADO,

                  Plaintiffs,

       vs.

CITY OF SEATTLE, ALEXANDER
PATTON, TRAVIS JORDAN, DYLAN
NELSON, JOHN DOES (#1-4) AND JANE
DOES (#1-2)

                Defendants.

No.    2:23-cv-00017 MJP TLF

**DEFENDANTS' MOTION TO DISMISS**

NOTE ON MOTION CALENDAR: April 14, 2023

## I.    INTRODUCTION & RELIEF REQUESTED

Seattle Municipal Code 12A.08.020 ("Property Destruction" ordinance) prohibits the damage or defacement of another's property. Plaintiffs claim that prohibition, both on its face and as applied, violates their First Amendment right to chalk political messages on a concrete block wall that was temporarily erected around the Seattle Police Department' (SPD's) East Precinct building. They also assert claims under the Fourteenth and Fourth Amendments. Defendants City of Seattle (the City),

MOTION TO DISMISS - 1
2:23-cv-00017 TLF

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Alexander Patton, Travis Jordan, and Dylan Nelson (together, the Defendants), move under Federal Rule 12(b)(1) and 12(b)(6) for an order dismissing Plaintiffs' complaint with prejudice.

## II.      STATEMENT OF FACTS

### A.  Plaintiffs' factual allegations.

Over the course of nearly 30 minutes, Plaintiffs were all arrested for violating the Property Destruction ordinance on January 1, 2021. Compl. ¶¶ 1.4, 4.3, 4.10, 4.12, and 4.14. Plaintiffs allege that they were arrested after writing messages such as "peaceful protest," "Abolish SPD," and "Kill KKKops" on a wall made out of concrete blocks, called eco-blocks, that had been erected by the City. Compl. ¶¶ 4.2, 4.3, 4.8, 4.10, 4.12, and 4.14.

Plaintiffs were apprehended, handcuffed, and transported to King County Jail. *Id.* ¶ 4.16. Plaintiffs assert that, under King County's Covid-19 policy at the time, the jail employees should not have accepted them for booking, because they had been arrested for a non-violent misdemeanor. *Id.* ¶¶ 4.17-18. However, high-level officials within SPD and the Mayor's Office had "used their official position to 'override'" King County's booking policy for protestors. *Id.* ¶¶ 4.20-21.

Plaintiffs further allege that the City has a 'long-established policy… to treat the use of sidewalk chalk as non-criminal." *Id.* ¶ 4.36. Plaintiffs contend that their arrests and bookings for writing in charcoal on the wall evince discriminatory and retaliatory enforcement. *Id.* ¶ 4.40. Plaintiffs subsequently filed this lawsuit.

### B.  The Property Destruction ordinance at issue.

The version of the Property Destruction ordinance, in effect on January 1, 2021 (old version), prohibited damaging or alteration of another's property. Exhibit A to Declaration of Kerala T. Cowart ("Cowart Dec.") (text of old version.) Subsection A(1) of the old version made it a crime if a person "[i]ntentionally damages the property of another." Subsection A(2) of the old version prohibited

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

different methods of altering the surface of another's property; it stated that "[a] person is guilty of property destruction if he or she…writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person." SMC 12A.08.020(A)(2). It is this provision that Plaintiffs were arrested for violating. Property destruction is a gross misdemeanor. SMC 12A.08.020(C). It is not, however, destruction of property under subsection B of the old version, where a person "reasonably believed that he had a lawful right to damage such property," or where a person "had obtained express permission of the owner." SMC 12A.08.020(B).[1]

On March 14, 2023, the City amended the challenged aspects of the ordinance to, among other reasons, mitigate possible legal risk in this lawsuit and moving forward (the new version). Exhibit B to Cowart Dec. (certified copy of new version of ordinance). The new version makes two changes. First, the property owner's permission or lack therefor is now an element, not an affirmative defense. It also added the word "intentionally" to make the *mens rea* requirement explicit for violations of both A.1 and A.2.

### III.    APPLICABLE LEGAL STANDARD

A party may, by motion, assert the defense that Plaintiff has failed to state a claim upon which relief can be granted, which "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). When a complaint pleads facts which are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of

---

[1] The provisions regarding affirmative defenses that Plaintiffs now challenge were adopted by the City Council in 1996. *See*, Ord. 118106.

MOTION TO DISMISS - 3
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1  entitlement to relief." *Id.*

2      In determining the plausibility of a claim, the court may not assume that Plaintiff can prove

3  facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. Cal.*

4  *State Council of Carpenters*, 459 U.S. 519, 526 (1983); *Jack Russel Terrier Network of N. Cal. v.*

5  *Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005). Additionally, unlike a complaint's factual

6  allegations, legal conclusions are not entitled to an assumption of veracity. *Iqbal*, 556 U.S. at 678

7  (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

8                                  **IV.    ARGUMENT**

9      Under the legal standard for a Rule 12(b)(6) motion, Plaintiffs' claims should be dismissed.

10  Plaintiffs' as-applied First Amendment claims fail because they are unsupported by the allegations in

11  the Complaint and are inconsistent with applicable law. Plaintiffs' selective enforcement claim

12  requires them to identify individuals similarly situated to them who were not arrested. *Hoye v. City*

13  *of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011). Plaintiffs have not, and cannot, meet this burden

14  because individuals who wrote on the sidewalk are not similarly situated to Plaintiffs, who wrote on

15  a wall. Plaintiffs' retaliatory arrest claim fails for the same reason (among other reasons) under *Nieves*

16  *v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

17      Plaintiffs' facial, overbreadth First Amendment claim (Compl. ¶¶ 5.2, 5.3) is moot. The  new

18  version of the Property Destruction ordinance makes the *mens rea* requirement explicit and also

19  makes the property owner's permission or lack thereof an element of the crime, rather than an

20  affirmative defense. In addition to being moot, this claim also fails because the new version of the

21  ordinance is not susceptible to an overbreadth challenge for two independent reasons: the new version

22  of the ordinance is not directed "narrowly and specifically at conduct commonly associated with

23  expression," and Plaintiffs have not alleged any realistic danger that the protected speech of third

MOTION TO DISMISS - 4
2:23-cv-00017 TLF

parties might be inhibited. *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996)). If this Court, nonetheless, conducts a facial overbreadth analysis, then the new version of the ordinance easily survives that test because it is a constitutional manner restriction.

Plaintiffs' facial, vagueness Due Process Clause claim (Compl. ¶¶ 5.5, 5.6) fails at the threshold question of standing. *Kashem v. Barr*, 941 F.3d 358, 376 (9th Cir. 2019). Moreover, their vagueness claim is precluded on the additional ground that the prohibited conduct in the ordinance is clear, and it provides adequate guidance to law enforcement authorities. *Grayned v. City of Rockford*, 408 U.S. 104, 108, (1972); *Hill v. Colorado*, 530 U.S. 703, 733 (2000).

Finally, Plaintiffs' Fourth Amendment claim (Compl. ¶ 5.7) fails because they do not allege that the officers lacked probable cause to arrest them. On the contrary, Plaintiffs' own allegations demonstrate that they violated the Property Destruction ordinance. Compl. ¶ 1.7. The presence of probable cause precludes Plaintiffs' claim. *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). As a result, the entirety of Plaintiffs' Complaint should be dismissed with prejudice.

**C. Plaintiffs' as-applied First Amendment claims of viewpoint discrimination (¶¶ 5.1, 5.4) fail as a matter of law.**

Plaintiffs' as-applied, First Amendment claim relies on two different theories: selective enforcement and retaliatory arrest. Neither is persuasive.

　　i.　<u>Plaintiff's claim of selective enforcement is unsupported by their allegations.</u>

Plaintiff asserts that Defendants selectively enforced the Property Destruction ordinance against them by arresting them because of the anti-police viewpoint they expressed. Compl. ¶¶ 5.1, 5.4. To prevail on a claim of selective enforcement,[2] Plaintiffs must establish "a pattern of unlawful

---

[2] Selective enforcement claims are "more commonly brought" under the Equal Protection Clause of the Fourteenth Amendment. *Hoye*, 653 F.3d at 855; *but see Menotti v. City of Seattle*, 409 F.3d 1113, 1146-47 (9th Cir. 2005) (applying the First Amendment). In any event, the legal analysis

favoritism." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 325 (2002). Establishing a pattern of unlawful favoritism requires showing that Plaintiffs were "prevented from speaking while someone espousing another viewpoint was permitted to do so." *McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014). "Plaintiffs are generally required to show the existence of an unconstitutional policy by extrapolating from a *series* of enforcement actions." *Hoye*, 653 F.3d at 855 (emphasis added).

Plaintiffs claim that Defendants have a policy that they do not enforce the Property Destruction ordinance against people using temporary chalk or charcoal who express pro-government or pro-police views, but they do enforce it against those who chalk anti-police views. Compl. ¶¶ 1.3, 4.36. Plaintiffs point to a series of incidents in which people who were expressing pro-police viewpoints were not arrested for writing pro-police messages on public sidewalks using chalk, despite acting in plain view of police officers. *Id.* ¶¶ 4.38-39. This is a false equivalency.

Even accepting all these facts as true, they establish a consistent enforcement policy—not a pattern of selective enforcement. Based on Plaintiffs' allegations, Defendants do not enforce the Property Destruction ordinance against people who chalk or mark *on the public sidewalks*. *Id.* ¶¶ 4.37-39. However, the arrests of Plaintiffs on January 1, 2021, were consistent with that alleged policy, because Plaintiffs were writing not on a public sidewalk but rather on a wall that the City had erected around the East Precinct building. *Id.* ¶ 1.4. The Complaint does not point to any other individual who was not arrested for marking on the East Precinct wall or even on any other public wall, fence, building or structure.[3] Therefore the Complaint fails to sufficiently allege that even as single "similarly situated"

---

does not differ. *Hoye*, 653 F.3d at 855 (discussing First Circuit precedent, stating that "any difference between these two approaches is, at least in this case, semantic rather than substantive.").

[3] Leave to amend on this point would be futile. Overcoming this defect is not a simple matter of amending Plaintiffs' Complaint. Even pointing to one or two individuals who fit this description would be insufficient, because it would not establish a pattern from which the court could infer the

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

individual expressing a different viewpoint was not arrested, and the Complaint does not even come close to alleging a pattern of inconsistent enforcement. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012) (plaintiffs must allege facts 'either anecdotal or statistical, demonstrating that similarly situated defendants . . . could have been prosecuted, but were not.").

The distinction between writing chalk messages on a public sidewalk versus a police station wall is not a small one. The public sidewalks have "immemorially been held in trust for use of the public... for purposes of communicating thoughts between citizens, and addressing public questions." *Hague v. Committee. for Indus. Org.,* 307 U.S. 496, 515 (1939). In contrast, courts repeatedly have held that walls and fences surrounding public buildings are not traditional public forums. *See, e.g., DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 964-67 (9th Cir. 1999) (fence around baseball field); *Rosebrock v. Beiter*, 788 F. Supp. 2d 1127, 1136 (C.D. Cal. 2011), *aff'd sub nom. Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014) (fence around Veterans Administration medical center  ); *Boyd v. City of Hermosa Beach*, No. CV 04-10528, 2007 WL 9717630, at *8 (C.D. Cal. Sept. 11, 2007) (exterior of police station).

Plaintiffs here appear to argue that the eco-block wall was an "open and traditional public forum" because it was "built over the public sidewalk." Compl. ¶¶ 1.3, 4.42. That does not make the wall a traditional public forum. The Supreme Court has explained that lampposts which are also located on city sidewalks, are not a traditional public forum. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 814 (1984). Thus, it upheld an ordinance forbidding the posting of signs on public property, including attaching political signs on lampposts. *Id.* at 815.

---

City's intent to discriminate. *See Hoye*, 653 F.3d at 855; *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("'[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'").

MOTION TO DISMISS - 7
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

In fact, the eco-block wall around the East Precinct was not even a limited or designated public forum—it was a non-public forum, where free speech rights are at their "are at their constitutional nadir." *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (citation omitted). As the Supreme Court has observed, government intent is the essential question in determining whether a designated public forum has been established: "The government does not create a public forum by inaction or by permitting limited discourse, but only by *intentionally* opening a nontraditional public forum for public discourse." *Cornelius v. NAACP Legal Defense and Educ. Fund*, 473 U.S. 788, 802 (1984). Plaintiffs do not allege that the City took any actions that would be interpreted as intentionally opening up the eco-block wall for public expression.

Because Plaintiffs' proposed control group is not "similarly situated in all respects . . .except for the attribute on which the selective enforcement claim rests," their claim fails at the first step and must be dismissed. *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1063 (9th Cir. 1995); *Taylor v. San Diego County*, 800 F.3d 1164, 1169 (9th Cir. 2015) (the two groups "must be similar in the respects pertinent to the State's policy."); *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1154 (9th Cir. 2007) (affirming dismissal and describing facts that needed to be similar).

ii.   <u>Plaintiffs' claim of retaliatory arrest is unsupported by allegations in the Complaint.</u>

Plaintiffs assert that Defendants arrested them in retaliation for their protected speech. Compl. ¶ 5.1. To state a First Amendment retaliation claim, a Plaintiff must allege "that (1) [he or she] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citation omitted). Plaintiff must show that the retaliatory animus was "a 'but-for' cause of their injury, meaning that the adverse action against the plaintiff would not have been taken absent the

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

retaliatory motive." *Nieves*, 139 S. Ct. at 1722. With a narrow exception for cases where the police typically exercise their discretion not to arrest for the offense at issue, a plaintiff asserting a retaliatory arrest claim "must plead and prove the absence of probable cause for the arrest." *Id.* at 1724, 1727. Plaintiffs claim here fails in two respects: First, they do not allege a lack of probable cause or an exception to that pleading requirement. Second, they do not allege retaliatory animus.

First, Plaintiffs do not allege that the officers lacked probable cause to arrest them for violating the Property Destruction ordinance. The allegations in the Complaint establish that probable cause did exist. Plaintiffs admit that they intentionally wrote on the eco-block wall and that the wall was a public structure owned by the City, meeting the elements of subsection A.2 of ordinance. *See* Compl. ¶¶ 1.4, 4.28. Therefore, to state a claim, Plaintiffs must allege that "the police typically exercise their discretion not to arrest for the offense at issue." *Nieves*, 139 S. Ct. at 1724, 1727. The Ninth Circuit has explained that this requires "objective evidence that [the plaintiff] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected [activity] had not been.'" *Thomas v. Cassia Cnty.*, No. 20-35862, 2022 WL 1223705, at *2 (9th Cir. Apr. 26, 2022). As described above in the section addressing selective enforcement, Plaintiffs do not meet this requirement.

Because Plaintiffs fail to plead an exception to the no-probable-cause requirement, this Court need not address the question of retaliatory animus. *Thomas v. Cassia Cnty.*, 2022 WL 1223705, at *2 (At this stage of the analysis, "the statements and motivations of the particular arresting officer are 'irrelevant.'" (quoting *Nieves*, 139 S.Ct. at 1727)); *cf. Johnson v. Cnty. of San Bernardino*, No. EDCV 18-2523-GW-AFMX, 2020 WL 5224350, at *19 (C.D. Cal. June 24, 2020) (analyzing *Nieves* and concluding that if the plaintiff does adequately plead lack of probable cause or an exception to that requirement, then the court proceeds to the "substantial motivating factor" step of the analysis).

MOTION TO DISMISS - 9
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

To the extent the Court does consider Plaintiffs' allegations of subjective motivation, their allegations as to this element do not meet the pleading standard for a 12(b)(6) motion.  As noted above, the Complaint must adequately allege a "'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves*, 139 S. Ct. at 1722. The complaint lacks any non-conclusory, factual allegations to suggest the officers who arrested plaintiffs were, in fact, motivated by the viewpoint of Plaintiffs' speech. Plaintiffs adequately allege that they were arrested because they wrote on the wall—an act that, by Plaintiffs' own admission, violated a City law. Compl. ¶ 1.4. However, the Complaint is devoid of facts to suggest that Plaintiffs were arrested based on the *viewpoint* of their speech—rather than based on the fact that they used charcoal to write on the precinct wall in violation of City law.[4] *See, e.g., Nieves*, 139 S. Ct. at 1724 ("protected speech is often a 'wholly legitimate consideration' for officers when deciding whether to make an arrest").

The only non-conclusory, factual allegation as to any City employee's subjective motives relates to a statement made by a lieutenant in a different precinct, two months *after* the incident in question. Plaintiffs allege that a lieutenant "threaten[ed] 'enforcement action' against members of the public for chalking the public sidewalk outside of SPD's West Precinct" on March 3, 2021. Compl. ¶ 4.41. That allegation has no bearing on the motivations of the individual, arresting officers named in this case. *Cf. Nieves*, 139 S. Ct. at 1728 ("[T]hat allegation about *Nieves* says nothing about what motivated *Weight*, who had no knowledge of Bartlett's prior run-in with Nieves." (emphasis in original)). The Complaint does not "allow[] the court to draw the reasonable inference" that the officers' retaliatory animus was the but-for cause of the arrests. *Iqbal*, 556 U.S. at 678.

---

[4] Plaintiffs also assert: "Defendants would not have arrested any Plaintiff but for their protected speech. The moving force and substantial motivating factor of each arrest was retaliation for protected speech." ¶ 5.1. That statement is simply a recitation of the elements of the claim, which this Court need not accept as true. *Twombly*, 550 U.S. at 555.

**D. Plaintiffs' facial, overbreadth First Amendment claim (¶¶ 5.2, 5.3) must be dismissed because it is moot.**

To mitigate risk in this lawsuit as well as potential future risk,[5] on March 14, 2023, the City amended the challenged provisions of the old version of the Property Destruction ordinance in two ways.  First, express permission of the owner is no longer an affirmative defense; instead, the lack of express permission is now an element of the crime. *See* Exhibit B. Second, the amendment clarifies the mental state requirement by making it explicit that conduct is prohibited only if done "intentionally." *Id.* The Mayor signed the legislation on March 14, 2023, making its effective date April 13, 2023.[6] *Id.*

Plaintiffs' facial overbreadth First Amendment claim is largely based on the fact that the owner's permission or lack of permission is an affirmative defense, not an element of the crime. *See* Compl. ¶¶ 1.2, 4.29, 5.3. Due to the amendment, that feature is no longer part of the ordinance. Such a responsive amendment renders any action challenging the legislation moot:

> [I]n determining whether a case is moot, we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot, unless there is a reasonable expectation that the legislative body will reenact the challenged provision or one similar to it.

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019). Accordingly, Plaintiffs' requests for injunctive and declaratory relief on their facial First Amendment claim are moot. Compl. ¶¶ 6.2, 6.4.

---

[5] As explained in the public hearing discussion, the City Attorney sponsored the bill to mitigate risk in light of the current lawsuit. The full City Council hearing at which the bill was discussed and approved is available at https://www.seattlechannel.org/FullCouncil/?videoid=x147844 The relevant discussion begins at approximately minute 23:58.

[6] This Court may take judicial notice of the legislation, because it is a "matter[] of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). As such, municipal ordinances "are proper subjects for judicial notice." *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (citing *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir.1977)).

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

If Plaintiffs are seeking compensatory damages for this claim, that must be dismissed as well, but for a different reason. Compensatory damages are unavailable as a matter of law for Plaintiffs' First Amendment overbreadth challenge:

> [D]amages… are unavailable for an overbreadth challenge. An overbreadth claim is essentially a claim that a statute may be constitutional as applied to the plaintiff but sweeps so broad as to unconstitutionally suppress the speech of others not before the court. This theory presupposes that the ordinance is constitutional as applied to the plaintiff. On an overbreadth challenge [plaintiff] would also be barred from collecting § 1983 damages which are available only for violations of a party's own constitutional rights.

*Outdoor Media Grp., Inc. v. City of Beaumont*, 506 F.3d 895, 907 (9th Cir. 2007) (citations and internal quotation marks). Thus, Plaintiffs' facial, overbreadth First Amendment claim must be dismissed as moot.

**E.  Any remaining non-moot aspects of Plaintiffs' facial, overbreadth First Amendment claim (¶¶ 5.2, 5.3) fail as a matter of law.**

Plaintiffs claim that the old version of the Property Destruction ordinance "prohibits substantially more protected speech than necessary relative to any potentially legitimate sweep, chilling and deterring each Plaintiff's protected speech." Compl. ¶ 5.3. The City's amendment eliminated all allegedly overbroad features of the ordinance except for one: Plaintiffs' objection that the ordinance makes no allowance for someone who had—or reasonably believed they had—the *implied* permission of the property owner. *Id*. ¶¶ 1.2, 4.30. This is the sole remaining non-moot aspect of Plaintiffs' facial, overbreadth First Amendment claim and the Defendants explain here why it too must be dismissed.

   i.   <u>The ordinance is not subject to a facial challenge because it is not directed narrowly and specifically at expression or conduct commonly associated with expression.</u>

Before a statute can be subject to a facial challenge under the First Amendment, there must be a threshold showing that the law has "'a close enough nexus to expression, or to conduct commonly

MOTION TO DISMISS - 12
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

associated with expression, to pose a real and substantial threat of . . . censorship risks[.]" *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759 (1988); *Roulette*, 97 F.3d at 305.

Plaintiffs here may argue that that the Property Destruction ordinance targets conduct commonly associated with First Amendment activities, because it prohibits writing, painting, marking, and drawing on property. But that argument would ignore the purpose of the ordinance, which targets conduct, not speech. Moreover, the ordinance is not directed narrowly and specifically at expression or at conduct commonly associated with expression, because it prohibits conduct only if it damages or alters the property of another person. It is the damage or alteration of property that is the Property Destruction ordinance's purpose, not the regulation of expressive activities. Subsection A(2) prohibits intrusions on another's property that tangibly alter the appearance of the property. The City is unaware of authority for the proposition that altering the property of another is a traditional expressive activity protected by the First Amendment. To the contrary, it is untenable that vandalism of another's property would be protected by the First Amendment merely because it expressed an idea.[7] The ordinance, therefore, does not have a close nexus to expression or conduct commonly associated with expression because it "does not punish only [property defacement] engaged in for the purpose of expressing views" and any burdens upon speech are independent of the expression's content and incidental to the statute's legitimate purpose of protecting property. *United States v.*

---

[7] *See Riely v. Reno*, 860 F. Supp. 693, 702 (D. Ariz. 1994) ("[I]t is an untenable position that conduct such as vandalism is protected by the First Amendment merely because those engaged in such conduct "intend[ ] thereby to express an idea." (quoting *Texas v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 105 L.Ed.2d 342 (1989)); *People for Ethical Treatment of Animals v. Giuliani*, 105 F. Supp. 2d 294, 318 (S.D.N.Y. 2000), (dicta) (First Amendment does not guarantee freedom to "readorn with graffiti property owned by the government or by another person"); *Wilson v. Johnson,* 04–CV–059, 2005 WL 2417057, at *7 (E. D. Tenn. Sept. 30, 2005) ("Plaintiff got caught defacing the doors and walls of two University buildings, conduct that constitutes vandalism, and vandalism is not protected by the First Amendment."), *aff'd,* 247 Fed.Appx. 620 (6th Cir.2007).

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*O'Brien*, 391 U.S. 367, 375 (1968); *see also Roulette*, 97 F.3d at 305.

To be susceptible to an overbreadth challenge, there also must be a realistic danger posed to the First Amendment rights of parties not before the court. The Supreme Court has explained:

> [T]he requirement of substantial overbreadth stems from the underlying justification for the overbreadth exception itself—the interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the Court. . . . In short, there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds.

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984) (citations omitted) (upholding restrictions on posting of signs on public property). Accordingly, Plaintiffs must adequately allege "from the text of [the law] and from actual fact that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (quoting *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 14 (1988)).

Defendants interpret paragraph 4.30 of the Complaint as Plaintiffs' effort to identify third parties who might be chilled or to whom the Property Destruction ordinance could be unconstitutionally applied. First, Plaintiffs point to children chalking rainbows on a sidewalk. Compl. ¶ 4.30. But there is no constitutional right to draw a picture on another person's property or on public property. Nor do Plaintiffs assert that any children have been or are realistically likely to be chilled or deterred. On the contrary, Plaintiffs assert that it is Defendants' longstanding policy not to enforce against such chalking on the sidewalk. *Id.* ¶ 4.36. The other two examples given by Plaintiffs also are inapposite: "Employees . . . using their employer's word processing software" and "an attorney or law clerk . . . writing a note on a legal pad belonging to co-counsel or the court." *Id.* ¶ 4.30. Those are not First Amendment protected activities. Nor do Plaintiffs allege that there is a realistic danger anyone in those situations has been or would be chilled or that the ordinance realistically might be enforced against them.

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Therefore, Plaintiffs' overbreadth challenge fails. *See, e.g., Mahoney v. Doe*, 642 F.3d 1112, 1120 (D.C. Cir. 2011) (overbreadth analysis not warranted where plaintiff did not "argue there is a likelihood of prosecution under the Defacement Statute that deters otherwise protected speech").

    ii.    <u>In the alternative, if the Property Destruction ordinance is susceptible to a facial challenge, the Court should conclude it is a permissible manner restriction on expressive conduct.</u>

A court addressing a First Amendment claim proceeds in three broad steps: first, it determines whether the First Amendment protects the speech at issue, second, it identifies the nature of the forum, and third, it assesses whether the Government's justifications for restricting Plaintiffs' speech "satisfy the requisite standard." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985)). Assuming arguendo that the First Amendment protects the writing of messages on another person's property (it does not, as explained above), Defendants address the second two inquiries.

For purposes of Plaintiffs' facial challenge, the Property Destruction ordinance restricts conduct in traditional public forums, because it prohibits marking, painting, writing, or drawing on public streets and sidewalks (as well as restricting conduct in a variety of other forums).[8] Public streets and sidewalks constitute traditional public forums for First Amendment activities. *See, e.g.*, *Perry Educational Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Even in a traditional public forum, it is settled that "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired. *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981); *Cornelius*, 473 U.S. at 800. The Supreme Court has "regularly rejected the assertion that people who wish to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." *United States v. Grace*, 461 U.S. 171, 177-178

---

[8] Because this claim is a facial challenge, the eco-block wall that Plaintiffs defaced is not the correct forum for analysis. As explained above in section IV.A.i, the wall on which Plaintiffs wrote was a nonpublic forum.

MOTION TO DISMISS - 15
2:23-cv-00017 TLF

(1983) (internal quotation marks omitted). Accordingly, expressive activity, "whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293-94 (1983). *Clark* established a three-part test: such restrictions "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Id.* at 293-294; *see also, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Taxpayers for Vincent*, 466 U.S. at 804-05; *Heffron*, 452 U.S. at 647-48. The City's ordinance easily survives this three-part test.

   1. *The Property Destruction Ordinance is content and viewpoint neutral.*

On its face, the ordinance is plainly content and viewpoint neutral. Its text prohibits damage and alteration of another's property without reference to the conduct's motivation or viewpoint.

   2. *The Property Destruction ordinance is narrowly tailored to serve a significant government interest.*

The second prong of the Supreme Court's test in *Clark* asks whether the restriction is "narrowly tailored to serve a significant government interest." 468 U.S. at 293-94. The City's interests in preventing visual blight on sidewalks, streets, structures, and buildings is significant. Courts have consistently recognized the governments' substantial esthetic interest in preventing even temporary visual blight caused by posters, signs, or chalk writing. *See, e.g.*, *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1072-73 (9th Cir. 2006) (pole signs); *Mahoney*, 662 F.Supp.2d at 90 (chalking on the sidewalk); *Taxpayers for Vincent*, 466 U.S. at 805-07 (signs on public property). The Supreme Court has explained that "municipalities have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression." *Taxpayers for Vincent*, 466 U.S. at 805-07 (reviewing Supreme Court precedent and collecting cases for this proposition).

MOTION TO DISMISS - 16
2:23-cv-00017 TLF

1      The test for "narrowly tailored" is not a proxy for "the least restrictive means." *White House*

2   *Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1531-32 (D.C. Cir. 1984). As the Supreme Court

3   admonished, "[s]o long as the means chosen *are not substantially broader than necessary* to achieve

4   the government's interest, [] the regulation will not be invalid simply because a court concludes that

5   the government's interest could be adequately served by some less-speech-restrictive alternative."

6   *Ward*, 491 U.S. at 798. In addition, courts "have been loath to second guess the Government's judgment

7   to that effect." *Board of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469 (1989).

8      The "essence of narrow tailoring" is having the regulation "focus[ ] on the source of the evils

9   the city seeks to eliminate ... and eliminate[ ] them without at the same time banning or significantly

10  restricting a substantial quantity of speech that does not create the same evils." Ward, 491 U.S. at 799

11  n. 7. For example, a city has a legitimate esthetic interest in preventing littering, but the requirement of

12  narrow tailoring does not allow a city to ban the public distribution of handbills—even though some

13  handbills inevitably end up as litter. *See Schneider v. State of New Jersey*, 308 U.S. 147, 160–61 (1939).

14  The Property Destruction ordinance does not suffer from that defect.

15      The ordinance's prohibition on writing, painting, drawing, and marking—regardless of the

16  medium used—on the sidewalks, streets, buildings, and other structures is narrowly tailored to serve

17  substantial governmental interests, because it "target[s] and [eliminates] no more than the exact source

18  of the 'evil' [it seeks] to remedy." *Taxpayers for Vincent*, 466 U.S. at 808. The ordinance "responds

19  precisely to the substantive problem which legitimately concerns the [City]" and "curtails no more

20  speech than is necessary to accomplish its purpose." *Id.* at 810.  In *Mahoney v. Doe*, the D.C. Circuit

21  applied Supreme Court precedent in the context of sidewalk chalking in front of the White House and

22  explained why a restriction like the one at issue here was narrowly tailored:

23

MOTION TO DISMISS - 17
2:23-cv-00017 TLF

1

2

3

4

5

6

> It is the tangible medium—chalking—that creates the very problem the Defacement Statute seeks to remedy. The same was true in *Taxpayers for Vincent*, where the Supreme Court noted "the substantive evil—visual blight—is not merely a possible by-product of [posting signs], but is created by the medium of expression itself." Undoubtedly, the Defacement Statute encompasses some expressive activity. But "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien,* 391 U.S. 367, 376-77 (1968). It is true, the defacement at issue is temporary and can be cured. But the same was true in *Taxpayers for Vincent.* The government can proscribe even temporary blight.

7

8

9

10

*Mahoney v. Doe*, 642 F.3d 1112, 1118-19 (D.C. Cir. 2011) (rejecting facial and as-applied challenges to Defacement Statute brought by demonstrator who wanted to use chalk on sidewalk in front of White House). For these same reasons, this Court should conclude that the Property Destruction ordinance is narrowly tailored to advance a significant governmental interest.

11

> 3.   *The Property Destruction ordinance leaves open ample alternative channels of communication.*

12

13

14

15

16

17

18

19

20

21

22

23

The third prong of the *Clark* test asks whether the restriction at issue leaves open ample alternative channels for communication. There are myriad other ways in which protestors can communicate their messages in the vicinity of the East Precinct, both orally and in writing, such as distributing literature, buttons and bumper stickers, marching, speaking, or holding vigils. The availability of such alternative channels of communication comfortably satisfies First Amendment concerns with respect to time, place, and manner limitations. *See Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1202 (9th Cir. 2016) (describing alternatives and upholding ban on mobile billboards because, "[a]lthough mobile billboards are a unique mode of communication, nothing in the record suggests that Appellants' overall "ability to communicate effectively is threatened."); *see also, e.g.*, *Clark,* 468 U.S. at 295 (outright ban on one manner of speech valid where it did not constitute "any barrier to delivering to the media, or to the public by other means, the intended message.").

MOTION TO DISMISS - 18
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

**F.  Plaintiffs' Due Process claims (¶¶ 5.5, 5.6) fail as a matter of law.**

Plaintiffs make two allegations regarding their claim that the Property Destruction ordinance is facially vague in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. First, Plaintiffs allege that ordinance is "impermissibly vague on its face in violation of U.S. Const., amend XIV, such that Plaintiffs have no notice of the conduct prohibited, depriving them of due process of law." Compl. ¶ 5.5. Second, Plaintiffs allege that the ordinance criminalizes "entirely innocent conduct regardless of Plaintiffs' intent and regardless of whether Plaintiffs reasonably believed they were expressly or impliedly authorized to make the mark, figure, or inscription alleged." Compl. ¶ 5.6. Both arguments fail.

    i.    <u>Plaintiffs lack standing to assert a facial, vagueness challenge under the Due Process Clause.</u>

As a threshold matter, Plaintiffs lack standing to raise a facial, vagueness challenge under the Due Process Clause. The Supreme Court has explained:

> "[A] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause . . . for lack of notice. And he certainly cannot do so based on the speech of others. Such a plaintiff may have a valid overbreadth claim under the First Amendment, but our precedents make clear that a Fifth Amendment vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression. Otherwise the doctrines would be substantially redundant.

*Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010) (citations omitted).[9]

Plaintiffs do not appear to claim that the text of the Property Destruction ordinance is ambiguous with respect to whether or not they were permitted to use charcoal or chalk to deface the East Precinct wall. Because their conduct was "clearly proscribed," they cannot raise a vagueness challenge. *Id.*

---

[9] The Supreme Court's interpretation and application of the Due Process Clause of the Fifth Amendment also informs the interpretation and application of the Due Process Clause of the Fourteenth Amendment. *See*, *e.g.*, *Reno v. Flores*, 507 U.S. 292, 301-2 (1993) (citations omitted).

MOTION TO DISMISS - 19
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ii.    <u>The Property Destruction ordinance gives an ordinary person a reasonable opportunity to know what is prohibited.</u>

A law can be challenged as vague for either of two independent reasons: (1) "it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000).

Plaintiffs do not meet either requirement. First, due process requires that "laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Here, a person of ordinary intelligence knows exactly what conduct is prohibited: damaging or marking another's property without express permission. By comparison, a "statute is vague if it does not provide explicit standards to those who apply them, so as to avoid arbitrary and discriminatory enforcement." *Anderson v. Morrow*, 371 F.3d 1027, 1032 (9th Cir. 2004); *Tingley v. Ferguson*, 47 F.4th 1055, 1090 (9th Cir. 2022) (anti-conversion therapy law not vague because terms have "common meanings that are clear to a reasonable person"). Again, the ordinance provides explicit standards: do not mark or damage another's property. Its terms have common meanings clear to a reasonable person.

Defendants interpret Plaintiffs' second argument, that the ordinance criminalizes "entirely innocent conduct… regardless of whether Plaintiffs reasonably believed they were expressly or impliedly authorized" to engage in graffiti as supporting their facial, vagueness argument under the Due Process Clause. Due Process does not require that criminal statutes contain *scienter* requirements,[10] however such requirements "may mitigate a law's vagueness," especially where the

---

[10] As a cannon of statutory interpretation, courts apply a rebuttable presumption that the legislature intends to require *mens rea* in criminal statutes. *United States v. Collazo*, 984 F.3d 1308, 1325 (9th Cir. 2021) (en banc) (presumption that criminal statutes contain *mens rea* requirement is a

MOTION TO DISMISS - 20
2:23-cv-00017 TLF

defendant alleges inadequate notice. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982). Plaintiffs' argument regarding *mens rea* is either moot or inapposite, as explained above in section IV.C.i.

    iii.   <u>The Property Destruction ordinance does not authorize or encourage arbitrary and discriminatory enforcement.</u>

        The language of the ordinance "give[s] adequate guidance to law enforcement authorities." *Hill v. Colorado*, 530 U.S. 703, 733 (2000), and does not "authorize or [] encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). The Supreme Court explained, in striking down an anti-loitering statute, that the City of Chicago's ordinance on its face "criminalize[d] each instance a citizen stands in public with a gang member," without any enforcement guidelines. *Id.* In contrast, the new version of the Property Destruction ordinance provides a clear distinction: those individuals who are writing, painting, drawing, or marking on someone else's property without permission, versus those individuals who are not.

**G. Plaintiffs' Fourth Amendment claims (¶ 5.7) fail as a matter of law.**

        Plaintiffs allege that they were "subjected to… unreasonable search and seizure, without probable cause or other justification" in contravention of the Fourth Amendment to the U.S. Constitution. Compl. ¶ 5.7. Plaintiffs' conclusory allegation is insufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555-56). Crucially, "the constitutionality of a law is generally irrelevant to whether probable cause existed to believe that Plaintiff violated the law." *Frey v. Town of Jackson, Wy.*, 41 F.4th 1223, 1243 (10th Cir. 2022); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). This is because police officers are excused "from liability for acting under a statute that… [was]

---

canon of statutory construction traceable to common law); *see generally Copeland v. Vance*, 893 F.3d 101, 121–22 (2d Cir. 2018) ("the Supreme Court has been at pains not to constitutionalize *mens rea*.").

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

reasonably believed to be valid but that was later held unconstitutional on its face or as applied."[11] *Pierson v. Ray*, 386 U.S. 547, 555 (1967).

The old version of the Property Destruction ordinance had been in effect for twenty-five years on January 1, 2021. It is axiomatic that belief in the validity of the ordinance was reasonable. Where "a police officer has probable cause to arrest someone under a statute that a reasonable officer could believe is constitutional, the officer will be immune from liability even if the statute is later held to be unconstitutional." *Grossman*, 33 F.3d at 1209. Plaintiffs' Fourth Amendment claims fail not only because an officer's reliance on a municipal ordinance in effect for twenty-five years is inherently reasonable, but because Plaintiffs do not allege that the individual officer defendants lacked probable cause to arrest. In fact, Plaintiffs concede facts establishing that they violated subsection A.2 of the ordinance. Compl. ¶ 1.4. Thus, even if Plaintiffs' First Amendment claims were valid, that would still be insufficient as a matter of law to create a Fourth Amendment violation.

**H. Plaintiffs' *Monell* claim[12] (¶ 5.8) fails factually, as to both the Property Destruction ordinance and as to any other unspecified policy governing the King County jail, and as a matter of law.**

Most importantly, it is well-settled that a municipal liability claim under *Monell* cannot succeed if there is no underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994). As explained above,

---

[11] To the extent this immunity falls within qualified immunity, it is appropriate to adjudicate on a motion to dismiss. "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (overruled, in part, on other grounds). Dismissal of Plaintiffs' claims fulfills the "strong public interest in protecting public officials from the costs associated with the defense of damages claims," and conserves judicial resources by "resolving that threshold question before permitting discovery." *Crawford-El v. Britton*, 523 U.S. 574, 575, 589 (1998) (citation omitted).

[12] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

MOTION TO DISMISS - 22
2:23-cv-00017 TLF

Plaintiffs' Complaint does not adequately allege any violation of their constitutional rights, and so their *Monell* claims must be dismissed.

Plaintiffs assert a *Monell* claim on the basis of nothing more than a conclusory allegation that "the Defendant City has a pattern, practice, or policy of enforcing and threatening to enforce Property Destruction ordinance in retaliation for protected speech." Compl. ¶ 5.8. This allegation is insufficient under *Iqbal* and *Twombly*. Four factors must be considered to establish whether a policy exists for which a municipality can be liable: (1) acts that the municipality has officially sanctioned or ordered; (2) only those municipal officials who have "final policymaking authority" may by their actions subject the government to §1983 liability; (3) whether a particular official has "final policymaking authority" is a question of *state law*; and (4) the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy *in that area* of the city's business. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion) (emphasis in original). Plaintiffs' Complaint falls far short of this standard.

Crucially, with respect to their bookings, Plaintiffs' policy allegations are limited to a vague and conclusory assertion that high-level officials within SPD and the Mayor's Office ""used their official position to 'override' the County's Covid-19 booking policy." Compl. ¶¶ 4.20, 4.21. Notwithstanding the fact that these "unadorned, the-defendant-unlawfully-harmed-me" allegations are insufficient to withstand a motion to dismiss under *Iqbal*, these allegations also fail under *Praprotnik*. City officials, including an "assistant chief or higher" or someone "in an executive leadership position in the Mayor's Office," have absolutely no authority under state law to make policy for County jails. Wash. Const. Art. XI, § 11 (authorizing a city or county to make and enforce regulations "within its limits"); RCW 70.48.071 (stating that "counties shall adopt the standards [for operation of correctional facilities] after considering guidelines established collectively by the counties of the state."). Plaintiffs'

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

allegation that City officials in any position can "override" a County policy for the operation of a County jail fails as a matter of law, and fails to establish *Monell* liability under, at least, the fourth prong of *Praprotnik*.[13]

**I. Plaintiffs' prayer for declaratory and injunctive relief (¶¶ 6.2, 6.3, 6.4) must be denied.**

As a final matter, this Court must dismiss Plaintiffs' request for declaratory and injunctive relief pursuant to Fed. R. Civ. P. 12(b)(1) because the allegations in Plaintiffs' Complaint do not establish Article III standing to seek injunctive relief. *O'Shea v. Littleton*, 414 U.S. 488, 493 (1974). Plaintiffs allege that they were arrested on only one occasion for violating the Property Destruction ordinance. Compl. ¶¶ 1.4, 4.3, 4.10, 4.12, and 4.14. A single instance is insufficient to confer standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 110 (1983). Furthermore, Plaintiffs request for an injunction prohibiting Defendants from enforcing the ordinance is impermissibly overbroad. *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC)*, 528 U.S. 167, 193 (2000).

## V. CONCLUSION

For the foregoing reasons, this Court should dismiss the Plaintiffs' Complaint in its entirety. Plaintiffs' conclusory allegations, even taken as true, do not establish that they are entitled to relief. The legal contentions in the Complaint misinterpret applicable law. The viability of Plaintiffs' allegations will not be strengthened through discovery or amendment of Plaintiffs Complaint. Consequently, the City is entitled to dismissal of Plaintiffs' Complaint with prejudice.

---

[13] Furthermore, to the extent Plaintiffs seek to allege a § 1983 conspiracy claim, the Complaint is insufficient. Plaintiffs must allege "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws… (3) an overt act in furtherance of the conspiracy; and (4) an injury… or deprivation." *Thomas v. Roach*, 165 F.3d 137, 146 (2nd Cir. 1999); *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983).

MOTION TO DISMISS - 24
2:23-cv-00017 TLF

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

DATED this 21st day of March, 2023.

ANN DAVISON
Seattle City Attorney


By:   */s/Kerala Cowart*
        Kerala Cowart, WSBA# 53649
        Jessica Leiser, WSBA# 49349
        Assistant City Attorneys

        E-mail: kerala.cowart@seattle.gov
        E-mail: jessica.leiser@seattle.gov


        Seattle City Attorney's Office
        701 Fifth Avenue, Suite 2050
        Seattle, WA 98104
        Phone: (206) 684-8200

        *Attorneys for Defendant City of Seattle*

MOTION TO DISMISS - 25
2:23-cv-00017 TLF