1

2

3

4

5

6

Honorable Marsha J. Pechman

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

DEREK TUCSON, ROBIN SNYDER,
MONSIEREE DE CASTRO, and ERIK
MOYA-DELGADO,

Plaintiffs,

v.

CITY OF SEATTLE, ALEXANDER
PATTON, TRAVIS JORDAN, DYLAN
NELSON, JOHN DOES (#1-4), and JANE
DOES (#1-2)

Defendants.

No. 2:23-cv-00017-MJP

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

**Note for Motion:  April 14, 2023**

9

10

11

12

13

14

15

16

17

18

## I.      INTRODUCTION

19

The plaintiffs in this case were all arrested and booked into jail during a pandemic

20

because they used inherently temporary and non-destructive charcoal or chalk to write political

21

messages that were critical of the police on publicly owned surfaces. The police who arrested

22

them justified their actions under Seattle Municipal Code 12A.08.020. Although the City

23

amended the ordinance in response to the current lawsuit, even under the amended ordinance,

24

25

Seattle police can arrest can anyone who "[w]rites, paints, or draws any inscription, figure, or

26

mark of any type on any public or private building or other structure or any real or personal

27

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 1

No. 2:23-cv-00017-TLF

19487.00001 qa292301

property owned by any other person unless the person has obtained the express permission of the owner or operator of the property." With this simple sentence, Seattle police and City officials are vested with authority to seek up to one year of imprisonment for a vast array of constitutionally protected and entirely innocent expressions.

The Seattle ordinance authorizes arrest for a substantial amount of constitutionally protected expression -- for example, writing messages of a political nature in ordinary, temporary sidewalk chalk, on a concrete barrier erected to prevent access to the sidewalk near a police precinct. That is precisely what Defendants arrested Plaintiffs for in this case, and what Plaintiffs and others have to fear while the ordinance remains in force. This ordinance is not an "anti-graffiti" ordinance – it is an "anti-writing" ordinance that bans all writing on any surface without "express" permission.

Courts in the Ninth Circuit have already recognized the constitutionally protected status of political chalking like that which occurred here. *Ballentine v. Tucker*, 28 F.4th 54 (9th Cir. 2022); *Bledsoe v. Ferry Cty*, 499 F. Supp. 3d 856 (E.D. Wash. 2020); *Mackinney v. Nielsen*, 69 F.3d 1002 (9th Cir. 1995); *Selah All. for Equal. v. City of Selah*, No. 1:20-CV-3228-RMP, 2021 U.S. Dist. LEXIS 122632, *30 (E.D. Wash. June 30, 2021). In accordance with this precedent, there is a substantial likelihood that the Plaintiffs will succeed on the merits and that this Court will find the Seattle "anti-writing" ordinance to be overbroad on its face under the First Amendment and void for vagueness under the Fourteenth Amendment

## II.    BACKGROUND

The version of SMC 12A.08.020 in effect prior to this litigation, and the version under which Defendants' arrested Plaintiffs, reads in full as follows:

A.  A person is guilty of property destruction if he or she:

19487.00001 qa292301

1. Intentionally damages the property of another; or

2. Writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person.

B.

1. It is an affirmative defense to property destruction under subsection 12A.08.020.A.1 that the actor reasonably believed that he had a lawful right to damage such property.

2. It is an affirmative defense to property destruction under subsection 12A.08.020.A.2 that the actor had obtained express permission of the owner or operator of the building, structure, or property.

C.   Property destruction is a gross misdemeanor.

"Property destruction" under SMC 12A.08.020 is punishable by imprisonment of up to 364 days and a fine of up to five thousand dollars. SMC 12A.08.020(C); 12A.02.070(A).

The Ordinance as it existed prior to this litigation had two bases for liability – sections (A)(1) and (2) with corresponding affirmative defenses (B)(1) and B(2). The post-litigation amendment – adopted after over 25 years of enforcement of the earlier version -- made two changes: (1) it moved the issue of "express permission" from being an affirmative defense under the prior (B)(2) to being an element in (A)(2); and (2) it applied the mental state of "intentionally" to the entirety of section A rather than (A)(1) alone.

When presenting the amended ordinance to the City Council for a vote as bill's sponsor, Councilmember Lisa Herbold described it is as a "risk management bill intended to mitigate a possible risk with our current code, that has come to light in the course of a current lawsuit." *See* City Council Meeting March 14, 2023 (https://seattlechannel.org/FullCouncil/?videoid=x147844&amp;Mode2=Video) (accessed 3/20/23). Councilmember Herbold continued, "[m]y objective as the sponsor of the legislation

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

was to address only the risk exposure, otherwise I believe if we were dealing with policy issues, the bill should be heard in committee to have those deliberations. So, very narrowly limited to address the risk management recommendations of the City Attorney's Office." *Id.*

The text of the newly amended ordinance reads as follows:

A.  A person is guilty of property destruction if ((he or she)) the person intentionally:

1. ((Intentionally damages)) Damages the property of another; or

2. Writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person unless the person has obtained the express permission of the owner or operator of the property.

B. 1. It is an affirmative defense to property destruction under subsection 12A.08.020.A.1 that the actor reasonably believed that he had a lawful right to damage such property.

((2. It is an affirmative defense to property destruction under subsection 12A.08.020.A.2 that the actor had obtained express permission of the owner or operator of the building, structure, or property.))

C.  Property destruction is a gross misdemeanor.

Flack Decl., Ex. 6 (City Council Bill 120521). The new ordinance will become effective 30 days from the date of passage (4/13/23). See SMC 1.04.10.

All four Plaintiffs were arrested under the pre-amendment version SMC 12A.08.020. The SPD police reports (authored by Defendant Alexander Patton) justifying the arrests specifically cited to the text of SMC 12A.08.020.  Officer Patton specifically wrote in his report,:

The chalk was later submitted as evidence and photos were taken of the damage. I reviewed SMC 12A.0820 Property Destruction and observed it stated "writes, paints or draws any inscription, figure or mark of any type on any public or private building or other structure or any real or personal property owned by any other person." As all four individuals were observed doing this I confirmed there was probable cause for their arrest for the crime of Property Destruction.

Decl. Ex. 1, p. 27, 28, 29, 31. According to the reports, the sole reason for all four arrests was that Plaintiffs had written on a concrete barrier blocking the public sidewalk, and in one case

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 4

No. 2:23-cv-00017-TLF

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604   Fax 206.343.3961

19487.00001 qa292301

only, on the precinct's exterior wall, using only temporary sidewalk chalk or charcoal. The barrier on which plaintiffs made temporary markings occupied the public sidewalk along 12th Avenue and Pine Street in front of SPD's East Precinct building at 1519 12th Avenue, Seattle, WA. Decl., Ex. 1;  Compl., ¶¶, 1.4-1.5, 4.2; Seattle Department of Transportation, Director's Rule 10-2015, ¶3.4 (defining sidewalk as "that area between the curb lines of a roadway and the adjacent property intended for the use of pedestrians."); SMC 15.22.024 ("It is City policy…to protect the public passage within the existing roadways and walks"). The barrier blocking the sidewalk resulted in documented formal complaints from the public. *See* Decl. Ex. 5. It was only after the arrests of the first three Plaintiffs who wrote only on the barrier that Plaintiff Moya-Delgado was arrested for also writing on the side of the precinct with chalk. *See* Compl. ¶4.14.

The original version of 12A.08.020, enacted in 1973, consisted only of what are now sections A(1) and B(1) of the Ordinance. It prohibited only "intentionally" damaging the property of another, and provided as an affirmative defense that the accused reasonably believed he had a lawful right to damage the property. *See* SMC Ordinance 102843, § 12A.08.020, 1973.

The provisions at issue in the lawsuit – A(2) and B(2) in the current version of the Ordinance – were added in 1996. *See* SMC Ordinance 118106, § 1, effective June 6, 1996. These new provisions expanded the scope of the Ordinance significantly, turning the ordinance from a property destruction ordinance (with diminution of value as a key element) into an "anti-writing" ordinance by which the City would not have to prove that the writing diminished the value of the property in any way. Whereas the original property destruction ordinance had a *mens rea* element and proscribed only intentional property destruction, the 1996 amendment made a person guilty of a gross misdemeanor without regard to mental state if he or she:

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 5

No. 2:23-cv-00017-TLF

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

> Writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person.

Former SMC 12A.08.020(A)(2).

12A.08.010 separately defines "property of another" to mean "property in which the actor possesses anything less than exclusive ownership" – i.e., including a piece of paper jointly owned with one's spouse or law partner. In contrast to subsection (A)(1) (property destruction), the 1996 version of subsection (A)(2) (under which all four Plaintiffs were arrested) contained no *mens rea* requirement and was satisfied by any "voluntary act" regardless or intent. *See* SMC 12A.04.010. The 1996 version of section (A)(2), which Defendants relied on when arresting Plaintiffs, conspicuously lacked an intent element and provided only that the accused could assert that they "had obtained express permission of the owner or operator of the building, structure, or property" as an affirmative defense under subsection (B)(2). The March 2023 post-litigation amendment moved the substance of subsection (B)(2) into subsection (A)(2) and added an express *mens rea* requirement of "intentionally" to (A)(2). Although the March 2023 amendment of (A)(2) properly shifted the burden of proof regarding express permission to the government, it maintained the 1996 ordinance's prohibition on all writing or marking on any property not exclusively owned by the writer and without express permission of the owner.

The 1996 amendment was championed by then-City Attorney Mark Sidran in his campaign against graffiti, including public statements from Sidran threatening prosecution "to the full extent of the law" and endorsing a separate ordinance that penalized property owners for allowing artwork on their property. *See* Decl. Ex. 2, 3 ("Spray-Painting 'Taggers' Will Be Prosecuted By the City," Seattle Post-Intelligencer, Aug. 29, 1996; "Unremoved Graffiti Could

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 6

No. 2:23-cv-00017-TLF

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

Lead to Fines," Seattle Post-Intelligencer, April 3, 1996) *see also* Flack Decl., Ex. 4. Mark H. Sidran, Memorandum to Jan Drago, April 11, 1996.

The 1996 ordinance differed from a related Washington State statute, RCW 9A.48.090 (Malicious mischief in the third degree). Although both laws criminalized "writ[ing], paint[ing], or draw[ing] any inscription, figure or mark of any type on any public or private building or other structure or any real or personal property owned by any other person," the state statute excludes writing, painting, and drawing that occurs with the express permission of the owner. In contrast, the municipal ordinance in effect at the time of Plaintiffs' arrests did not require any evidence regarding the property owner's permission, which was the defendant's burden to prove during prosecution as an "affirmative defense." Plaintiffs were arrested expressly under the City Ordinance alone – not the malicious mischief statute. Flack Decl., Ex. 1. The March 2023 amendment brought SMC 12A.08.020 closer to the language and structure of RCW 9A.48.090.

Children's sidewalk chalking was and continues to be criminal under both the 1996 and 2023 amendments. The amended Ordinance continues to chill Plaintiffs' speech, including the intended audience of government officials that is an intrinsic part of their speech. *See* Declaration of Plaintiff Derek Tucson; Declaration of Plaintiff Robin Snyder; Declaration of Erik Moya-Delgado; Declaration of Monsieree de Castro. Plaintiffs have curtailed their chalking activity in the wake of their arrest and intend to resume chalking if the Court finds the ordinance unconstitutional. *Id.*

Plaintiff Derek Tucson wrote the words "peaceful protest" because he wanted to spur thought and discussion about systemic change among the public and officers working around the precinct specifically. Tucson Dec., ¶ 3. Prior to the incident, he used sidewalk chalk to write messages of political protest on public sidewalks, and prior to his arrest was known among local

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 7

No. 2:23-cv-00017-TLF

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

activists for carrying chalk on him for this purpose. *Id.*, ¶4. The arrest has led him to curtail his political chalking and he no longer attended political protests where chalking would have been his primary goal, including specifically declining to chalk messages of remembrance and appreciation for deceased protester at a memorial in a public park. *Id.*, ¶5-6. He would like to resume political chalking to express his views and spur discussion on current events, but fears he will be arrested against if he does so. *Id.*, ¶7. A change in the law would make him more likely to engage in his desired political expression using sidewalk chalk because he would no longer fear arrest. *Id.*, at ¶8.

Plaintiffs Delgado, De Castro, and Snyder are similarly deterred from chalking by the ordinance and the threat of arrest. None of these fears have dissipated after the City amended its ordinance in response to this litigation.

### III.   ARGUMENT

"A plaintiff seeking a preliminary injunction must establish [1] that [they are] likely to succeed on the merits, [2] that [they are] likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [their] favor, and [4] that an injunction is in the public interest." *Am. Bev. Ass'n v. City & Cty. of S.F.*, 916 F.3d 749, 754 (9th Cir. 2019) (*quoting Winter v. NRDC, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)); <u>*Cuviello v. City of Vallejo*, 944 F.3d 816, 824-25 (9th Cir. 2019)</u>.

> the overbreadth doctrine operates as a narrow exception permitting the lawsuit to proceed on the basis of "a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression."

*Get Outdoors II, Ltd. Liab. Co. v. City of San Diego*, 506 F.3d 886, 891-92 (9th Cir. 2007) (*quoting Broadrick v Oklahoma*, 413 U.S.601, 612 (1973)).

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

i.     **Plaintiffs Have Standing to Seek Injunctive Relief Prohibiting Enforcement of the Newly Amended Ordinance.**

The elements of standing are (1) an injury in fact, (2) causation or "traceability" – that the injury is fairly traceable to the defendants' conduct, and (3) that is likely, rather than merely speculative, that the injury will be redressed by a favorable decision. Plaintiffs can satisfy all three elements.

All Plaintiffs were injured in fact. Because of the Ordinance, they were arrested and booked into jail, and there is a continued chilling effect on their speech. The City's mid-litigation amendment to the Ordinance does not cure this. *See Babbitt v. UFW Nat'l Union,* 442 U.S. 289, 298 (1979) ("plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder"). "[I]t is not necessary that [a plaintiff] first expose [them]self to actual arrest or prosecution to be entitled to challenge a statute that [they] claim[] deters the exercise of [their] constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). As to the second and third elements of standing, the text of SMC 12A.08.020 was the express basis and cause of their arrest (Decl. Ex. 1 ) (arrest reports), and an injunction prohibiting enforcement would end the chilling effect the ordinance has. *See Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) (holding that "if [defendants] are enjoined from enforcing the challenged provisions, [plaintiff] will have obtained redress in the form of freedom to engage in certain activities without fear of punishment.").

Plaintiffs' facial challenges (and other claims not at issue in this motion) are largely unaffected by the 2023 amendments which do not narrow the ordinance's sweeping prohibition on all writing or marking without express permission and which the City contends allows it to criminalize the use of sidewalk chalk on any surface. Plaintiffs' claims are not "moot," because the amended Ordinance is essentially identical to pre-amendment Ordinance in this important respect, and it continues to chill and deter Plaintiffs' protected speech. *See Cuviello v. City of*

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

*Vallejo*, 944 F.3d 816, 824-825 (9th Cir. 2019) (facial challenge was not rendered moot by amendment to ordinance where amended ordinance was sufficiently similar and harm to plaintiff continued).

### ii.    Plaintiffs Are Likely to Prevail on the Merits of Their Facial Challenges

### a.    Ninth Circuit Precedent Establishes that SMC 12A.08.020(A)(2) Directly Regulates and Criminalizes Constitutionally Protected Speech and Expression.

Laws directed specifically at regulating expression, or with a sufficient nexus with expression, may be challenged facially for overbreadth and vagueness under the First and Fourteenth Amendments. *Houston v. Hill*, 482 U.S. 451, 458 (1987). "[I]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Houston v. Hill*, 482 U.S. at 458. Criminal statutes must be scrutinized with particular care; those that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application." *Id.* at 459 (affirming Fifth Circuit holding that statute prohibiting "interrupting" police officers was facially overbroad). The purpose of the overbreadth doctrine is to expeditiously limit impermissible chilling effects and vindicate First Amendment rights, even for nonparties. *Green*, 52 F.4th at 801. This is because of the "unwavering 'interest in preventing an invalid statute from inhibiting the speech of third parties who are not before the Court.'" *Id.* (*quoting Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984)).

The written word is a form of pure speech subject to the full protection of the First Amendment. *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061-62 (9th Cir. 2010) (citing "writing or painting" as forms of "*pure* speech" and holding with "no difficulty" that tattoos are form of pure speech) (emphasis in original); *accord Animal Legal Def. Fund v.*

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

*Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018). *See also Texas. v. Johnson*, 491 U.S. 397, 406 (1989) (contrasting the "written word," as pure speech, with still-protected but separately analyzed expressive conduct such as flag burning); *Cohen v. California*, 403 U.S. 15, 25 (1971) (holding that a T-shirt bearing a profane political statement was "under the protection of free speech as fully as… Keats' poems or Donne's sermons."); *White v. City of Sparks*, 500 F.3d 953, 955-56 (9th Cir. 2007) (observing that "the Supreme Court has been clear that the arts and entertainment constitute protected forms of expression under the First Amendment" and finding "self-expression through painting constitutes expression protected by the First Amendment") (collecting cases); *Ballentine v. Tucker*, *supra* (analyzing sidewalk chalking as protected speech without discussion of *O'Brien*, and finding retaliatory arrest for chalking anti-police message violated First Amendment).

In *Ballentine*, Las Vegas police cited plaintiffs for chalking anti-police messages over a 320 foot area on the sidewalk in front of police headquarters, under state conspiracy law and Nev. Rev. Stat. § 206.330, which prohibits "plac[ing] graffiti on or otherwise defac[ing] the public or private property, real or personal, of another, without the permission of the owner." 28 F.4th at 58. Unlike the former version of SMC 12A.08.020(A)(2), the Nevada statute included as an element that the accused act "without the permission of the owner" (which presumably included implicit permission) and was narrower than SMC 12A.08.020(A)(2)'s prohibition on writing of all kinds, even that which does not constituted "defacing." The Ninth Circuit affirmed that district court's denial of the defendants' motion for summary judgment on the plaintiffs' First Amendment retaliation claim. The court concluded that plaintiffs' allegations, if proved, satisfied each element of a retaliation claim, including the plaintiff's engagement in a constitutionally protected activity. Thus, the Ninth Circuit has clearly established that plaintiffs'

conduct – chalking anti-police messages on a public sidewalk in front of a police building – is constitutionally protected.[1]

The Ninth Circuit had already reached this conclusion nearly 30 years ago in 1995 in *MacKinney v. Nielsen*, *supra*. In *MacKinney*, the plaintiff asserted a First Amendment retaliation claim after police arrested him for writing in chalk on the sidewalk. 69 F.3d at 1004. The Ninth Circuit reversed the district court's grant of summary judgment to defendants. In holding that the plaintiffs' refusal to stop their chalking was protected speech, the court applied the well-established rule that the First Amendment protects the right to verbally challenge police, and further observed that "[n]o reasonable person could think that writing with chalk would damage a sidewalk." *Id*. at 1005.

The Ninth Circuit has thus repeatedly made clear that writing criticisms of police with soluble chalk on the public right of way is activity protected by the First Amendment. This is true even when the message written is "crass." *MacKinney*, 69 F.3d at 1007. SMC 12A.08.020(A)(2) criminalizes exactly this speech, and much more.

The Ninth Circuit has regularly granted injunctions prohibiting enforcement of laws that would prohibit substantial amount of protected speech. *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936 (9th Cir. 2011) (upholding injunction prohibiting enforcement of facially overbroad anti-solicitation statute that barred solicitation on streets and sidewalks); *Chase v. Davelaar*, 645 F.2d 735 (9th Cir. 1981) (affirming district court injunction striking down facially overbroad provision prohibiting partially nude dancing); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935 (9th Cir. 1997); *Sammartano v. First Judicial Dist. Court*,

---

[1]    However, because Plaintiffs seek only an injunction in the present motion, not damages, this Court need not and should not reach questions of qualified immunity. *See, e.g., Am. Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991).

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 12

No. 2:23-cv-00017-TLF

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604   Fax 206.343.3961

303 F.3d 959 (9th Cir. 2002) (reversing district court denial of injunction prohibiting enforcement of court rule against clothing indicating affiliation with "biker organizations").

Lower courts in this Circuit have faithfully applied Ninth Circuit precedent in finding anti-government chalking protected under the First Amendment. In *Selah All. for Equal. v. City of Selah, supra*, the district court granted a preliminary injunction barring enforcement of local ordinances including an ordinance used by the defendant city to remove political chalking. In *Bledsoe v. Ferry Cty*, *supra*, the district court held that the defendants could not use the state "malicious mischief" law to criminalize the plaintiff's political chalking because defendants were not enforcing the statute in a content- or viewpoint-neutral manner.

These recent decisions illustrate that chalked messages critical of government in the public right of way are protected speech, and the language of Section (A)(2) facially prohibits this protected speech, along with much else that falls squarely within the ambit of the First Amendment. *See* Complaint, ¶ 4.30.

SMC 12A.08.020(A)(2) targets for criminal sanction writing, painting, and drawing – all forms of pure protected speech – specifically by name. The ordinance then goes further by including catchall language criminalizing "inscription[s], figure[s], or mark[s] of any type." The plain language encompasses within its ambit any and every kind of expressive mark, figure, or inscription a person might wish to make. There should be "no difficulty" concluding that the writing and painting the ordinance criminalizes constitute pure speech entitled to full First Amendment protection. *Anderson*, 621 F.3d at 1061-62.

In addition to pure speech, conduct intending to express an idea is also constitutionally protected if it is "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments," which means that "[a]n intent to convey a particularized

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

1   message [is] present, and . . . the likelihood [is] great that the message w[ill] be understood by

2   those who view[ ] it." *Anderson*, 621 F.3d at 1058 (*quoting Spence v. Wash.*, 418 U.S. 405, 409-

3   411 (1974) (reversing conviction for improper exhibition of the American flag)).

4       In cases where the Supreme Court has discussed the distinction between pure speech on

5   the one hand, and expressive conduct entitled to lesser protection on the other, the expressive

6   conduct at issue has not involved writing or other classic forms of speech. *Johnson*, 491 U.S.

7   397. In *Anderson*, 621 F.3d at 1061-62, the Ninth Circuit declined to apply the "expressive

8   conduct" rubric had had "no difficulty" concluding that tattoo artistry was pure speech. The court

9   should reach the same conclusion here: an ordinance which authorizes imprisonment for anyone

10  who "[w]rites, paints, or draws any inscription, figure, or mark of any type" targets pure speech

11  entitled to full First Amendment protection.

12

13      **b. SMC 12A.08.020(A)(2) Criminalizes and Chills a Substantial Amount of Protected
        Speech and Is Not Narrowly Tailored.**

14

15  "The First Amendment prohibits laws 'abridging the freedom of speech.'" *Minn. Voters All.*

16  *v. Mansky*, 585 U.S. ___, 138 S. Ct. 1876 (2018). "In the First Amendment context," a statute

17  "may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional,

18  judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 559 U.S.

19  460, 473 (2010) (citation omitted). An "overly broad statute," the Supreme Court has explained,

20  "creates a 'danger zone' within which protected expression may be inhibited." *Dombrowski v.*

21  *Pfister*, 380 U.S. 479, 494 (1965). "[A] law imposing criminal penalties on protected speech is a

22  stark example of speech suppression." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244

23  (2002).

24

25      "[I]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to

26  determine whether the enactment reaches a substantial amount of constitutionally protected

27

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 14

No. 2:23-cv-00017-TLF

19487.00001 qa292301

conduct." *Houston v. Hill*, 482 U.S. at 458 (citing *New York v. Ferber*, 458 U.S. 747, 769 (1982); *Broadrick v. Oklahoma*, 413 U.S. at 630 (internal citations omitted)). The purpose of the overbreadth doctrine is to expeditiously limit impermissible chilling effects and vindicate First Amendment rights, even for nonparties. *Green*, 52 F.4th at 801.

In construing state law, federal courts look to state rules of construction where, as here, there is no state authority directly interpreting the challenged provision. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 811 (9th Cir. 2013); *see p. 23-25, infra*. When construing a criminal law, Washington courts give undefined terms their ordinary meanings absent a contrary indication from the legislature. *State v. Wentz*, 149 Wn.2d 342, 68 P.3d 282, 287 (2003) (*citing Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 828 P.2d 549 (1992)).

The ordinary meaning of the SMC 12A.08.020(A)(2) is straightforward. The challenged ordinance imposes criminal liability based on three textual elements. First, the accused must intentionally write, paint, or draw an inscription, figure, or mark of any type. Second, the writing, drawing, or painting must be on real or personal property owned by another person. Third, under the current version, the owner must not have given "express permission" to the writer.  SMC 12A.08.020(A)(2).

Those three elements – 1) the act of writing; 2) on another's property, 3) without express permission – are all the text of the ordinance requires for a person to be arrested, jailed, charged, prosecuted, and sentenced to up a year in jail as the officers who arrested Plaintiffs made clear was the basis for their conduct in their reports in this case. Dec. Ex. 1 (arrest reports). The staggering sweep of the ordinance authorizes Seattle police officers to arrest for a substantial amount of protected activity and is therefore overbroad. *See Houston v. Hill*, 482 U.S. at 458.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 15

No. 2:23-cv-00017-TLF

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

Overbreadth doctrine permits "'attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Planned Parenthood of Cent. & N. Ariz. v. Arizona*, 718 F.2d 938, 947 (9th Cir. 1983) (*quoting Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973) (*quoting Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)); *accord Video Software Dealers Ass'n v. Maleng*, 325 F. Supp.2d 1180 (W.D. Wash. 2004).

Even after the March 2023 amendment, police can still arrest anyone who makes any mark on any surface owned by anyone else without express permission: the police can still arrest anyone who signs their name on a restaurant payment slip; or who writes peaceful political messages in sidewalk chalk. In all of these scenarios, no reasonable person would expect the writer to obtain "express permission" from the "owner" of the property, and yet it is criminalized under both the former and current ordinance. Thus, a substantial, indeed vast, array of protected speech continues to fall within the ordinance's ambit.

In many instances, it is not even known who could give "express permission" particularly when the property at issue is publicly owned. For instance, the concrete blocks police used to block the public sidewalk were not owned by the police officers themselves, so who could give "express permission" to Plaintiffs? The Mayor? The Chief of Police?

The risk of subjecting oneself to arrest and criminal prosecution is sufficient to chill protected speech. As the Supreme Court held in *Dombrowski v. Pfister*, 380 U.S. at 495:

> This overly broad statute also creates a "danger zone" within which protected expression may be inhibited. So long as the statute remains available to the State the threat of prosecutions of protected expression is a real and substantial one. Even the prospect of ultimate failure of such prosecutions by no means dispels their chilling effect on protected expression.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 16

No. 2:23-cv-00017-TLF

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

*Accord American-Arab Anti-Discrimination Committee v. Thornburgh*, 970 F.2d 501, 508 (9th Cir. 1992).

Such overbreadth is especially pernicious because, as occurred in this case, it accords police unfettered discretion about when to enforce, and thus invites and facilitates discrimination against disfavored viewpoints. *Houston v. Hill*, 482 U.S. at 465 n. 15 (observing that the Supreme Court has "repeatedly invalidated laws that provide the police with unfettered discretion to arrest individuals for words or conduct that annoy or offend them," and collecting cases). As the Supreme Court held, "[I]t would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large." *Id.* at 466 (*quoting United States v. Reese*, 92 U.S. 214, 221 (1876)).

The Defendants argue in their pending motion under Rule 12(b) that there is a distinction between writing political slogans with chalk on a sidewalk and writing the same slogans on a barrier placed over the sidewalk to stop the public from protesting near the precinct. *See* Dkt. 14 at 7 ("The distinction between writing chalk messages on a public sidewalk versus a police station wall is not a small one."). The problem, though, is that the Ordinance, even as amended, does not recognize the distinction the City argues – the Ordinance contains no exemption for writing on certain surfaces in the public forum, nor an exemption for a chalked hopscotch grid (which is not even the type of expressive speech that occurred here). The ordinance is so broad that it treats sidewalk chalk on public property that will wash away with the next rain the same as permanent paint that causes real damage to private property.

While the City's amendment removing the (B)(2)'s affirmative defense may not have cured the ordinance's overbreadth, the amendment was an improvement and did resolve one of

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

the clear problems with the ordinance as it existed when Plaintiffs were arrested. The availability of the affirmative defense under (B)(2) was not sufficient to save the 1996 ordinance. *Houston v. Hill*, 482 U.S. at 459 n.7; *Hodgkins v. Peterson*, 355 F.3d 1048, 1064-65 (7th Cir. 2004); *Ashcroft v. Peterson*, 535 U.S. 234, 255 (2002) (finding criminal statute overbroad and observing in response the government's arguments that "[a]n affirmative defense applies only after prosecution has begun, and the speaker must himself prove, on pain of a conviction, that his conduct falls within the affirmative"). This is the problem with the ordinance that the City fixed with its preemptive amendment, while otherwise leaving the ordinance's substantially overbroad sweep in place. Even after the belated-fix, chalking a hopscotch grid or non-violent political slogan on the sidewalk remains a gross misdemeanor under SMC 12A.08.020(A)(2). *See Cuviello v. City of Vallejo*, 944 F.3d 816, 824-25 (9th Cir. 2019) (amended ordinance did not moot action where amended ordinance does not cure harm to Plaintiff).

None of the governmental interests courts have recognized as justifying appropriately limited regulation on public writing apply here, because the statute imposes criminal liability so far beyond the core issue of unlawful "defacement" that it apparently seeks to address. Plaintiffs do not dispute that the City has a legitimate interest in combatting unlawful property destruction on public and private property – but that legitimate interest cannot justify an ordinance that imposes criminal liability for a substantial amount of unrelated and constitutionally protected expression far beyond the core purpose of deterring and punishing property destruction. *See Vicenty v. Bloomberg*, 476 F.3d 74, 79-80 (2nd Cir. 2007) (affirming preliminary injunction prohibiting enforcement of municipal graffiti ordinance, while acknowledging City's interest in preventing graffiti); *Selah All. for Equal. v. City of Selah*, *supra* (granting preliminary injunction barring enforcement of ordinances including ordinance used by City to remove political

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

chalking); *Osmar v. City of Orlando*, No. 6:12-cv-185-DAB, 2012 U.S. Dist. LEXIS 52039, 2012 WL 1252684, at *3 (M.D. Fl. April 13, 2012) (observing that chalk expression, due to its temporary nature, "evoke[s] the classic example of the exercise of free speech: the soap box orator who knows his words may be lost to the winds.").

While the Supreme Court has credited government interests such "eliminating visual clutter" sufficient to justify regulation of permanent signage, *see Taxpayers for Vincent*, *supra*, no compelling interest could justify the sweeping prohibition of SMC 12A.08.020(A)(2) as amended, because the Ordinance's language is not tailored to achieve this interest, and instead authorizes arrest and prosecution for all writing of any kind, regardless of the means or method, regardless of the public nature of the property, regardless of the implicit permission of the owner and regardless of the surface at issue. Temporary chalk writing and the myriad other non-destructive forms of expression criminalized by the ordinance implicate none of the concerns courts have recognized as sufficient. It remains the law that the government's mere desire to regulate means of expression it finds distasteful is not a compelling interest for First Amendment purposes. *See generally Cohen*, 403 U.S. at 25.

The City may argue that SMC12A.08.020(A)(2) is justifiable as a "time, place, or manner" restriction, but it is not. *See generally Ward v. Rock Against Racism*, 491 U.S. 781, 790-91 (1989). The Supreme Court has authorized reasonable restrictions on the time, place, or manner or protected speech only where, *inter alia*, the restrictions are narrowly tailored to serve a significant governmental. *Id.* SMC 12A.08.020(A)(2) does not meet these requirements. Section (A)(2) is not narrowly tailored because it authorizes police to arrest anyone who writes on another's property – including with implicit permission, including in a public forum, and without any regard to whether the speech is protected. There is also no mechanism in the

ordinance to obtain permission from a public entity with no standards governing the exercise of that permission. *See Seattle Affiliate of the October 22nd Coalition To Stop Police Brutality, Repression and the Criminalization of a Generation v. City of Seattle*, 550 F.3d 788 (9th Cir. 2008) (striking down Seattle's parade permit scheme because it gave police complete discretion to revoke permit).

And it serves no significant interest because, as the arrests here demonstrate, it purports to authorize arrest for conduct which causes no damage or change to the condition of any property. In contrast to the interests discussed in *Vincent*, temporary sidewalk chalk writing is not "intrusive" or a source of blight because it is inherently temporary. 466 U.S. at 809. Indeed, as the *Vincent* court observed, the First Amendment unquestionably protects the right to distribute leaflets on a public right of way, despite the aesthetic nuisance created by the resulting litter, precisely because with leaflets, as with chalking, "individual citizens [are] actively exercising their right to communicate directly with potential recipients of their message" in contrast to the installation of permanent fixtures at issue in *Vincent. Id.* (*citing Schneider v. State*, 308 U.S. 147 (1939)).

Fundamental to this analysis is that Plaintiffs' speech rights here includes their right to address their intended audience in the vicinity of the precinct building. *Edwards v. City of Coeur D'Alene*, 262 F.3d 856, 866 (9th Cir. 2001) ("If an ordinance effectively prevents a speaker from reaching his intended audience, it fails to leave open ample alternative means of communication.") (*citing Heffron v. Int'l Soc'y for Krishna Consciousness, Inc*., 452 U.S. 640, 654 (1981) ("The First Amendment protects the right of every citizen to 'reach the minds of willing listeners and to do so there must be opportunity to win their attention.'") (*quoting Kovacs v. Cooper*, 336 U.S. 77, 87 (1949)). *See also Bay Area Peace Navy v. United States*, 914 F.2d

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 20

No. 2:23-cv-00017-TLF

19487.00001 qa292301

1224, 1229 (9th Cir. 1990) ("An alternative is not ample if the speaker is not permitted to reach the "intended audience.").

Plaintiffs' intended audience included not only the public at large but police officers in and around the precinct building, who they hope to persuade of their position of pressing issues of the day. The Ninth Circuit has already held that chalking in front of law enforcement buildings is protected speech. *MacKinney*, 69 F.3d 1004-1007. To the extent the City argues it can use the ordinance to criminalize chalking on the concrete barriers the police used to blockade the sidewalk, it effectively prevents Plaintiffs from reaching their intended audience. If this were permissible, the City could erect concrete barriers blocking the sidewalks around all government buildings and prevent troublesome disagreement across the board.

### c. No State Authority Limits the Plain Language of the Ordinance, and No Available Limiting Construction Would Cure the Ordinance's Overbreadth.

The City cannot save the ordinance by urging the court to adopt a limiting or narrowing construction for at least two reasons. First, there is no state authority interpreting the ordinance or other basis enabling the court to "identify[y] a clear line [to] draw." *Reno v. ACLU*, 521 U.S. 844, 884, (1997). Second, the "open-ended character" of the ordinance "provides no guidance whatever for limiting its coverage." *Id.* In considering a facial overbreadth challenge, the Supreme Court has made clear it "will not rewrite a …law to conform it to constitutional requirements," because doing so would require a "serious invasion of the legislative domain." *Id.* (*citing United States v. Treasury Employees*, 513 U.S. 454, 479 (1995) *and Virginia v. American Booksellers Assn., Inc.*, 484 U.S. 383, 397 (1997). "In considering a facial challenge, this Court may impose a limiting construction on a statute only if it is 'readily susceptible' to such a construction." *Reno*, 521 U.S. at 884 (*citing American Booksellers*, 484 U.S. at 397).

Washington authority citing the ordinance at all is scant. Two published decisions construing the ordinance predate the 1996 amendment and addressed traditional "property

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 21

No. 2:23-cv-00017-TLF

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

destruction" rather than a ban on writing on the property of others. *Seattle v. Barrett*, 58 Wn. App. 698, 794 P.2d 862 (1990); *Seattle v. Duncan*, 44 Wn. App. 735, 723 P.2d 1156 (1986). Several cases have interpreted RCW 9A.48.090 (the state malicious mischief) but none have construed that language or addressed facial constitutionality. *See Bledsoe v. Ferry Cty*, *supra* (finding statute violated Plaintiffs rights as applied in absence of facial challenge); *State v. J.A.V.*, 20 Wn. App. 2d 601, 501 P.3d 159 (2021) (finding conviction under statute did not require proof of who owned the property at issue).  There is therefore no governing state court decisions construing the ordinance in a way different than its plain language.

Whatever the City may argue today, this Court is bound to rely on the ordinary meanings of the words of the ordinance. Those words subject Seattle residents to arrest for making a "mark of any type" on "any real or personal property owned by any other person" regardless of any other circumstance, including whether the resident had permission or whether the mark was protected expression in a public forum. This chills everyone's core speech rights on controversial topics and hands unfettered discretion to law enforcement to determine how and when to arrest those engaged in peaceful and constitutionally protected public expression, as demonstrated by the facts of this case. *See Broadrick v. Oklahoma*, 413 U.S. at 613 (*citing Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969)).

### d.  SMC 12A.08.020(A)(2) Separately Violates Due Process Because it is Vague and Proscribes Entirely Innocent Conduct.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Hunt v. City of L.A.*, 638 F.3d 703, 712 (9th Cir. 2011) (*quoting Grayned v. City of Rockford*, 408 U.S. 104, 108, (1972)).

An ordinance is void for vagueness in violation of the Due Process Clause of the Fourteenth Amendment "because either it (1) fails to give a person of ordinary intelligence a

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

reasonable opportunity to know what is prohibited; (2) impermissibly delegates basic policy matters to policemen [sic], judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application; or (3) abut(s) upon sensitive areas of basic First Amendment freedoms, operating to inhibit the exercise of [those] freedoms." *Hunt*, 638 F.3d at 712 (internal citations and quotations omitted). Where criminal sanctions are involved and the law implicates First Amendment rights, a more demanding standard applies. *Id.* (internal citations and quotations omitted).

SMC 12A.08.020(A)(2) meets all three elements. It fails to give an ordinary person notice of what is prohibited because its plain language prohibits a wide variety of perfectly innocuous conduct, like signing a payment slip set down on a restaurant table by waitstaff. The ordinance impermissibly delegates basic policymaking to police officers because it gives them unfettered discretion to decide which people among an entire city's worth of violators to arrest. *Houston v. Hill*, 482 U.S. at 465 n. 15. The ordinance's broad terms authorize police officers to arrest anyone writing in chalk on any sidewalk or a concrete barrier the police erect to cordon off a precinct from the public, or anyone writing on any piece of paper owned by their employer, or their spouse. Precisely because this language gives police the authority arrest essentially anyone, it delegates to police the basic policy decision about which acts of writing should be subject to arrest, in violation of the Fourteenth Amendment. *Hunt*, 638 F.3d at 712; *see* p. 16, *supra.*

A criminal law also violates due process where it fails to give the public "fair notice" of the conduct prohibited because it prohibits "entirely innocent" or "normally innocent" conduct. *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972); *Lambert v. California*, 355 U.S. 225, 228-29 (1957). The danger of such laws is especially great where there is no requirement of

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION - 23

No. 2:23-cv-00017-TLF

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

"having a specific intent to commit an unlawful act" and infringe the write to engage in conduct and speech historically recognized as vital to the life of a free society:

> These unwritten amenities have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity. These amenities have dignified the right of dissent and have honored the right to be nonconformists and the right to defy submissiveness. They have encouraged lives of high spirits rather than hushed, suffocating silence.

*Papachristou*, 405 U.S. at 163-64.

Wall writing has a long and vital history. Boston residents greeted a British proclamation of the revolutionary war era with "an ingenious variety of obscenities chalked on walls and fences." P. Smith, *A New Age Now Begins: A People's History of the American Revolution,* p. 507 (1989). As the union army advanced towards Richmond, Virginia in 1862, residents loyal to the union chalked patriotic slogans on walls around the city. E. Thomas, *The Confederate State of Richmond: A Biography of the Capital*, p. 90 (2d. ed. 1998) "[W]all writing has been a medium of expression for the common man. Most history has been told from the point of view of the aristocracy. But graffiti gives information about society not recorded in the formal annals." R. Reynolds, *Magic Symbols: A Photographic Study on Graffiti*, preface (1975). American soldiers in World War I wrote on the walls on French caves in Verdun. C. Whitney, "Etched in Stone, Words from the Great War's Dead," *New York Times*, November 8, 1998 (https://www.nytimes.com/1998/11/08/world/etched-in-stone-words-from-great-war-s-dead.html) (last accessed 3/6/2023). Plaintiffs availed themselves of precisely these historically well-established purposes – communicating political messages to the public and the government in an effective but inexpensive manner. And Plaintiffs did so in a completely and inherently temporary fashion, causing no damage to any property. Yet they found themselves in jail under

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 24

No. 2:23-cv-00017-TLF

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

1   the 1996 ordinance and could still be arrested for the same conduct today under the 2023

2   ordinance.

3   **iii.      Plaintiffs Satisfy the Remaining Requirements for a Preliminary Injunction**

4   The remaining requirements for a preliminary injunction are that plaintiffs are likely to suffer

5   irreparable harm in the absence of preliminary relief, that the balance of equities tips in their

6   favor, and that an injunction is in the public interest." *Am. Bev. Ass'n.*, 916 F.3d at 754.

7

8   The Supreme Court has held "the loss of First Amendment freedoms, for even minimal

9   periods of time, unquestionably constitutes irreparable injury" for purposes of the issuance of a

10  preliminary injunction. *Elrod v. Burns*, 427 U.S. 347, 373, 49 L. Ed. 2d 547, 96 S. Ct. 2673

11  (1976); *Cuviello*, 944 F.3d at 833. Thus, the first and second elements of the requirements for

12  injunctive relief merge – if Plaintiffs satisfy the Court that they are likely to prevail on the merits

13  of their overbreadth claim, then the Court should also find that they are likely to suffer

14  irreparable harm in the absence of a preliminary injunction. *See Nelson v. NASA*, 530 F.3d 865,

15  882 (9th Cir. 2008), rev'd and remanded on other grounds, 131 S. Ct. 746 (2011). Here, all

16  Plaintiffs were actually arrested and detained by police, preventing them from engaging in

17  protected speech; and in addition to this deprivation the continued existence of the ordinance

18  chills and deprive of the write to use sidewalk chalk or other temporary means to express

19  criticism of the government – this unquestionably constitutes irreparable injury. *Cuviello*, 944

20  F.3d at 833.

21

22  Similarly, in cases against the government, the third and fourth elements of the preliminary

23  injunction inquiry also merge, since the balance of equities will favor Plaintiffs to the same

24  extent that a preliminary injunction is in the public interest. *Nken v. Holder*, 556 U.S. 418, 435

25  (2009). The balance of equities and the public interest favor Plaintiffs here because the City can

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

prevent actual property destruction with a properly tailored ordinance, while the City and the public both benefit by the vindication of the public's right to express their views peacefully and non-destructively without fear of unlawful arrest. As demonstrated by the City's swift amendment to the ordinance in response to this litigation, amending an ordinance in an effort to comply with the law is not a cumbersome task. All four Plaintiffs fear arrest from further political chalking and have curtailed their chalking activity, specifically with respect to chalking on public rights of way near police officers. *See* Declaration of Plaintiff Derek Tucson; Declaration of Plaintiff Robin Snyder; Declaration of Erik Moya-Delgado; Declaration of Monsieree de Castro. The chilling and deterrent effect on Plaintiff's speech is to be expected where Plaintiffs were arrested and booked into jail for exercising their rights. *White v. Lee*, 227 F.3d 1214, 1241 (9th Cir. 2000) (plaintiffs are "obligated to prove only that the officials' actions would have chilled or silenced "a person of ordinary firmness from future First Amendment activities," not that their speech and petitioning were "actually inhibited or suppressed.") (*quoting Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)). Here, as in *White*, "the fact that the plaintiffs incurred First Amendment injury is not a matter in genuine dispute." 227 F.3d at 1241. An injunction prohibiting enforcement of the post-amendment SMC 12A.08.020(A)(2) should issue.

## IV.     CONCLUSION

For the foregoing reasons, the Court should issue a preliminary injunction.

DATED this 23rd day of March, 2023.

By: MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

By: THE LAW OFFICE OF NEIL FOX
2125 Western Ave Ste 330
Seattle, WA 98121-3573
Tel 206.728.5440 Fax 866.422.0542

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 26

No. 2:23-cv-00017-TLF

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301

*s/Braden Pence*
Braden Pence, WSBA #43495
Email: bradenp@mhb.com

*s/Nathaniel Flack*
Nathaniel Flack, WSBA #58582
Email: nathanielf@mhb.com

**Attorneys for Plaintiff**

*s/Neil Fox*
Neil Fox, WSBA #15277
Email: nf@neilfoxlaw.com

I certify that this memorandum contains 7,979 words in compliance with the local rules.

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 27

No. 2:23-cv-00017-TLF

19487.00001 qa292301

1

<u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on this date I electronically filed the foregoing document with the

3

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

4

following individuals:

5

6

Attorneys for Defendants

7

Ann Davison
Seattle City Attorney

8

9

Jessica Leiser, WSBA#49349
Assistant City Attorney
Email: Jessica.leiser@seattle.gov

10

11

Kerala Cowart, WSBA #53649
Assistant City Attorney
Email: kerala.cowart@seattle.gov

12

13

Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

14

15

DATED this 23rd day of March, 2023, at Seattle, Washington.

16

17

18

__s/ Lucas Wildner_____
Lucas Wildner, Legal Assistant

19

20

21

22

23

24

25

26

27

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION  - 28

No. 2:23-cv-00017-TLF

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

19487.00001 qa292301