1

Honorable Marsha J. Pechman

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

DEREK TUCSON, ROBIN SNYDER,
MONSIEREE DE CASTRO, and ERIK
MOYA-DELGADO,

No. 2:23-cv-00017-MJP

9

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

10

Plaintiffs,

11

v.

12

NOTED ON MOTION CALENDAR:
April 21, 2023

CITY OF SEATTLE, ALEXANDER
PATTON, TRAVIS JORDAN, DYLAN
NELSON, JOHN DOES (#1-4), and JANE
DOES (#1-2)

13

14

15

Defendants.

16

17

18

## I.    INTRODUCTION

19

This case involves well-pled allegations of viewpoint discrimination and an overbroad

20

and vague municipal ordinance. The Court should deny Defendants' Motion to Dismiss.  Dkt.

21

14.

22

## II.    FACTUAL AND PROCEDURAL BACKGROUND

23

On the evening of January 1 and into the morning of January 2, 2021, Defendants

24

arrested and jailed Plaintiffs in the middle of a pandemic because they wrote messages critical of

25

the police with non-permanent, water-soluble chalk on public surfaces outside the Seattle Police

26

Department East Precinct. At the same time, Defendants undeniably tolerate chalking on public

27

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS - 1

No. 2:23-cv-00017-MJP

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1
2
3
4
5
6
7

surfaces when the messages are pro-police. Defendants clearly targeted Plaintiffs for exercising their First Amendment rights, using an overbroad and vague ordinance as a tool to quash dissent. These allegations are plainly and clearly pled in the complaint, Dkt. 1, and in the proposed supplemental complaint filed after Defendants amended Seattle's property destruction ordinance in response to this lawsuit. Dkt. 23-1 & 23-2. Defendants' motion is poorly conceived and should be denied.

8

### A. Complaint Allegations

9
10
11
12
13
14

In short, Plaintiffs allege their arrests violated the First, Fourth, and Fourteenth Amendments because they were arrested based on the content of their speech, under a facially overbroad and vague ordinance, and without probable cause. Their allegations describe the circumstances of their arrest, and they further make detailed allegations regarding Defendants' discriminatory enforcement of the ordinance.

15
16
17
18
19

The Complaint (Dkt. 1) and proposed Supplemental Complaint (Dkt. 23-2)[1] allege that Defendants Patton, Jordan, and Nelson arrested Plaintiffs on January 1, 2021. Dkt. 1, ¶¶1.4.3, 4.4, 4.10-4.15.  Prior to the arrests, Defendant City of Seattle erected a concrete barrier which blocked access to the public sidewalk along Pine Street and 12th Avenue. *Id*., ¶4.2.

20
21
22
23
24
25
26
27

[1]      As discussed below at Section II.B,C, *infra*, the Supplemental Complaint reflects changes to the Ordinance which the City initiated after Plaintiffs filed their Complaint. *See* Dkt. 22. Defendants have made clear they "do not object" to Plaintiffs filing the Supplemental Complaint to reflect Defendants' own actions during litigation. *See* Dkt. 32; FRCP 15(d). Defendants' Motion to Dismiss addresses only the original Complaint (Dkt. 1). The Court should grant the uncontested motion to file to the Supplemental Complaint (Dkt. 23), and once it does so, the original complaint will no longer be operative. Defendants have not filed any motion to dismiss the pending Supplemental Complaint. Given the ambiguity of Defendants' position and the procedural state of affairs their amendment and motion practice have created, Plaintiffs urge the Court to deny Defendants' motion as moot, since it does not address what will soon become the operative complaint. *See* Section III.A, *infra.* In an abundance of caution, Plaintiffs alternatively treat Defendants' Motion to Dismiss as applicable to either the original complaint or the Supplemental Complaint. Under either complaint, Defendant's motion should be denied for the reasons discussed herein.

The arrests began when Plaintiff Tucson wrote the words "peaceful protest" using a piece of ordinary charcoal on the barrier blocking the sidewalk. *Id*., ¶¶4.3, 1.4 (photograph of "peaceful protest" message). This writing was inherently temporary, caused no damage to the function or aesthetic purpose of the wall, and would wash off in Seattle's abundant winter rain. *Id*., ¶4.5. For this act of political speech, Plaintiff Tucson was handcuffed, arrested, escorted into the East Precinct, placed in a holding cell, and then booked into King County Jail in contravention of the County's Covid safety protocols. *Id*., ¶¶4.16-4.24. At the King County jail, Plaintiff Tucson was searched, stripped of civilian clothing, dressed in jail garb, photographed, fingerprinted, and placed in a holding cell, all because he had written the words "peaceful protest" as depicted in ordinary charcoal. *Id*., ¶¶4.25; 1.4.  The arrest was based on the Defendant officers' reliance on the then-existing version, SMC 12A.08.020, which stated that a "A person is guilty of property destruction if he or she . . . (2) Writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person." Dkt. 1, ¶¶ 4.27-4.28. The Complaint alleges that ordinance was facially overbroad and vague because its wording allows arrest for a vast array of protected speech. Id., ¶¶4.28-4.35.  Among the issues identified in the Complaint was the ordinance's apparent authorization for arrest due to any writing on any surface not owned by the writer (regardless of permission) and its lack of a *mens rea* element. *Id*., ¶¶4.28-4.30.

The complaint further alleges that Defendants arrested Plaintiff Tucson because of retaliatory animus and without probable cause. *Id*., ¶¶ 4.34, 5.7. The Complaint alleges that the City has a practice of treating politically-neutral or pro-police chalking on *all* public surfaces as non-arrestable or even lawful, *id.,* ¶¶ 4.36-4.39, while repressing comparable speech that criticizes police, *id.* ¶¶ 4.40-4.43. These allegations include an incident less than 90 days after

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 3

No. 2:23-cv-00017-MJP

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1
2
3
4
5
6

Plaintiffs' arrest in which a City police lieutenant threatened protesters with "enforcement action" under "SMC property destruction" if they wrote chalk messages criticizing SPD on the sidewalk outside of the SPD's West Precinct building. *Id*., ¶¶ 4.41. Plaintiffs have reason to believe the future discovery will show arrests occurred under similar circumstances prior to January 1, 2021.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

Plaintiffs Snyder, De Castro, and Moya-Delgado make substantively identical allegations about their arrests. Id., ¶¶4.7-4.16. After Defendants arrested Plaintiff Tucson, Defendants arrested each of three other Plaintiffs on suspicion of having written other messages of protest in ordinary sidewalk chalk or charcoal. *Id*. Like Plaintiff Tucson's message, all of the other Plaintiffs' messages were inherently temporary and would wash off in the rain. *Id*., ¶4.9. Plaintiffs Snyder, De Castro, and Moya-Delgado were all arrested after verbally protesting the arrest of Plaintiff Tucson, demanding an explanation from the Defendant arresting officers, and writing temporary messages of further protest in temporary chalk and charcoal. *Id*., ¶¶4.6-4.9. Plaintiffs Snyder, De Castro, and Moya-Delgado allege they were arrested and booked into King County Jail under the same "property destruction" ordinance as Plaintiff Tucson, *id*., ¶¶4.6-4.9, and pursuant to the same City enforcement practice and policy of targeting protest messages while treating messages of support for police as non-arrestable and lawful. *Id*., ¶¶ 4.36-4.43. All four Plaintiffs allege their speech is thereby chilled and deterred. *Id*., ¶¶4.42.43.

22
23

**B. The City Amends the Ordinance in Response to the Complaint, Leading to Plaintiffs' Supplemental Complaint.**

24
25
26

On March 14, 2023 – after the Complaint was filed – the Seattle City Council passed, and Mayor Bruce Harrell signed, City Council Bill 120521, reorganizing the ordinance. Dkt. 23-2 (Supplemental Complaint), ¶4.35. The bill's sponsor, Councilmember Lisa Herbold, described it

27

is as a "risk management bill intended to mitigate a possible risk with our current code, that has come to light in the course of a current lawsuit." *Id*. Councilmember Herbold explained that her "objective as the sponsor of the legislation was to address only the risk exposure, otherwise I believe if we were dealing with policy issues, the bill should be heard in committee to have those deliberations. So, very narrowly limited to address the risk management recommendations of the City Attorney's Office." *Id*.

The City's amendment changed SMC 12A.08.020, in two ways. First, it added the *mens rea* element of intent to SMC 12A.08.020(A)(2), the provision at issue in this case. *Id*., ¶4.36. Second, it made the "express permission of the owner or operator of the property" an element rather than an affirmative defense. *Id*., ¶¶4.35-4.36. The Ordinance's substantive prohibition on writing of any kind without "express permission" (including with implicit permission) remains the same. *Id*. The ordinance continues to make no distinction between non-protected, permanent, and/or destructive writing and protected, temporary, and inherently non-destructive writing.

A week after amending the ordinance, the City moved to dismiss Plaintiffs' complaint (Dk.-1). Dkt. 14. The same week, Plaintiffs filed their Motion for Preliminary Injunction (Dkt. 16) and Motion to File their Supplemental Complaint reflecting the City's changes to the ordinance (Dkt. 22 and attachments), which are before the Court and noted for consideration simultaneously with Defendants' Motion to Dismiss. *See* Dkt. 28, 31.

### III.     ARGUMENT

Defendants ask the Court to dismiss the Complaint in its entirety. A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

defendant is liable for the misconduct alleged. *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 4 (2007). The Court must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1066 (9th Cir. 2013)

"In determining whether an asserted claim can be sustained, '[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party.'" *Miracle v. Hobbs*, 427 F. Supp. 3d 1150, 1153 (D. Ariz. 2019) (*quoting Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012)). The party moving for dismissal has the burden of proving that no claim has been stated. Moore's Fed. Practice, §12.34 (3d. ed. 2011).

Plaintiffs have more than satisfactorily pleaded facts supporting each element of each of their claims for each cause of action alleged. Defendants' motion seeks to end and/or substantially narrow this case before discovery can begin. Defendants' motion does this by rewriting Plaintiffs' allegations and mischaracterizing the law, often claiming the complaint lacks allegations which it does not, by analogizing cases decided on summary judgment rather than a motion to dismiss and failing to alert the Court to these material distinctions. The reality – which Defendants seek to prevent Plaintiffs from further substantiating through discovery – is that the Defendants arrested and booked Plaintiffs into jail for their political viewpoint, relying on a sweeping city ordinance that grants unfettered discretion for police to engage in precisely that type discrimination. As discussed below and in Plaintiffs' Motion for Preliminary Injunction, Dkt. 16, the Ninth Circuit has already recognized the Draconian nature of arrest for this kind of protest and the constitutional violations that occur when the government punishes this peaceful and non-destructive form of political speech with arrest. Defendants should not be

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

allowed to avoid accountability for their hostility towards the First Amendment, and their motion to dismiss should be denied.

### A. Defendants' Motion Should Be Denied as Moot Because it Attacks the Original Complaint, Not the Supplemental Complaint Currently Before the Court and Does Not Address Recent Factual Changes to the Ordinance

It is appropriate to deny a motion to dismiss which addresses a non-operative complaint. *Pruchnicki v. Envision Healthcare Corp.*, 439 F. Supp. 3d 1226, 1230 (D. Nev. 2020) (denying motion to dismiss non-operative complaint as moot); *Border Chicken AZ LLC v. Nationwide Mut. Ins. Co.*, 501 F. Supp. 3d 699, 701 n.1 (D. Ariz. 2020) (same); *Cedar Lane Techs. Inc. v. Blackmagic Design Inc.*, No. 20-cv-01302-VC, 2020 U.S. Dist. LEXIS 217169 (N.D. Cal. Nov. 19, 2020) (same).

The Court could find Defendants' motion moot because it addresses the original Complaint (Dkt. 1), and not the Supplemental Complaint (Dkt. 23-2). While Plaintiffs' Motion to File Supplemental Complaint (Dkt. 22) is still pending before the Court and in theory the original Complaint is still the operative complaint, Defendants have posed no objection to its filing, and the Supplemental Complaint should promptly become operative. Dkt. 32; FRCP 15(d) ("the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented"). The Supplemental Complaint was necessitated because Defendants strategically amended the challenged ordinance following filing of the original Complaint. Defendants amended the ordinance on March 14 and filed the motion to dismiss on March 21. If the Court denies this motion on the merits, Defendants will presumably file a new motion to dismiss the Supplemental Complaint on similar grounds. Judicial resources would be better spent addressing the Defendants' arguments as they pertain to the Supplemental Complaint. Therefore, the Court

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

should deny Defendants' present motion to dismiss as moot. *See Pruchnicki*, 439 F. Supp. 3d 1226.

**B. Dismissal of Plaintiffs' First Amendment Retaliation Claims is Improper When Plaintiffs Alleged That Defendants Retaliated Against Plaintiffs Based on Viewpoint**

"[A]s a general matter, the First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022), (*quoting Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1259, 212 L. Ed. 2d 303 (2022) (*quoting Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019)). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." *Id.* (internal quotation marks omitted).

Probable cause does not defeat a retaliatory arrest claim where police would typically exercise their discretion to not arrest. *Nieves,* 139 S. Ct. at 1727 (*citing Lozman v. Riviera Beach*, 585 U. S. ___, 138 S. Ct. 1945, 201 L. Ed. 2d 342 (2018) (holding that even the existence probable cause does not bar a plaintiff's First Amendment retaliation claim against a municipality where arrest occurred pursuant to municipal policy of retaliation)). Justice Roberts discussed the following hypothetical in *Nieves,* making it clear that Plaintiffs have properly pleaded a First Amendment retaliation claim:

> For example, at many intersections, jaywalking is endemic but rarely results in arrest. If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest. In such a case… probable cause does little to prove or disprove the causal connection between animus and injury[.]

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

139 S. Ct. at 1727. The Court expressly held, "the no-probable-cause requirement should not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 1727.

The Supreme Court makes clear that, in order to defeat Defendants' motion at the pleading stage, Plaintiff must only allege that retaliatory animus caused the arrest:

> To prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's "retaliatory animus" and the plaintiff's subsequent injury. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Nieves*, 139 S. Ct. at 1722 (2019) (internal citations and quotations omitted).

Here, Plaintiffs have pleaded just such a causal connection between the City and its officers' retaliatory animus and their decision to arrest Plaintiffs, including detailed allegations showing that the City's policy is not to arrest similarly situated individuals who engaged in neutral or  pro-police speech. The Complaint and Supplemental Complaint both allege that Defendants retaliated against Plaintiffs based on animus related to Plaintiffs' protected expressions.

First, Plaintiffs allege that Defendants arrested Plaintiffs for writing messages critical of Defendants near the East Precinct within months of Defendants exercising their discretion to tolerate supportive messages chalked (likely by police officers themselves) at City Hall. Dkt. 1, ¶¶1.3, 1.5, 1.6, 5.1; Dkt. 23-2, ¶¶1.3, 1.5, 1.6, and 5.1. The Complaint alleges specifically that the City has publicly stated that in the context of non-critical messages, the use of sidewalk chalk is not a crime under the municipal code. Dkt. 1, ¶4.39.  The complaint then alleges with specificity that SPD tolerates (and may even participate in) pro-police chalking. Dkt. 1, ¶¶4.38, 4.39; Dkt. 23-2, ¶¶4.40, 4.41. Plaintiffs further allege (and substantiated) Defendants'

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

intentionally targeting Plaintiffs and similarly situated political detainees for incarceration by exercising authority to "override" Covid-19-era booking policies such that Plaintiffs were incarcerated while similarly situated non-political detainees were released. Dkt. 1, ¶¶4.17-4.24; Dkt. 23-2, ¶¶4.17-4.24. Plaintiffs' original and Supplemental Complaint are both more than adequate to survive a challenge on the pleadings because they allege with particularity and plausibility that the City has a policy of retaliation in which the speech at issue is not subject to arrest except when the message is critical. *Nieves*, 139 S. Ct. at 1727.

The City's motion attempts to rewrite, rather than address, Plaintiffs' allegations. As Defendants would have it, Plaintiffs' allegations distinguish between *sidewalks and walls*, irrespective of the message. *See* Dkt. 14, p. 6. But that argument fails for multiple reasons.

First, Plaintiffs allege specifically that the City threatens protesters engaged in critical speech with arrest for chalking *when the chalking occurs on the sidewalk on a SPD barrier blocking the sidewalk*, while permitting sidewalk chalk that supports SPD. Dkt. 1, ¶¶4.38, 4.41. While Defendants claim that the barrier blocking the sidewalk was not a public forum, Dkt. 14 at 7-8, a public forum analysis is a factual issue which cannot be decided simply because the City asserts in a conclusory fashion that the forum is not public. *See Jacobson v. United States Dep't of Homeland Sec.*, 882 F.3d 878, 883 (9th Cir. 2018) (inappropriate to dismiss on summary judgment complaint alleging exclusion from Border Patrol enforcement zone because of factual nature of analysis). Certainly, a public sidewalk in a major urban area, adjacent to a public street, is a traditional public forum. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) ("Public streets and sidewalks occupy a special position in terms of First Amendment protection. They are the archetype of a traditional public forum.") (alteration and internal citations and quotation marks omitted). *See Snyder v.*

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

*Phelps*, 562 U.S. 443, 456 (2011) ("But Westboro conducted its picketing peacefully on matters of public concern at a public place adjacent to a public street. Such space occupies a special position in terms of First Amendment protection.") (internal quotes and citation omitted).

As the space was a traditional public forum, Defendants cannot simply close it to insulate themselves from public criticism and transform it into a private forum. "Although it is possible for a public forum to lose its status, 'the destruction of public forum status . . . is at least presumptively impermissible.'" *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1105 (9th Cir. 2003) (alteration in original) (quoting *United States v. Grace*, 461 U.S. 171, 180 (1983)). The government bears the burden of proving that it has altered a public forum into a non-public forum, *Jacobson*, 882 F.3d at 882-83, an issue that must be raised later in the case and in a posture other than a 12(b)(6) motion.

While the City cites to a series of cases involving walls and fences around baseball fields, a VA hospital and police station, Dkt. 14 at 7, all of these decisions were all addressed on summary judgment -- not under 12(b)(6). The factual nature of each case was important, and none of cited cases involved alleged transformation of the public forum into a private space, on a temporary or permanent basis, for the purpose of avoiding criticism, without or without any attempt to inform the public of the transformation.

While Defendants deny that it is their policy and practice to allow chalking on sidewalks, but not on barriers, they provide no evidence to support that contention and it is factually disputed. It is an issue that must be developed through discovery and at trial, not a ground for dismissal at the pleading stage.

Finally, Defendants badly contradict themselves in raising these arguments; they suggest on the one hand that Plaintiffs would not have been arrested had they chalked on the sidewalk

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

(Dkt. 14, pp. 4, 7); while simultaneously suggesting there is no right to chalk on the sidewalk at all, (Dkt. 14, p 14) in contravention of clear Ninth Circuit precedent (which Defendants fail to cite), *MacKinney v. Nielsen*, 69 F.3d 1002, 1005 (9th Cir. 1995). While Defendants rely on out-of-circuit precedent, Dkt. 14 at 17-18 (citing *Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011)), Defendants fail to note that such authority has been limited to cases where there is no allegation of retaliatory enforcement, *see Bledsoe v. Ferry Cty.*, 499 F. Supp. 3d 856, 874 (E.D. Wash. 2020), which is exactly what has occurred here.  In this regard, given the plain language of the ordinance applies to any writing on any surface, Defendants' unsubstantiated claim that the sidewalk might somehow enjoy protection, but barriers obstructing sidewalks do not, actually supports Plaintiffs' vagueness argument.

In *MacKinney*, the plaintiff asserted a First Amendment retaliation claim after police arrested him for writing in chalk on the sidewalk. 69 F.3d at 1004. The Ninth Circuit reversed the district court's grant of summary judgment to defendants. In holding that the plaintiffs' refusal to stop chalking was protected speech. *Id*. The court applied the well-established rule that the First Amendment protects the right to verbally challenge police, and further observed that "[n]o reasonable person could think that writing with chalk would damage a sidewalk." *Id*. at 1005. The Ninth Circuit and district courts in Washington have reaffirmed that chalking on the public right of way is protected by the First Amendment. *See Ballentine v. Tucker*, 28 F.4th 54 (9th Cir. 2022); *Bledsoe v. Ferry Cty*, *supra*. It is clear from the face of Plaintiffs' complaint, and a subject for discovery, that the temporary barrier which Plaintiffs were arrested for writing on was erected to block access to very same public sidewalk on which the City must concede Plaintiffs could chalk on as part of their protest. *See* Dkt. 1, ¶4.2.

As the Ninth Circuit observed in *MacKinney*, "[n]o reasonable person could think that writing with chalk would damage a sidewalk." 69 F.3d at 1005. By the same token, no reasonable officer – or reasonable Seattle resident – could think chalk or charcoal would "damage" a temporary concrete barrier blocking the sidewalk; therefore, as alleged, no probable cause existed, and regardless of whether it existed as technical matter under the words of the overbroad ordinance, Plaintiffs state a claim for retaliatory arrest. *Nieves,* 139 S. Ct. at 1727; *see also Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) (discussing lack of probable cause in retaliatory arrest claim where statute claimed for arrest was clearly unconstitutional).

Contrary to Defendants' attempt to reframe the challenge to the ordinance as rooted in a distinction between the *surfaces* on which messages are written, Plaintiffs have actually alleged discrimination based upon the *viewpoint* expressed therein irrespective of the surface on which it happens to be expressed. Importantly, as noted, the ordinance the City relied upon when retaliating against Plaintiffs criminalizes writing all surfaces: sidewalks, concrete barriers, paper, word processors, and literally ever other surface. Plaintiffs clearly allege that the City selectively enforced (and threatened to enforce) that ordinance on the basis of viewpoint. Dkt. 1, ¶¶ 4.38, 4.41.

The City's argument is a thinly veiled effort to prematurely cut Plaintiffs off from conducting discovery *because* Plaintiffs have not yet conducted discovery. Nearly all of the cases Defendants cite in support of this argument address summary judgment (or other inapposite procedural postures) rather than a Rule 12 motion. Dkt. 14, pg. 4 ln 13; 6 ln. 1-5; *see Thomas v. Chi. Park Dist.*, 534 U.S. 316 (2002) (decided on summary judgment); *Cullen v. Coakley*, 573 U.S. 464, 475 (2014) (decided on bench trial); *Hoye v. City of Oakland*, 653 F.3d 835 (2011) (decided on summary judgment). The one case that was dismissed on the pleadings (cited by

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1   Defendants for another proposition, Dkt. 14, pg. 7 ln. 2-3) was ultimately reversed by the Ninth

2   Circuit and allowed to proceed to discovery. *Lacey v. Maricopa County*, 693 F.3d 896, 940

3   (2012) (en banc) (plaintiff allowed to proceed to discovery on First Amendment retaliation

4   claims). Notably, Defendants quote *Lacey's* language about the necessity of "anecdotal or

5   statistical" evidence while ignoring the anecdotal evidence in Plaintiffs' complaint (Dkt. 1, ¶¶

6   4.37-4.43) and while attempting to deny Plaintiffs' access to statistical evidence prior to

7   discovery. Even if the Court permits Defendants to define Plaintiffs' theory of discrimination as

8   based on surface rather than the viewpoint, Defendants must still be denied: Plaintiffs have

9   plausibly pleaded that Defendants have threatened "enforcement action" for writing anti-police

10  messages on the sidewalk while not doing so against pro-police messages. *Id*., ¶¶ 4.37-4.43.

11

12  ### C.  Dismissal of Plaintiffs' Facial and As Applied Challenges to SMC 12A.08.020 Would Be Improper

13

14  #### i.    Plaintiffs' First Amendment Facial Challenge Is Not Moot

15  Defendants argue that Plaintiffs' facial challenges are moot because of Defendants'

16  amended ordinance. As Plaintiffs have pointed out in their Motion for Preliminary Injunction,

17  Dkt. 16, the facial challenge and other claims are largely unaffected by the 2023 amendment

18  because  it does not narrow the ordinance's sweeping prohibition on all writing or marking on all

19  surfaces without express permission. Plaintiffs' claims are not "moot" because the amended

20  Ordinance is essentially identical to pre-amendment Ordinance in this important respect and

21  continues to chill and deter Plaintiffs' protected speech. *See Cuviello v. City of Vallejo*, 944 F.3d

22  816, 824-825 (9th Cir. 2019) (facial challenge was not rendered moot by amendment to

23  ordinance where amended ordinance was sufficiently similar and harm to plaintiff continued).

24  "[I]n a facial challenge to the overbreadth and vagueness of a law, a court's first task is to

25  determine whether the enactment reaches a substantial amount of constitutionally protected

26  conduct." *Houston v. Hill*, 482 U.S. 451, 458 (1987). "In the First Amendment context," a statute

27  "may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional,

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 14

No. 2:23-cv-00017-MJP

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1    judged in relation to the statute's plainly legitimate sweep."' *United States v. Stevens*, 559 U.S.

2    460, 473 (2010).

3         Plaintiffs have alleged all the facts necessary for their facial challenges under the First

4    and Fourteenth Amendments. They allege that SMC 12A.08.020, as it existed when they were

5    arrested and now, reaches and deters a substantial amount of constitutionally protected speech,

6    including anyone who writes on any surface without the "express" permission of the owner. Dkt.

7    23-2, ¶¶4.29,4.30, 4.35-4.36; SMC 12A.08.020. Despite Defendants hollow protestations that

8    arresting children for chalking rainbows is "unrealistic," (Dkt. 14, p. 14), the claim is reasonable

9    inference to draw from the facts of Plaintiffs' arrests and the City's discriminatory enforcement

10    practices as alleged in the complaint. The question the City's motion avoids answering is

11    whether chalking the sidewalk surface is criminal under the ordinance.  While it now claims that

12    children who chalk rainbows enjoy some protection, this claim is unsubstantiated in the record,

13    finds no basis in the language of the ordinance, and supports the Plaintiffs' vagueness and

14    content discrimination arguments –the City's overbroad discretion to decide that children's

15    rainbows are okay but "peaceful protest" is criminal.

16         Defendants' reliance on *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789

17    (1984), which upheld a restriction on signs affixed to lampposts, is similarly misplaced. First,

18    *Vincent* was an appeal from a summary judgment ruling entered after discovery, which is

19    inapposite authority here because Defendants seek to prevent any discovery at all. The facts of

20    *Vincent* concerned advertisements, which the Court distinguished from cases involving the

21    government's interest in "excluding the expression of certain points of view from the

22    marketplace of ideas." *Id*, at 804; *Id.*, at 793 n.3 (listing advertisements removed under ordinance

23    and noting their largely "commercial character"). It is well established that the Constitution

24    affords greater protection to political speech than to advertisements and other commercial

25    speech, an issue not before the Court here. *See Metromedia*, 453 U.S. at 507.

26         The Supreme Court has distinguished *Vincent* in ways directly relevant to Plaintiffs'

27    claims. In *City of Ladue v. Gilleo*, 512 U.S. 43, 114 S. Ct. 2038 (1994), the Court distinguished

1    between advertisements like those at issue in *Vincent* and such "absolutely pivotal speech as a

2    sign protesting an imminent governmental decision to go to war," a ban on which could not be

3    justified by a mere assertion of interest in limiting "clutter." *Gilleo*, 512 U.S. at 54.  Similarly, in

4    *Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009), the court found *Vincent*

5    distinguishable because the leaflets the government sought to regulate were inherently

6    "impermanent" and "transitory," and therefore the interest in reducing "blight" discussed in

7    *Vincent* was inapplicable. *Klein*, 584 F.3d at 1201 n.4.

8         In any event, Defendants may rely on *Vincent* as this case develops, but nothing in

9    *Vincent* (which relied on actual discovery into the government's enforcement practice) suggests

10   that dismissal of the complaint could be appropriate at this stage of the procedings. *See Vincent*,

11   *supra* at 793. The Supreme Court and Ninth Circuit "have repeatedly emphasized [that] 'merely

12   invoking interests…is insufficient.'" *Klein*, 584 F.3d at 1202 (*quoting Kuba v. 1-A Agric. Ass'n*,

13   387 F.3d 850 (9th Cir. 2004); *citing Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 73, 75, 101

14   S. Ct. 2176, 68 L. Ed. 2d 671 (1981) (rejecting asserted interests because the government

15   "presented no evidence"); *Bay Area Peace Navy v. U.S.*, 914 F.2d 1224, 1228 (9th Cir. 1990)

16   ("[The government] is not free to foreclose expressive activity in public areas on mere

17   speculation about danger"); *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 967 ("There

18   must be evidence in the record to support a determination that the restriction [on speech] is

19   reasonable."); *Berger v. City of Seattle,* 569 F.3d 1029, 1049 (9th Cir. 2009) ("A governmental

20   body seeking to sustain a restriction must demonstrate that the harms it recites are real.")).

21        Defendants also rely on a pin cite to *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir.

22   1996)), a case involving non-expressive sitting on the sidewalk. Review of that authority does

23   not support Defendants' claim at all..  At that pin cite, the Ninth Circuit holds that "where

24   conduct and not merely speech is involved, we believe that the overbreadth of a statute must not

25   only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep."

26   *Id*. The facts before this Court involve writing, which is pure speech with an understandable

27   message.  *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061-62 (9th Cir. 2010); *Texas. v.*

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

*Johnson*, 491 U.S. 397, 406 (1989). Notably, nowhere in *Roulette* is there any support whatsoever for Defendants' representation to this Court that Plaintiffs (whose speech has already suffered actual inhibition) must demonstrate a "realistic danger the protected speech of third parties might be inhibited." *See Roulette*, 97 F.3d at 305; Dkt. 14, pp. 4-5.

Defendants also appear to misquote the seminal case *Texas. v. Johnson*, 491 U.S. 397, 406 (1989). *See* Dkt. 14, p. 13 n. 7, suggesting that it stands for the proposition that so called "vandalism" is not protected speech. In fact the quote Defendants attribute to the case is only partially found there, and the actual holding is the exact opposite: in *Texas*, the Supreme Court found that flag burning *was protected* despite the lack of any overt "speech" in the form of words. In contrast, Plaintiffs here undisputedly engaged in pure speech in the form of written words expressing a clearly understandable message. *See Anderson*, 621 F.3d at 1061-62.

The City's immediate amendment of the ordinance in response to this suit only resolved the most obvious of the several theories of overbreadth alleged in the complaint, specifically the *mens rea* and affirmative defense arguments. The new ordinance does not alter the City's asserted basis for Plaintiffs' arrest, and indeed the City appears to take the position that it could still arrest Plaintiffs today under identical facts. Per the public statements alleged in the Supplemental Complaint, the amendment was a narrowly crafted "risk management" touché, , and not a comprehensive resolution of the fundamental dispute over the facial constitutionality of the Ordinance. Dkt. 23-2, ¶4.35.

Defendants argue for the application of the three-part test from *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293-94 (1983) and claim this test reveals the ordinance to be a permissible "manner restriction." Plaintiffs do not dispute the Ordinance passes first part of the test (that it is facially content and viewpoint neutral), but the remaining parts (narrow tailoring and alternative channels) are fatal to Defendants' argument. As Plaintiffs have alleged in detail, the ordinance is not narrowly tailored because by its terms it prohibits a wide range of protected speech include the kind of political chalking the Ninth Circuit has recognized as within

the First Amendment's protections. *Compare SMC 12A.08.020 with MacKinney* 69 F.3d at 1005; *Ballentine*, 28 F.4th at 58.  The ordinance, even as amended, is a sweeping 'anti-writing] prohibition that makes no distinction between private and public property, no distinction between protected- and non-protected speech, and no distinction between temporary chalk and true "property destruction." This is not the narrow tailoring demanded by the First Amendment. As the Court held in *Clark*, "the tailoring requirement is virtually forsaken inasmuch as the Government offers no justification for applying its absolute ban…" 468 U.S. at 312.

Similarly, the third prong of the test reveals that Plaintiffs do not have ample alternative channels available – for an important reason that Defendants' motion ignores entirely. Fundamental to the analysis is that Plaintiffs' speech rights here includes their right to address their intended audience in the vicinity of the precinct building. *Edwards v. City of Coeur D'Alene*, 262 F.3d 856, 866 (9th Cir. 2001) ("If an ordinance effectively prevents a speaker from reaching his intended audience, it fails to leave open ample alternative means of communication."); *see also Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) ("An alternative is not ample if the speaker is not permitted to reach the "intended audience."). An essential element of Plaintiffs' political chalking on a public right-of-way outside of the police precinct was Plaintiffs' intended audience – police officials and members of the public in the precinct or its vicinity. *Edwards*, 262 F.3d  at 866. By closing off the sidewalk in front of the precinct, and arresting Plaintiffs for chalking on the obstructing barrier, Defendants successfully punished and inhibited Plaintiffs and others like them from delivering their political message to their intended audience. *MacKinney* 69 F.3d at 1005; *Ballentine*, 28 F.4th at 58. Defendants did not Plaintiffs ample alternatives to communicate their message to their intended audience, so Defendants fail the third part of the *Clark* test as well.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

ii.     **Dismissal of Plaintiffs' First Amendment As-Applied Challenge Would Be Improper**

To sufficiently plead their claim of as-applied challenge to SMC 12A.08.020, Plaintiffs need only "plausibly allege[] a discrepancy in treatment on the basis of viewpoint," taking all of the factual allegations in the complaint as true. *Waln v. Dysart*, 54 F.4th 1152, 1163 (9th Cir. 2022).

Taking Plaintiffs' detailed allegation as true, it is more than plausible that the City and its employees enforce SMC 12A.08.020 in a selective and viewpoint-discriminatory manner, permitting pro-police chalking in the public forum while enforcing the ordinance against anti-police chalking. *See* Dkt. 1, ¶¶1.3, 4.34, 4.37-4.55, 5.1; *see also* Section II.B, *supra* (discussing complaint allegations showing City's enforcement practice for chalking depends on viewpoint). Thus, Plaintiffs alleged sufficient facts to show a First Amendment violation unless the government can satisfy strict scrutiny.  *Waln*, 54 F.4th at 1163; *see also First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1277 (9th Cir. 2017) (recognizing that viewpoint discrimination is subject to strict scrutiny); *Hoye v. City of Oakland*, 653 F.3d 835, 853 (9th Cir. 2011) (applying strict scrutiny to an ordinance neutral on its face but content-based as applied).

The words "strict scrutiny" appear nowhere in Defendants' motion apparently because they know they cannot satisfy it on the pleadings -- there is no compelling state interest ingviewpoint discrimination against temporary, non-destructive political messages . Therefore, Plaintiffs have sufficiently alleged Defendant City has a policy and practice of viewpoint discrimination, and the motion to dismiss these claims should be denied.

Instead, Defendants argue that they can unilaterally eliminate access to the traditional public forum of a sidewalk, and thereby transform the public form into their private forum in which Plaintiffs and the public have no speech right whatsoever. Dkt. 14, p. 8.  Yet Defendants

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

also concede that "[p]ublic streets and sidewalks constitute traditional public forums for First Amendment activities" and that "the Property Destruction ordinance restricts conduct in traditional public forums." *Id*., p. 15. It is clear that the Ninth Circuit recognizes temporary political chalk writing outside of government buildings as protected. *MacKinney*, 69 F.3d at 1005; *Ballentine v. Tucker*, *supra.* Defendants argue the barrier in this case is more akin to a lamppost or a "fence around [a] baseball field." Dkt. 14, p. 7. But this cavil misses the point. Plaintiffs have alleged facts which, taken as true along with the reasonable inferences therefrom, show a discrepancy in treatment based on the content and viewpoint of their speech. Dkt. 1, ¶¶4.37, 4.39, 4.40, 4.41, 4.42, 4.43, 4.44. That is all that is required at this stage. *Waln v. Dysart*, 54 F.4th 1152, 1163 (9th Cir. 2022).

> iii.    **Dismissal of  Plaintiffs' Fourteenth Amendment Facial Challenge Would Be Improper**

Defendants' arguments for dismissal of Plaintiffs' Fourteenth Amendment claims are meritless. Defendants make three arguments: (i.) that Plaintiffs "lack standing" to raise a vagueness challenge because the City considers their speech obviously proscribed by the Ordinance; (ii.) that the Ordinance gives notice as to what is prohibited; and (iii.) that the City does not consider enforcement discretion inherent in the ordinance to be arbitrary or problematic.

The first argument fails because it mischaracterizes the allegations. Plaintiffs do allege and argue that it is unclear whether the terms of the property destruction ordinance apply to them, including because their marks were inherently temporary and caused no damage to any property. Dkt., ¶¶4.5, 4.9, 5.2, 5.5. It is clear that the City believes it can arrest people under the ordinance in these circumstances. This belief does not make the sweeping scope of the ordinance clear or provide reasonable notice as to its enforcement. This leap in logic is perhaps the best illustrated by the City's failure to articulate the scope of authority it actually asserts under the ordinance –

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

does it allow arrest for chalked sidewalk rainbows or not? Does it allow arrest for political chalking on the sidewalk in from the East Precinct or not? Does it allow arrest for any marking by anyone on any surface, however temporary and non-destructive? Could the City arrest undersigned counsel for writing on a friend's scrap of paper left on their porch ("Stopped by to see you, give me a call")? These questions remain unanswered by the amended ordinance and the City's motion, and illustrate the vagueness as applied to Plaintiffs.

Similarly, as to Defendants' second argument, the ordinance's vagueness is illustrated by the vast sweep of the ordinance and its lack of clarity – including in Defendants' motion – about what exactly the City thinks is prohibited. Neither the ordinance nor the Defendants' motion says whether rainbows on the sidewalk are within the scope of the ordinance, instead suggesting it does not arrest for such things. Similarly, neither the ordinance or Defendants' motion explains whether Plaintiffs could be arrested for chalking the exact same messages on the sidewalk in front of the precinct. Thus the public did not and does not have reasonable notice of what is prohibited, even if the City were to proffer such an interpretation for the first time in its reply. *See Hunt v. City of L.A.*, 638 F.3d 703, 712 (9th Cir. 2011) (*quoting Grayned v. City of Rockford*, 408 U.S. 104, 108, (1972)); Dkt. 23-2, ¶¶4.35-37.

Finally, the complaint alleges that the ordinance gives unfettered discretion to police and does proscribe entirely innocent conduct. The sweeping and ambiguous text of the ordinance itself, and the detailed factual allegations in the Complaint, show that Defendants do in fact use the ordinance's broad discretion to target disfavored individuals and messages. Dkt. 23-2, ¶¶4.39-4.43.  Defendants cite to *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality), in which the Supreme Court found provisions like one here unconstitutionally vague.  As in, *Morales*, our Defendants have vast discretion to decide when to arrest someone for making a

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

"mark of any type" on "any real or personal property owned by another." *See* Dkt. 23-2, ¶4.36.
As the Supreme Court observed, mere "adopt[tion of] internal rules limiting [] enforcement"
does not give the public reasonable notice of what conduct may be subject to arrest or
prosecution. 527 U.S. at 63.

**D.  Dismissal of Plaintiffs' Monell Claims Would Be Improper**

The City is liable for constitutional violations of its employees when "the acts in question
were undertaken pursuant to official policy or custom." *Hopper v. City of Pascoe*, 241 F.3d
1067, 1082 (9th Cir. 2001) (upholding *Monell* claim for First Amendment violation) (*citing
Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978)).

Plaintiffs' *Monell* allegations are highly detailed and not conclusory. Dkt. 23-2, ¶¶ 4.37-4.43.
Specific allegations in the complaint establish the City's policy, practice, or custom. The
Complaint not only alleges multiple instances in which the City has tolerated or encouraged
neutral and pro-police chalking, but includes images of those instances. The Complaint also
includes a public quote that, after consulting the municipal code, the City does not generally
consider sidewalk chalk to be "graffiti." This, taken together with the arrest of four Plaintiffs for
the use of sidewalk chalk, constitutes a plausible allegation that the City has a practice or custom
of discriminatory enforcement.

There are three separate ways to meet the policy or custom requirement for a *Monell* claim.
*Hopper,* 241 F.3d at 1083. First, by showing (at this stage, alleging) a city employee acted
pursuant to a longstanding practice or custom or formal police. Id., *quoting Gillette*, 979 F.2d at
1346-47.  Second, by alleging that a final policy-maker committed the tort. *Id*. And third by
showing a policy making official ratified a subordinate's unconstitutional decision. Plaintiffs
have pleaded facts sufficient for all three *Monell* theories, and need only prove one. First, as

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

discussed above, Plaintiffs allege in detail the City's ongoing and well documented custom of treating sidewalk chalk as a generally non-arrestable activity, while arresting or threatening arrest when chalk is used for protest messages. Dkt. 23-2, ¶¶ 4.37-4.43. Second, Plaintiffs allege that an executive in the mayor's office and police department – whose identify Plaintiffs will learn in discovery –made the decision to subject Plaintiffs to booking in retaliation for non-violent protest activity. Dkt. 1., ¶¶ 4.21-4.25. Finally, in subjecting Plaintiffs to extended booking following their arrest for protected speech, these policy making officials ratified the First Amendment violations committed by the Defendant officer, yet another basis for *Monell* liability appearing plausibly on the face of the complaint.

### E.  Dismissal of Plaintiffs' Fourth Amendment Claims Would Be Improper

Plaintiffs allege that Defendants arrested them without probable cause, stating a claim for false arrest under the Fourth Amendment. *Beck v. City of Upland*, 527 F.3d 853, 864-66 (9th Cir. 2008); Dkt. 1., ¶¶4.9, 4.16, 4.27, 5.7. As discussed at p. 12, *supra*, the Ninth Circuit has clearly established that "[n]o reasonable person could think that writing with chalk would damage a sidewalk." *MacKinney*, 69 F.3d at 1005. No reasonable officer could think that writing "peaceful protest" in chalk or charcoal would "damage" a temporary concrete barrier blocking the sidewalk. Therefore, as alleged in the complaint, no probable cause existed. *See also Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) (discussing lack of probable cause where statute claimed for arrest was clearly unconstitutional).

### F.  Dismissal of Plaintiffs' Claims for Injunctive Relief Under 12(b)(1) Should be Denied

Defendants' cursory, single paragraph argument under FRCP 12(b)(1) should be rejected. *See* Dkt. 14, p. 24. Most obviously, Defendants' standing analysis does not cite a single First

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Amendment case – ignoring the distinct considerations that arise in claims for overbreadth under the First Amendment. *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171-72 (9th Cir. 2018):

> First Amendment challenges present unique standing considerations because of the chilling effect of sweeping restrictions on speech. In order to avoid this chilling effect, the Supreme Court has endorsed what might be called a hold your tongue and challenge now approach rather than requiring litigants to speak first and take their chances with the consequences.

(Internal quotations and citations omitted).

As explained in Plaintiffs' Motion for Preliminary Injunction, Plaintiffs satisfy all requirements of standing, and seek injunctive relief tailored to protect and restore their speech rights. Dkt. 16. All Plaintiffs were injured in fact when they were arrested and booked into jail, which continues to chill their speech. Dkt. 1, 4.42-4.43. The City's mid-litigation amendment to the Ordinance did not cure this constitutional injury because Plaintiffs could still be arrested under the new ordinance. *Cuviello v. City of Vallejo*, 944 F.3d 816, 824-825 (9th Cir. 2019) (facial challenge was not rendered moot by amendment to ordinance where amended ordinance was sufficiently similar and harm to plaintiff continued).  As to the second and third elements of standing, the text of SMC 12A.08.020 was the express basis and cause of their arrest (Decl. Ex. 1) (arrest reports), and an injunction prohibiting enforcement would end the chilling effect the ordinance has, *see Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) (holding that "if [defendants] are enjoined from enforcing the challenged provisions, [plaintiff] will have obtained redress in the form of freedom to engage in certain activities without fear of punishment."). Plaintiffs have pleaded – and are in fact – deterred and chilled from their speech by the Ordinance and Defendants' enforcement. Dkt. 1., ¶¶4.42, 4.43, 5.1-5.3; *See* Dkt. 18, 19, 20, 21 (declarations of Plaintiffs in support of Motion for Preliminary Injunction). *See generally Clark v. City of Lakewood*, 259 F.3d 996, 1008 (9th Cir. 2001) (ongoing effect of ordinance on Plaintiff

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

sufficient for standing to seek injunction against enforcement in First Amendment case, where

plaintiff intends to engage in targeted speech).

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion to dismiss.

*I certify this memorandum contains 7,703 words in compliance with LCR 7.*

DATED this 13ᵗʰ day of April, 2023.

By: MacDONALD HOAGUE & BAYLESS          By: THE LAW OFFICE OF NEIL FOX
705 Second Avenue, Suite 1500                          2125 Western Ave Ste 330
Seattle, Washington 98104                                  Seattle, WA 98121-3573
Tel 206.622.1604 Fax 206.343.3961                   Tel 206.728.5440 Fax 866.422.0542

___*s/ Braden Pence*_____               ___*s/ Neil Fox*_____
Braden Pence, WSBA #43495                           Neil Fox, WSBA #15277
Email: bradenp@mhb.com                                 Email: nf@neilfoxlaw.com

_*s/ Nathaniel Flack*_____
Nathaniel Flack, WSBA #58582
Email: nathanielf@mhb.com

1

CERTIFICATE OF SERVICE

2

I hereby certify that on this date I electronically filed the foregoing document with the

3

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

4

following individuals:

5

6

Attorneys for Defendants

7

Ann Davison
Seattle City Attorney

8

9

Jessica Leiser, WSBA#49349
Assistant City Attorney
Email: Jessica.leiser@seattle.gov

10

11

Kerala Cowart, WSBA #53649
Assistant City Attorney
Email: kerala.cowart@seattle.gov

12

13

Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

14

15

DATED this 13th day of April, 2023, at Seattle, Washington.

16

17

18

___s/ Lucas Wildner_____
Lucas Wildner, Legal Assistant

19

20

21

22

23

24

25

26

27

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS - 26

No. 2:23-cv-00017-MJP

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961