Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEREK TUCSON, ROBIN SNYDER,
MONSIEREE DE CASTRO, and ERIK
MOYA-DELGADO,

               Plaintiffs,

    vs.

CITY OF SEATTLE, ALEXANDER
PATTON, TRAVIS JORDAN, DYLAN
NELSON, JOHN DOES (#1-4) AND JANE
DOES (#1-2)

               Defendants.

No.     2:23-cv-00017MJP

**DEFENDANTS' RESPONSE IN
OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY
INJUNCTION**

## I.    <u>INTRODUCTION</u>

Defendants City of Seattle ("the City"), Alexander Patton, Travis Jordan, and Dylan Nelson provide the following Response in Opposition to Plaintiffs' Motion for Preliminary Injunction. Plaintiffs' Motion for Preliminary Injunction should be denied because this Court lacks subject matter jurisdiction where Plaintiffs have not established standing to seek injunctive relief. Fed. R. Civ. P. 12(b)(1); (h)(3); *City of Los Angeles v. Lyons*, 461 U.S. 95, 103, 110 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). Furthermore, Plaintiffs cannot meet the elements required for a

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION - 1
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1  preliminary injunction where Seattle Municipal Code (SMC) 12A.08.020(A)(2) is a constitutional

2  manner restriction. This Court should deny Plaintiffs' Motion for Preliminary Injunction.

3                          **II.      BACKGROUND**

4          Plaintiffs were all arrested for violating SMC 12A.08.020(A)(2) after writing on a wall made

5  out of concrete blocks, called eco-blocks, that had been erected by the City. Compl. ¶¶ 4.2, 4.3, 4.8,

6  4.10, 4.12, and 4.14. Plaintiffs subsequently initiated the above-captioned lawsuit, asserting that the

7  Ordinance, on its face, violates the First and Fourteenth Amendments of the U.S. Constitution.

8  Plaintiffs also assert as-applied claims, alleging that Defendants retaliated and selectively enforced

9  the Property Destruction ordinance against them and subjected them to retaliatory arrest because of

10  the anti-police viewpoint that they expressed.

11          In response to Plaintiffs' lawsuit, the City amended SMC 12A.08.020(A)(2) in two ways to

12  mitigate legal risk. First, express permission of the property owner is no longer an affirmative

13  defense; instead, the lack of express permission is now an element of the crime. Ex. B to Defs.' Mot.

14  to Dismiss. Second, the amendment clarified the mental state requirement by making it explicit that

15  conduct is prohibited only if done "intentionally." *Id.* The parties agree that the amendment mooted

16  at least one of the purported constitutional defects raised in Plaintiffs' Complaint, thus narrowing the

17  scope of Plaintiffs' facial challenges. Defs.' Mot. to Dismiss 11-12; Plfs.' PI Mot 17:25-18:1.

18  Plaintiffs now seek a preliminary injunction against enforcement of the amended version of SMC

19  12A.08.020(A)(2) ("the Property Destruction Ordinance" or "the Ordinance").

20                     **III.      ARGUMENT & AUTHORITIES**

21          The Court should deny Plaintiffs' Motion for Preliminary Injunction. As an initial matter,

22  Plaintiffs lack standing to bring this motion for several reasons. Plaintiffs claim the Ordinance is

23  facially invalid because it prohibits writing or marking with implicit permission, prohibits chalking

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION - 2
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

on the sidewalk, and is vague—but their alleged arrest/booking injuries are not traceable to those constitutional defects. Plaintiffs do not allege that they had implicit permission, chalked on a sidewalk, or lacked notice that their own conduct was prohibited. Additionally, Plaintiffs assert that they are chilled from chalking on sidewalks. That claimed injury is not sufficient to confer standing, because Plaintiffs' own allegations about the City's enforcement policy establish that the prospect of arrest for such conduct is remote—as opposed to actual or imminent. Finally, Plaintiffs' requested relief will not redress their asserted injuries. There remains a Washington state statute that criminalizes the same conduct regardless of whether this Court enjoins enforcement of the City's Property Destruction Ordinance. *See* RCW 9A.48.090.

Plaintiffs' attempt to rely on the overbreadth doctrine to overcome their lack of standing is unsuccessful. "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is 'strong medicine' and have employed it with hesitation, and then 'only as a last resort.'" *New York v. Ferber*, 458 U.S. 747, 769 (1982), quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613 (1973). The Property Destruction Ordinance is not susceptible to an overbreadth challenge because it is not directed "narrowly and specifically at expression or conduct commonly associated with expression." *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996). Rather, it prohibits conduct only if it damages or alters the property of another person without permission.

Moreover, application of the overbreadth doctrine is unwarranted because Plaintiffs have not alleged a substantial or realistic danger that the protected speech of third parties may be inhibited. *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984). The only two examples they provide in support of their overbreadth argument are

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION - 3
2:23-cv-00017 TLF

Ann Davison
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    unpersuasive. First, it is fanciful to suggest that a dining patron who signs a restaurant receipt violates

2    the Ordinance, because, among other reasons, the receipt itself gives express permission to sign.

3    Second, Plaintiffs' overbreadth argument that the Ordinance, on its face, prohibits chalking on the

4    sidewalk—fails to establish a realistic possibility of either chilling or arrest of third parties. Plaintiffs

5    themselves allege that Defendants have a long-established policy not to enforce against chalking on

6    the sidewalk. The Court should deny Plaintiffs' motion because they lack standing.

7        Furthermore, Plaintiffs cannot demonstrate a likelihood of success on the merits as to the

8    validity of the Property Destruction ordinance. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7,

9    20 (2008).  If the Court determines that Plaintiffs do have standing and conducts a facial First

10   Amendment analysis, then the Ordinance easily survives the three-part test established in *Clark v.*

11   *Community for Creative Non-Violence*, because it is a constitutional manner restriction. 468 U.S. 288,

12   293-94 (1983). First, the Ordinance is neutral because it prohibits property damage without reference

13   to motivation or viewpoint. Second, the Supreme Court has recognized significant government

14   interests in preventing even temporary visual blight. Third, the Ordinance is narrowly tailored to serve

15   those interests, because it curtails no more speech than is necessary to prevent visual blight; in

16   addition, many alternative methods of expression are available to plaintiffs, such as distributing

17   literature, speaking, or holding vigils. Because Plaintiffs' have not demonstrated a likelihood that

18   their First Amendment rights are being violated, they also do not meet any of the other *Winter* factors

19   and this Court should deny their motion.

20       A. *Plaintiffs lack standing to bring this motion.*

21       Constitutional standing requires three elements:

22       First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected
         interest which is (a) concrete and particularized, and (b) 'actual or imminent, not 'conjectural'

23       or 'hypothetical.' Second, there must be a causal connection between the injury and the

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION - 4
2:23-cv-00017 TLF

conduct complained of—the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not... th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely "speculative," that the injury will be "redressed by a favorable decision.'

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs bear the burden of proof to establish that they meet each of these elements. *Id*. at 561.  They have not carried their burden.

    1.  <u>Plaintiffs lack standing because they do not allege an injury in fact that is traceable to the alleged constitutional defects.</u>

Plaintiffs assert two types of injuries. First, they assert injuries arising out of their arrests and bookings into King County Jail. Second, they claim ongoing injuries to their First Amendment rights because they are chilled from self-expression. Defendants address each in turn.

The arrest/booking related injuries are insufficient for standing. Indeed, Plaintiffs' own allegations establish that the purported constitutional defects could not have caused these injuries. Plaintiffs claim that the Ordinance is facially invalid because it criminalizes the conduct of individuals who have implicit permission to write on another person's property. Plfs.' PI Mot. 19. However, Plaintiffs do not allege that they had implicit permission to write on the East Precinct wall. Plaintiffs claim that the new Ordinance is facially overbroad because it prohibits chalking on the sidewalk. *Id*. 9, 11-12. But Plaintiffs were arrested for chalking on a wall, not a sidewalk.

Plaintiffs also assert that the Ordinance is unconstitutionally vague in violation of the First and Fourteenth Amendments, because it fails to give an ordinary person notice of what is prohibited. Plfs.' PI Mot. 23. However, Plaintiffs do not claim that the Ordinance is unclear as to whether their own conduct was prohibited. On its face, the Ordinance plainly prohibits writing on a wall without the owner's permission. Accordingly, Plaintiffs' alleged arrest/booking injuries are not traceable to any of the purported constitutional defects that they assert.

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

In addition to the arrest/booking injuries, Plaintiffs also assert "the loss of First Amendment freedoms," Plfs.' PI Mot. at 25, because they are allegedly chilled from chalking on sidewalks near government buildings, at a local park, or in the presence of police officers. *See* De Castro Dec. ¶ 6, Moya-Delgado Dec. ¶ 4, Snyder ¶ 4, Tucson ¶¶ 5-6. Although Plaintiffs were arrested for chalking on a City wall without permission, their declarations do *not* attest that they are chilled from chalking on *walls* or that they want to continue chalking on other people's *walls* without permission.[1]

Plaintiffs' allegations of being chilled are insufficient for standing because the possibility of enforcement is not actual or imminent. Under the First Amendment, mere "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013). The injury must be "actual or imminent, not 'conjectural' or 'hypothetical,'" *Lujan*, 504 U.S. at 560–61. "In order to have standing, therefore, a litigant alleging chill must still establish that a concrete harm— i.e., enforcement of a challenged statute—occurred or is imminent." *Morrison v. Bd. of Educ. of Boyd County*, 521 F.3d 602, 610 (6th Cir. 2008).

Plaintiffs have not alleged a "credible threat" that they will be arrested for chalking on the sidewalk, regardless of whether those sidewalks are near government buildings or police officers. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). On the contrary, Plaintiffs allege that the City has a long-established, official policy of not arresting people who chalk on sidewalks. Compl. ¶ 4.36. Plaintiffs cite no instances of the City departing from this policy. Therefore, the possibility of Plaintiffs being arrested for such conduct is "conjectural" and

---

[1] Presumably, Plaintiffs declarations are framed this way because—as explained in Defendants' Motion to Dismiss at pages 7-8, the East Precinct wall was a non-public forum where First Amendment rights were "at their constitutional nadir." *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005).

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION - 6
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

"hypothetical," rather than "actual or imminent," and does not provide a basis for standing. *See Lujan*, 5-4 U.S. at 560-61.

2. <u>Plaintiffs lack standing because the requested relief will not redress their alleged harm.</u>

Finally, to "establish standing, a plaintiff must show a substantial likelihood that the relief sought would redress the injury." *Mayfield v. U.S.*, 599 F.3d 964, 971 (9th Cir. 2010). Plaintiffs assert that the element of redressability is met because "the text of SMC 12A.08.020 was the express basis and cause of their arrest." Plfs.' PI Mot 9. As relief, Plaintiffs ask the Court to enjoin the City from enforcing the Property Destruction ordinance. If the Court were to grant that requested relief, it would not redress any of Plaintiffs' asserted harms because the parallel Washington State criminal statute is identical in the relevant respects and prohibits the conduct at issue here. *See* RCW 9A.48.090; Compl. ¶ 4.29 (quoting from RCW 9A.48.090 and explaining why it was preferable to the pre-amendment version of the Property Destruction ordinance).

The existence of RCW 9A.48.090 defeats Plaintiffs' assertion of redressability. Prior to the City's amendment, the state and City laws differed in one, relevant respect: under the old version of the Ordinance, the property owner's express permission or lack thereof was an affirmative defense, not an element of the crime. Compl. ¶ 4.29 & Ex. A to Defs.' Mot. to Dismiss. Since the City amended the Ordinance, however, the elements of the local and state laws are the same. Nonetheless, Plaintiffs still brought this motion seeking injunctive relief.

Courts have held that redressability is not present where the plaintiff's proposed conduct would violate other valid or unchallenged laws. *See, e.g.*, *Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886, 893-94 (9th Cir. 2007); *Harp Adver. Ill., Inc., v. Village of Chicago Ridge, Ill.*, 9 F.3d 1290, 1292 (7th Cir. 1993). Consequently, Plaintiffs have not met the requirement of redressability.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION - 7
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

3. <u>Plaintiffs do not fall within the overbreadth exception to standing for two, independent reasons.</u>

Because Plaintiffs lack standing, they must show that they fit within an exception to standing requirements. They have not made this showing. The Supreme Court has recognized a particular type of facial challenge in the First Amendment context, under which a law may be struck down entirely as impermissibly overbroad. Under the overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 553 U.S. 285, 292 (2008). An overbreadth challenge may succeed even if "a more narrowly drawn statute would be valid as applied to the party" before the court; in this way, overbreadth doctrine creates "an exception to the "general rule . . . [that] a litigant has standing only to vindicate his own constitutional rights." *Members of City County of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796-99 (1984)). The Supreme Court has not "recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

The First Amendment overbreadth exception is narrowly construed to limit the "risk that the doctrine itself might sweep so broadly that the exception to ordinary standing requirements would swallow the general rule." *Taxpayers for Vincent*, 466 U.S. at 799. Applying it to invalidate legislation is "strong medicine" that should be "employed . . . with hesitation, and then 'only as a last resort.'" *New York v. Ferber,* 458 U.S. 747, 769 (1982), quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613 (1973). Accordingly, plaintiffs asserting a facial, First Amendment challenge are exempted from the requirement to prove standing only when the risk of overbreadth is "not only real, but substantial as well, judged in relationship to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

a. *At the threshold, the Ordinance is not susceptible to an overbreadth challenge because it is not directed narrowly and specifically at expression or conduct commonly associated with expression.*

In light of the foregoing considerations, before a statute can be subject to a facial, overbreadth challenge, there must be a threshold showing that the law has "a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of . . . censorship risks[.]" *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 759 (1988); *Roulette*, 97 F.3d at 305.

The Property Destruction ordinance is not directed narrowly and specifically at expression or at conduct commonly associated with expression, because it prohibits conduct only if it damages or alters the property of another person without their permission. Preventing the damage or alteration of another's property is the purpose of the Ordinance, not the regulation of expressive activities.

Plaintiffs argue that unauthorized graffiti is "pure speech," and attempt to rely on cases that recognize protections for speech and artistic expression on one's own clothing, art canvass, or body. *See, e.g.*, *Cohen v. California*, 403 U.S. 15, 25 (1971) (political statement on a T-shirt); *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061-62 (9th Cir. 2010) (tattoos are protected expression); *White v. City of Sparks*, 500 F.3d 953, 955-56 (9th Cir. 2007) (artistic painting is protected expression). Those cases are inapposite. The Property Destruction ordinance does not prohibit writing, drawing, marking, or painting *per se*; it prohibits those activities when done *without express permission on another's property*.

Plaintiffs also proffer cases that address as-applied challenges in an unsuccessful effort to bolster their facial overbreadth claim. *See, e.g.*, *MacKinney v. Nielsen*, 69 F.3d 1002, 1004 (9th Cir. 1995) (addressing retaliatory arrest claim and remanding facial challenge without discussion because district court "failed to address this argument"); *Bledsoe v. Ferry Cnty.*, *Washington*, 499 F. Supp. 3d

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

856, 874 (E.D. Wash. 2020) (addressing as-applied claim). However, at this threshold stage, the overbreadth analysis differs from an as-applied analysis because of its heightened requirements. *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996) (overbreadth challenges are not warranted unless statute is "directed narrowly and specifically at speech or conduct commonly associated with speech") (citing *Broadrick*, 413 U.S. at 613-15).

In sum, because the Ordinance is not directed narrowly and specifically at conduct commonly associated with expression, it is not susceptible to an overbreadth challenge.

> **b.** *Plaintiffs do not fall within the overbreadth exception to standing, because they have not sufficiently alleged a substantial or realistic danger to the First Amendment rights of parties not before the Court.*

As noted above, a plaintiff is exempted from the requirement to prove standing only when the risk of overbreadth is "not only real, but substantial as well, judged in relationship to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973). Plaintiffs have not met their burden to demonstrate a real and substantial risk of overbreadth, judged in relationship to SMC 12A.08.020's plainly legitimate sweep.

In support of their argument for substantial overbreadth, Plaintiffs proffer only a small number of examples of third parties whose rights may be compromised. Plfs.' PI Mot. 16. They assert that "police can still arrest anyone who signs their name on a restaurant payment slip; or who writes peaceful political messages in sidewalk chalk" or "a chalked hopscotch grid." *Id*. at 7, 16-18, 22. Plaintiffs' allegations regarding restaurant payment slips, sidewalk chalk, and children's hopscotch grids are unpersuasive.

It is fanciful to suggest that the Property Destruction ordinance criminalizes signing restaurant receipts, which bear a blank line next to or above the word "signature." The word "signature" gives

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

express permission, and there is no need for implicit permission. Plaintiffs do not allege a realistic danger that people are being chilled or could be arrested for signing receipts in restaurants.

Plaintiffs also cite the example of individuals, including children, who want to write or draw on the sidewalk using chalk. Here too, Plaintiffs have not alleged a realistic danger of those third parties being chilled or arrested. Plaintiffs do not identify even a single third-party individual who has assertedly been chilled. Moreover, Plaintiffs allege that the City has a long-established, official policy of not arresting people who chalk on the sidewalk. Their allegations about the City's enforcement policy undercut their argument. Plaintiffs cite no instances of the City departing from this policy. Finally, Plaintiffs allege that they themselves have chalked on sidewalks regularly or frequently in the past without being arrested or encountering any other difficulty. De Castro Dec. ¶ 4, Moya-Delgado Dec. ¶ 3, Snyder ¶ 3, Tucson ¶ 4.

Plaintiffs, therefore, have not alleged—much less established—a realistic danger of *any* third-party rights being compromised. Plaintiffs fall far short of the requirement to establish that any purported overbreadth is "substantial," and so it would be "inappropriate in this case to entertain an overbreadth challenge to the ordinance." *Taxpayers for Vincent*, 466 U.S. at 802.

B.   *Plaintiffs are not entitled to a Preliminary Injunction because they are not likely to succeed on the merits.*

For a preliminary injunction to issue, a plaintiff "must establish that he is (1) likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in favor; and (4) that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (quotation omitted). This Court should deny Plaintiffs' Motion for Preliminary Injunction because

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION - 11
2:23-cv-00017 TLF

Plaintiffs have not demonstrated a likelihood of success under the First Amendment or the Fourteenth Amendment. In addition, Plaintiffs do not meet the remaining *Winter* factors for the reasons explained below.

> **1.** <u>Plaintiffs are not likely to prevail on their facial First Amendment claim because the Ordinance is a constitutional manner restriction.</u>

As explained above in section III.A, Plaintiffs do not have standing to raise a facial First Amendment challenge. If this Court, nonetheless, conducts a facial First Amendment analysis, then the Ordinance easily survives that test because it is a constitutional manner restriction. The Supreme Court has "regularly rejected the assertion that people who wish to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." *United States v. Grace*, 461 U.S. 171, 177-178 (1983) (internal quotation marks omitted). Accordingly, expressive activity, "whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293-94 (1983). Critically, reasonable time, place, manner restrictions are permitted, even for public forums like sidewalks. *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009).

*Clark* established a three-part test: such restrictions "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Id.* at 293-294; *see also, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Taxpayers for Vincent*, 466 U.S. at 804-05. The City's ordinance easily survives this three-part test.

First, SMC 12A.08.020 is plainly content and viewpoint neutral. Its text prohibits damage and alteration of another's property without reference to the conduct's motivation or viewpoint.  Second,

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION - 12
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

the City's interests in preventing visual blight on sidewalks, streets, structures, and buildings is significant. Despite Plaintiffs' suggestion to the contrary, *see* Plfs.' PI Mot. 19, preventing temporary, removable visual blight is a significant interest. *See, e.g.*, *Taxpayers for Vincent*, 466 U.S. at 808-09 (upholding restrictions as applied to posting temporary, cardboard, political campaign signs on public property)[2]; *accord Foti v. City of Menlo Park*, 146 F.3d 629, 637 (9th Cir. 1998) (size and number of picketing signs); *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1072-73 (9th Cir. 2006) (pole signs); *Mahoney*, 662 F.Supp.2d at 90 (chalking on the sidewalk); *Taxpayers for Vincent*, 466 U.S. at 805-07 (signs on public property).

Third, SMC 12A.08.020 is narrowly tailored to serve substantial governmental interests, because it "target[s] and [eliminates] no more than the exact source of the 'evil' [it seeks] to remedy." *Taxpayers for Vincent,* 466 U.S. at 808. The ordinance "responds precisely to the substantive problem which legitimately concerns the [City]" and "curtails no more speech than is necessary to accomplish its purpose." *Id.* at 810.  The "essence of narrow tailoring" is having the regulation "focus[] on the source of the evils the city seeks to eliminate ... and eliminate[ ] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Ward*, 491 U.S. at 799 n. 7. For example, a city has a legitimate esthetic interest in preventing littering, but the requirement of narrow tailoring does not allow a city to ban the public distribution of handbills—even though some handbills inevitably end up as litter. *See Schneider v. State of New Jersey*, 308 U.S. 147, 160–61 (1939). The Property Destruction ordinance does not suffer from that defect.

---

[2] Plaintiffs' assertion that the visual blight at issue in *Taxpayers for Vincent* was not temporary is incorrect. *See* Plfs.' PI Mot. 20:9-10. The signs at issue in *Taxpayers for Vincent*, which the court treated as an as-applied challenge, were cardboard signs supporting a political candidate that had been attached using staples to utility pole crosswires. 466 U.S. at 792-93, 802.

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION - 13
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

The ordinance also meets the requirement that it must allow ample alternative methods of communication. There are myriad other ways in which protestors can communicate their messages in the vicinity of the East Precinct, both orally and in writing, such as distributing literature, buttons and bumper stickers, marching, speaking, or holding vigils. *See Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1202 (9th Cir. 2016) (describing alternatives and upholding ban on mobile billboards because, "[a]lthough mobile billboards are a unique mode of communication, nothing in the record suggests that Appellants' overall "ability to communicate effectively is threatened."). Plaintiffs do not allege that any of these methods are unavailable to them, and there is no reason why they would be.

Plaintiffs rely heavily on the importance of being able to express themselves in the vicinity of the precinct building to their intended audience of police officers, public officials, and the public. Plfs.' PI Mot. 20; De Castro Dec. ¶ 3, Moya-Delgado Dec. ¶ 2. Snyder ¶ 2, Tucson ¶ 3. Neither the Complaint nor Plaintiffs' individual declarations allege that Plaintiffs were not able to use these other means of communication in the vicinity of the East Precinct. Plaintiffs make no effort in their Motion to explain why they cannot use these alternative methods to reach their intended audience.

The district court's opinion in *Watters v. Otter* is instructive. 986 F. Supp. 2d 1162 (D. Idaho 2013). There the court upheld a statute that, among other things, prohibited chalking on Idaho state capitol grounds—a traditional public forum. *Id*. at 1173-74. The court acknowledged the government's significant esthetic interests, while recognizing that "chalking is temporary and can be cured," and citing *Taxpayers for Vincent*, 466 U.S. at 810, for the proposition that "the government can proscribe even temporary blight." *Id*. at 1174. It further held that "possessing signs and banners while conducting an assembly" constituted alternative channels of communication." *Id*.; *see also Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011) (defacement statute was not unconstitutional as

applied[3] to defendant who was chalking anti-abortion messages on street outside the White House); *United States v. Nieves*, 2019 WL 1315940 at *3-4 (S.D. N.Y. Mar. 22, 2019) (vandalism regulation as applied to defendant's conduct of marking a monument's signpost, did not violate the First Amendment, even though mark was "instantly removable"); *Occupy Minneapolis v. Cnty. of Hennepin*, 866 F. Supp. 2d 1062, 1070 (D. Minn. 2011) (finding restriction on using chalk on plaza adjacent to government building constitutional).

Plaintiffs argue that the *Clark* factors cut in the other direction, but the cases they cite do not support their argument. *See generally* Plfs.' PI Mot. 18:15-21:11. For example, in *MacKinney v. Nielsen*, the Ninth Circuit addressed a First Amendment retaliatory arrest claim, but it did not have occasion to analyze whether the underlying statute was a permissible time, place, or manner restriction. 69 F.3d 1002 (9th Cir. 1995). The court remanded the plaintiff's facial challenge to the statute without discussion because district court "failed to address this argument." *Id.* at 1010.

Plaintiffs also attempt to rely on *Selah Alliance for Equality v. City of Selah*, 2021 WL 5286582, *7 (E.D. Wash. 2021). In *Selah*, the court issued a preliminary injunction based on facial, First Amendment challenges to the town's regulation of freestanding signs. The facts in *Selah* are too far afield for that case to be instructive. Unlike the content-neutral, manner restriction at issue here, the restrictions in *Selah* were content based. Accordingly, the court there applied strict scrutiny to enjoin two content-based restrictions. It enjoined a provision that singled out certain types of political signs and made them exempt from permitting requirements that applied to all other signs. *Id.* at *4. The court also enjoined a provision banning freestanding signs on public property; it applied strict

---

[3] As described in section III.A.3.a, above, the legal standards differ for First Amendment overbreadth and as-applied challenges in some respects. *See, e.g.*, *Roulette*, 97 F.3d at 305 (citing *Broadrick*, 413 U.S. at 613-15). However, the substantive application of the *Clark* test is the same. *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011).

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION - 15
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

scrutiny because the town had a recent, admitted history of enforcing the ban based on the signs' content.[4]  *Id.* at *6-11.

In sum, Plaintiffs cannot meet their burden of establishing a likelihood of success on the merits where SMC 12A.08.020 is narrowly tailored to serve a substantial government interest and leaves ample opportunities for alternative expression. Consequently, Plaintiffs' facial First Amendment claim does not provide a basis this Court to grant injunctive relief.

**2.**  Plaintiffs cannot demonstrate a likelihood of success on their facial challenge under the Due Process Clause.

Beyond their First Amendment arguments, Plaintiffs assert that the amended version of SMC 12A.08.020(A)(2) is facially vague and overbroad, in contravention of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. Although they ask the Court to broadly enjoin enforcement of the Ordinance under any circumstances, Plaintiffs have not met their burden to establish a likelihood of success, because they do not even attempt to meet the requirements to bring a facial challenge under the Fourteenth Amendment.

Where the "claim and the relief that would follow . . . reach beyond the particular circumstances of the [ ] plaintiffs," "[t]hey must . . . satisfy [the] standards for a facial challenge to the extent of that reach." *Doe v. Reed*, 561 U.S. 186, 194 (2010). The standards for a facial challenge set a high bar. The general rule is that to prevail on a facial challenge a plaintiff "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  The Supreme Court has explained why the requirements are so rigorous:

> Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. Facial challenges also run contrary to the

---

[4] The court in *Selah* also enjoined a mandatory permit application process, *id.* at *5, but there is no permit process at issue here.

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied. Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution.

*Washington State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008) (citations, brackets, and internal quotation marks omitted).

Plaintiffs do not come close to establishing that "no set of circumstances exists under which the [Ordinance] would be valid." *Salerno*, 781 U.S. at 745. Plaintiffs acknowledge that "[t]he ordinary meaning of the [Ordinance] is straightforward," belying their argument that it is vague. Plfs.' PI Mot. 15. A "straightforward" regulation does not require someone to guess what conduct is proscribed. The conduct proscribed is simple and explicit: do not mark or damage another's property without permission. All of the terms in the Ordinance have common meanings clear to a reasonable person, and Plaintiffs do not argue otherwise. *See Tingley v. Ferguson*, 47 F.4th 1055, 1090 (9th Cir. 2022) (anti-conversion therapy law not vague because terms have "common meanings that are clear to a reasonable person").

Plaintiffs further assert that SMC 12A.08.020 violates Due Process because it "prohibits 'entirely innocent' or 'normally innocent' conduct." Plfs.' PI Mot. 23. Plaintiffs are correct that a law may be rendered unconstitutionally vague if it criminalizes ordinarily innocent activities. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 163 (1972) (vagrancy statute was impermissibly vague because it criminalized "activities which by modern standards are normally innocent"). But Plaintiffs offer only two, unconvincing examples: signing a restaurant payment slip and chalking on the sidewalk. As described in section III.A.3.b above, the Ordinance does not criminalize the act of signing a restaurant payment slip. Nor does the example of chalking on the sidewalk support Plaintiffs' argument. As alleged in the Complaint, the City has a "long-

1   established policy" that it does not enforce the Ordinance against individuals who chalk on the

2   sidewalk. Compl. ¶ 4.36. Plaintiffs were arrested for chalking on a wall, not on the sidewalk. Indeed,

3   Plaintiffs allege that they have chalked on the sidewalk many times in the past and not been arrested.

4   Plfs.' PI Mot. 7-8; De Castro Dec. ¶ 4, Moya-Delgado Dec. ¶ 3, Snyder ¶ 3, Tucson ¶ 4. Plaintiffs are

5   foreclosed from asserting the Due Process rights of other parties who are not before the court. *Holder

6   v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010) (plaintiff cannot raise a successful vagueness claim

7   "based on the speech of another" under the Due Process Clause).

8       Plaintiffs have fallen far short of their burden to show there are no circumstances under which

9   the Ordinance could be validly enforced. The Due Process Clause does not require the City to tolerate

10   marking on other people's property without their permission which is not entirely innocent conduct.

11   For these reasons, Plaintiffs' facial Due Process claim is not a valid basis for injunctive relief.

12   **3.**   Plaintiffs Will Not Suffer Irreparable Injury Absent a Preliminary Injunction, the Equities
        Tip in the Government's Favor, and a Preliminary Injunction Is Not in the Public Interest.

13       There can be no irreparable harm where there is no infringement on Plaintiffs' First

14   Amendment rights. Plaintiffs correctly state that the loss of First Amendment freedoms, even

15   temporarily, constitutes irreparable injury. Plfs.' PI Mot. 25. Yet such loss must actually be

16   "threatened" or "occurring." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Plaintiffs do not suffer any

17   loss of First Amendment freedoms where they are prohibited from marking on the property of others

18   without their permission. Furthermore, Plaintiffs claim that they would be prohibited from chalking

19   a sidewalk is without merit, because of the City's long-established policy of allowing such expression.

20   This is insufficient where "plaintiffs must establish that irreparable harm is *likely*, not just possible,

21   in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127,

22   1131 (9th Cir. 2011) (quoting *Winter*, 555 U.S. at 22). Plaintiffs cannot demonstrate they are likely to

23

1    suffer irreparable harm and this Court should deny Plaintiffs' Motion for Preliminary Injunction.

2         The balance of equities and the public interest favors the City. Plaintiffs "do not dispute that

3    the City has a legitimate interest in combating unlawful property destruction on public and private

4    property." PI Mot. 18. This statement mischaracterizes settled law in at least two ways. First, courts

5    have held that the municipal interest at issue is significant. *Taxpayers for Vincent*, 466 U.S. at 804-

6    05; *Foti*, 146 F.3d at 637. Second, the City's significant interest is not limited to property destruction;

7    but includes temporary visual blight. *Id.* Consistent with this substantial interest, the City spends

8    millions of dollars each year on graffiti removal. Seattle City Council Ordinance 126778 (2023); Dkt.

9    No. 15-2. Balanced against the City's significant interest in and investment of resources toward

10   combatting graffiti, Plaintiffs' interest in marking the property of others without permission is

11   insufficient to demonstrate that the balance of equities tips in their favor. For the same reasons, the

12   public interest weighs against granting an injunction. This Court should deny Plaintiffs' Motion for

13   Preliminary Injunction.

14                           IV.    **CONCLUSION**

15        Plaintiffs' Motion for Preliminary Injunction fails for two broad reasons. Plaintiffs lack

16   standing to seek injunctive relief. They do not fall within the First Amendment, overbreadth exception

17   to standing requirements because they have not demonstrated a real and substantial risk of

18   overbreadth. Beyond their lack of standing, Plaintiffs have not demonstrated a likelihood of success

19   on the merits. This Court should deny Plaintiffs' Motion for Preliminary Injunction.

20

21

22

23

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION - 19
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

1    DATED this 13th day of April, 2023.

2

3         I certify that this memorandum contains 5,945 words, in compliance with the Local Civil

4    Rules.

5

6

7

8                                    ANN DAVISON
                                     Seattle City Attorney
9

10                           By:   */s/Kerala Cowart*_____
                                   */s/Jessica Leiser*_____
11                                 Kerala Cowart, WSBA# 53649
                                   Jessica Leiser, WSBA# 49349
12                                 Assistant City Attorneys

13                                 E-mail: kerala.cowart@seattle.gov
                                   E-mail: jessica.leiser@seattle.gov
14

15                                 Seattle City Attorney's Office
                                   701 Fifth Avenue, Suite 2050
16                                 Seattle, WA 98104
                                   Phone: (206) 684-8200
17
                                   *Attorneys for Defendant City of Seattle, Alexander Patton,*
18                                 *Travis Jordon, Dylan Nelson*

19

20

21

22

23

DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'          **Ann Davison**
MOTION FOR PRELIMINARY INJUNCTION - 20                     Seattle City Attorney
2:23-cv-00017 TLF                                          701 5th Avenue, Suite 2050
                                                           Seattle, WA 98104-7095
                                                           (206) 684-8200