Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DEREK TUCSON, ROBIN SNYDER, MONSIEREE DE CASTRO, and ERIK MOYA-DELGADO,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE, ALEXANDER PATTON, TRAVIS JORDAN, DYLAN NELSON, JOHN DOES (#1-4), and JANE DOES (#1-2)<br><br>Defendants. | No. 2:23-cv-00017-MJP<br><br>PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

**1.    Introduction**

Defendants' objections to a preliminary injunction in this case flounder in the shallow waters of their fundamental argument: that SMC 12A.08.020 endows Defendants with the discretion to bless non-destructive, temporary chalking on the sidewalk as lawful while criminalizing non-destructive, temporary chalking on publicly-owned property that Defendants used to illegally block that sidewalk.[1] In order to assert Defendants' alleged

---

[1] Defendants do not dispute that SPD placed the eco-blocks on the public sidewalk in an unpermitted, unauthorized, and unlawful manner. *See* Dkt. 17-5. Without lawful authorization for dumping concrete blocks onto a public right-of-way, Defendants are hardly in a position to criminalize someone who used chalk to write on the dumped property. *See California v. Greenwood*, 486 U.S. 35 (1988) (upholding warrantless search of garbage bags

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 1

No. 2:23-cv-00017-MJP

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

distinction between chalking on walls and chalking on sidewalks, Defendants ignore Plaintiffs' evidence, and fail to explain how sidewalk chalking does not fall under the plain language of SMC 12A.08.020. The standardless discretion Defendants assert actually illustrates the ordinance's unconstitutional vagueness.

Defendants ignore the actual text of SMC 12A.08.020 (that it applies to *all* surfaces in Seattle, whether public or private), and the evidence Plaintiffs have proffered (that Defendants threatened third-parties for chalking on the sidewalk).

### 2. Plaintiffs Have Standing

To establish standing, Plaintiffs need only demonstrate a "concrete and particularized" and "actual or imminent" injury as a result of the Defendants' conduct and that a favorable decision will likely redress their injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Here, there is no doubt that Plaintiffs have established a 'concrete, particularized, and actual' injury redressable only through prospective relief: that Defendants' enforcement of SMC 12A.08.020 continues to chill the expressions that led to Plaintiff's arrest. Defendants do not even attempt to refute Plaintiffs' declarations. Instead, they raise several arguments that attempt to reframe Plaintiffs' claims on the basis of an alleged distinction between sidewalks and walls. Defendants argue (1) that Plaintiffs injury is not "traceable" to Defendants' policy because Plaintiffs were "arrested for chalking on a wall, not a public sidewalk," Dkt. 34 at 5, (2) that standing requires

---

left at curb outside curtilage of home).

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 2

No. 2:23-cv-00017-MJP

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Plaintiffs to allege that they want to "continue chalking on other people's *walls* without permission," *id*. at 6 (emphasis in original), and (3) that Defendants have "a long-established, official policy of not arresting people who chalk on sidewalks . . . [with] no instances of [] depart[ure] from this policy." *Id*. Defendants' arguments lack merit. First, Plaintiffs' injury is traceable to the challenged ordinance, not Defendants' unsubstantiated assertion of an 'except sidewalks' policy. Defendants admit to arresting and jailing Plaintiffs under the challenged ordinance for chalking on a publicly-owned a concrete wall Defendants built over a public sidewalk (effectively identical to the sidewalk). Defendants did not substantiate their post-hoc claim of a policy distinguishing between sidewalks and walls (which also finds no support in the police reports documenting Plaintiffs' arrests). Defendants assert that "[o]n its face, the ordinance plainly prohibits writing on a wall" without admitting that *the ordinance also facially prohibits writing on a sidewalk*. Thus, Plaintiffs' arrest is traceable to the challenged ordinance.

Second, Plaintiffs have not—and need not—claim they are chilled from chalking "other people's" walls in order to achieve standing. Plaintiffs have submitted uncontested testimony that—to this day—the injuries they suffered at Defendants' hands continue to chill their practice of chalking political messages, without regard to the surface or Defendants' attempt to distinguish between walls and sidewalks. Dkts. 18, 19, 20 and 21. Although the facts of this case do not raise the issue of chalking on private property, the challenged ordinance criminalizes chalking on all surfaces whether public or private.

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 3

No. 2:23-cv-00017-MJP

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Third, Defendants' argument that Plaintiffs "cite no instances" of Defendants arresting or threatening to arrest for chalking on the side walk is blatantly wrong. In making this argument, Defendants ignore the uncontested *fact* that on March 3, 2021, SPD's Lt. John Brooks threatened "enforcement action" against several members of the public who were chalking *on the sidewalk* outside of SPD's West Precinct. *See* Dkt. 1 at ¶ 4.41; Dkt. 23-2 at ¶ 4.43. Plaintiffs' complaint included an image of this event, *id.*, and will submit as an exhibit to this motion the referenced objective audio-video recording of this event to further substantiate it. *See* Declaration of Braden Pence, Ex. 1.

The facts of this case easily show actual injury and "imminent" threat, and thus the need for injunctive relief.

> "[I]t is sufficient for standing purposes that the plaintiff intends to engage in 'a course of conduct arguably affected with a constitutional interest' and that there is a credible threat that the challenged provision will be invoked against the plaintiff."

*Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018)(internal quotation omitted). Contrary to Defendants' argument, Dkt. 34 at 6, there is nothing "speculative" about the current threat of injury. In this unique case, each Plaintiff was arrested, one after the other, in front of SPD's East Precinct. Dkts. 18-21. A few weeks later, other parties were similarly threatened for chalking outside of SPD's West Precinct. Dkt. 23-2, ¶¶4.43, Pence Decl., Exhibit 1. These facts clearly demonstrate that an "actual," "concrete and particularized" injury occurred and that there is an imminent and likely threat of "enforcement" for chalking criticism of police in the future.

This arbitrary enforcement endorsed by the City in this case is what makes

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 4

No. 2:23-cv-00017-MJP

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

Plaintiffs' fears of arrest in the future real and imminent. Setting aside the fact that Defendants viewpoint-based tolerance of pro-police messages chalked at pro-police rallies , Dkt. 1, ¶¶ 4.38-39; Dkt. 23-2 at ¶¶ 4.40-41, it is the discretion Defendants assert under SMC 12A.08.020 to allow chalking based on the surface chalked that is precisely why the ordinance is vague and overbroad. Defendants can point to no clause of SMC 12A.08.020 (either as it existed in 2021 or today) as a textual basis for the 'except sidewalks' policy and Defendants cite no administrative procedure or licensing scheme to guide the exercise of this overbroad discretion . *See* Dkt. 1, ¶ 4.37; Dkt. 23-2, ¶ 4.39.

### 3. A Similar State Statute Does Not Eliminate Standing

Defendants next argue that a "parallel" state statute RCW 9A.48.090 ("malicious mischief") interrupts Plaintiffs' standing to seek injunctive relief. Dkt. 34 at 7(citing *Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886, 893-94 (9th Cir. 2007); *Harp Adver. Ill., Inc., v. Village of Chicago Ridge, Ill.*, 9 F.3d 1290, 1292 (7th Cir. 1993)). However, a challenge to one unconstitutional law cannot be defeated because another law may have the same defect. The Court should reject this argument for multiple reasons.

First and foremost, Defendants did not cite the state statute when arresting Plaintiffs, Dkt. 1, ¶ 4.27; Dkt. 23-2, ¶ 4.27; instead they expressly relied on the challenged ordinance. The reason for this is simple – Defendants have no authority to enforce and prosecute state misdemeanor statutes unless incorporated into the Seattle City Code. *City of Auburn v. Gauntt*, 174 Wn.2d 321, 325-32, 274 P.3d 1033 (2012) (citing RCW 39.34.180(1)). RCW 9A.48.090 has not been incorporated by reference and

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 5

No. 2:23-cv-00017-MJP

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604   Fax 206.343.3961

thus is not a barrier to relief because Defendants had not power to enforce it.

Second, Defendants' authority actually supports adjudicating Plaintiffs' claims. As the Ninth Circuit noted in *Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886 (9th Cir. 2007), where the lawsuit implicitly challenges another statute, the claims are redressable. *Id*. at 893. While it is not clear that the original or amended SMC 12A.08.020 is actually parallel to RCW 9A.48.090 (the two laws still have different *mens rea* elements), Plaintiffs' allegations in this suit implicitly challenge RCW 9A.48.090.

In an abundance of caution, Plaintiffs gave notice to the state Attorney General's Office upon filing of the Plaintiffs' Motion to File Supplemental Complaint (Dkt. 22) that the challenged Seattle ordinance shares some language with the statute. Declaration of Braden Pence,¶2. The state Attorney General's Office responded that it "does not intend to participate in the trial court proceeding in this case." *Id*. Accordingly, even if RCW 9A.48.090 is "parallel" to the challenged ordinance in some respects it is not a shield for Defendants.

### 4. The Ordinance Regulates Speech

The First Amendment rights of freedom of speech and assembly are at their apex in the streets and sidewalks, traditional public fora. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) ("Public streets and sidewalks occupy a special position in terms of First Amendment protection. They are the archetype of a traditional public forum.") (alteration and internal citations and quotation marks omitted). "Because of the special status of traditional public fora in our First

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 6

No. 2:23-cv-00017-MJP

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Amendment tradition, 'the government must bear an extraordinarily heavy burden to regulate speech in such locales.'" *Coalition To Stop Police Brutality v. City of Seattle*, 550 F.3d 788, 797 (9th Cir. 2008) (quoting *NAACP, Western Region v. City of Richmond*, 743 F.2d 1346, 1355 (9th Cir. 1984)).

Defendants concede that, even if Plaintiffs lack personal standing, an overbreadth challenge has relaxed standards. However, Defendants argue that there is no automatic standing because SMC 12A.08.020 regulates conduct, not speech. Dkt. 34 at 8-10. The Court should reject this argument.

Defendants argue that the ordinance does not have a nexus to expression that is direct, narrow, and specific. Dkt. 34 at 8. Given that the ordinance restricts *only* expressive activities (writing, drawing, painting, etc.), it is difficult understand this argument. Instead, Defendants seem to argue, SMC 12A.08.020 is only subject to an overbreadth challenge if its "purpose" is regulating speech. Dkt. 34 at 9. Whatever the subjective "purpose" of lawmakers may be, the standard by which the ordinance must be judged is its language and its impact on free expression. For instance, the Supreme Court struck down Chicago's "gang loitering" ordinance despite findings that street gang activity contributed to the city's rising murder rate, because the text of the ordinance was unconstitutionally vague. *City of Chicago v. Morales*, 527 U.S. 41, 46-47 (1999) (plurality).

Defendants' reliance on *Roulette v. City of Seattle*, 97 F.3d 300 (9th Cir. 1996), Dkt. 34 at 10, is misplaced. The ordinance challenged in *Roulette* regulated sidewalk

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 7

No. 2:23-cv-00017-MJP

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

sitting—conduct, not speech. *Id.* Here, in contrast, SMC 12A.08.020 directly regulates prototypical speech because it the plain language clearly regulates "the written word., *See Texas. v. Johnson*, 491 U.S. 397, 406 (1989).

> Conduct such as painting, drawing, and writing, especially in a temporary medium, are 'clearly expressive' and distinguishable from physically vandalizing or physically damaging property.

*Bledsoe v. Ferry Cty.*, 499 F. Supp. 3d 856, 871 (E.D. Wash. 2020) (citing *Osmar v. City of Orlando*, 2012 U.S. Dist. LEXIS 52039 at *9, 2012 WL 1252684 at *3 (M.D. Fla. Apr. 13, 2012) (finding chalk expression is analogous to the classic example of "the soap box orator who knows his words may be lost to the winds.").

Defendants' *ipse dixit* recategorization of Plaintiffs' writing as "conduct" does not make it so. While the first portion of SMC 12A.08.020 criminalizes damaging the property of others (an inherently legitimate subject of governmental interest), the second portion bans the written word on any public or private surface, whether it causes "damage" or enjoys the implicit permission of the owner or not. The ordinance criminalizes pure speech and thus fits into the overbreadth exception to standing.

**5.  The Ordinance's Overbreadth is Substantial**

Defendants' argue the Ordinance is narrow, specific, and not targeted at expressions or conduct commonly associated with expression, without explaining how this could be true when the ordinance criminalizes *all writing and art on all surfaces* without the *express* permission of the owner. Defendants also make the perplexing argument that the Ordinance is not overbroad because the likelihood of enforcement is

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 8

No. 2:23-cv-00017-MJP

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

not "substantial or realistic," Dkt. at 8-9, despite admitting that Plaintiffs were arrested and booked into jail for writing temporary, non-damaging political messages on public property and despite evidence that Defendants threatened to do the same to others for chalking a sidewalk.

Defendants mistakenly equate the "real and substantial" analysis with the likelihood of enforcement. Essentially, Defendants argue that unless Plaintiffs can prove that Defendants regularly jail parents and children for chalking rainbows and hopscotch grids, the Ordinance cannot be overbroad. This misstates the law. Plaintiffs need only show that a *wide array of expressive activities* fall under the scope of the Ordinance, not that Defendants always enforce it against all of those activities. It is the discretion to pick and choose what activites to enforce it against that makes it so dangerous to free expression.

Defendants dispute that signatures on payment slips are examples of criminal writing under the Ordinance, arguing that the word "signature" constitutes express permission. Dkt. 34 at 10-11. Even assuming the word "signature" appeared on every vendor's payment slip in the city (it does not, see Pence Decl., Exhibit 2, the word "signature" is *not* explicit permission. To establish "explicit" permission, the slip would have to read along the lines of:

> THE OWNER OF THIS PIECE OF PAPER HEREBY GIVES THE PAYOR EXPRESS PERMISSION TO SIGN ON THE LINE AND THE OPTION TO WRITE AN ADDITIONAL AMOUNT AS A TIP.

The word "signature" alone merely *implies* the owner's permission, thus arrest is still

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 9

No. 2:23-cv-00017-MJP

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

authorized under the plain language of the ordinance.

Defendants criticize Plaintiffs for offering only two examples of the array of innocent writings criminalized by the Ordinance, Dkt. 34 at 10, so here are a few more:

- Using a stick to draw a heart in the sand at the beach;
- writing a note on a friend's scrap of paper when stopping by to visit;
- writing on a legal pad provided by one's office;
- a city electrician marking the location of an underground electrical line;
- an assistant City Attorney printing out of a document at the office;
- students painting on their art school's canvasses;
- volunteers taking notes on a political campaign's form when calling donors;
- campers signing a national park log book;
- signing a guest book at a funeral or wedding;
- signing a classmate's yearbook as it is passed around on the last day of school;
- an incarcerated person writing a letter on prison stationary.

If Defendants wanted avoid criminalizing all of this entirely innocent conduct, they could easily add two elements: criminalizing only writing that occurred without the "implicit" permission of the owner or the otherwise "reasonable belief" in the legality of the writing.

**6.  The Ordinance is not a Constitutional "Manner" Restriction**

The City argues that SMC 12.08.020 is a constitutional time, place and manner restriction, relying on cases such as *Clark v. Community for Creative Non-Violence*, 468

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 10

No. 2:23-cv-00017-MJP

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

U.S. 288 (1983), and *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984). The City's argument is flawed.

While local governments can adopt neutral time, place and manner restrictions, *Ward v. Rock Against Racism*, 491 U.S. 781, 790-91 (1989), the ordinance criminalizes non-destructive writing in advance, without respect to the time, place, or manner of writing, and should therefore be treated as a "prior restraint on speech" that faces a "heavy presumption against validity." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992). The key to the constitutionality of a prior restraint is the absence of discretion by the police to pick and choose who gets to protest in public places. *See Shuttlesworth v. Birmingham*, 382 U.S. 87, 90-91 (1965); *Cox v. Louisiana*, 379 U.S. 536, 556-58(1965); *Hopper v. City of Pasco*, 241 F.3d 1067, 1077 (9th Cir. 2001) ("Absent objective standards, government officials may use their discretion to interpret the policy as a pretext for censorship"); *Seattle Affiliate of the October 22nd Coalition v. Seattle*, 550 F.3d at 800-803. As the Honorable Judge Richard A. Jones recently held:

> A permit requirement that gives its licensor boundless discretion encourages speakers like Plaintiffs to censor themselves, rather than take the risk that the licensor will censor them."

*Battle v. City of Seattle*, 89 F. Supp. 3d 1092, 1099 (W.D. Wash. 2015).

In this case, Defendants have no licensing scheme whatsoever from whom Plaintiffs could apply for permission to draw a hopscotch grid on a sidewalk or write "peaceful protest" on the concrete barrier that blocked the sidewalk at Pine and 12th. Defendants have provided no evidence of published or unpublished rules or regulations

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 11

No. 2:23-cv-00017-MJP

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

governing how they choose the public surfaces people can chalking on.

The *Vincent* case upheld a restriction different materials: signs affixed to lampposts with staples. 466 U.S. at 793. Signs and staples, unlike chalk, do not disappear on their own. *See Osmar v. City of Orlando*, 2012 U.S. Dist. LEXIS 52039 at *14 ("Writing with chalk on the Plaza sidewalk — as opposed to painting or pasting a sign — is not permanent or long-lasting and can be washed away with water, or in a sub-tropical climate like Orlando, by wind or rain.").

*Vincent* also involved advertisements (including those for political campaigns), which the Court distinguished from cases where the government was "excluding the expression of certain points of view from the marketplace of ideas." *Vincent*, 466 U.S. at 804; *id*., at 793 n.3 (advertisements removed under ordinance because they were largely "commercial in character"). It is well established that the Constitution affords greater protection to political speech than to advertisements and other commercial speech, an issue not before the Court here. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981).

In *City of Ladue v. Gilleo*, 512 U.S. 43 (1994), the Court distinguished between *Vincent's* largely commercial advertisements and "absolutely pivotal speech as a sign protesting an imminent governmental decision to go to war," which could not be banned based on a mere assertion of interest in limiting "clutter." *Gilleo*, 512 U.S. at 54. Similarly, in *Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009), the court found *Vincent* distinguishable because the leaflets the government sought to regulate

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 12

No. 2:23-cv-00017-MJP

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

were inherently "impermanent" and "transitory," and therefore the government's interest in reducing "blight" recognized in *Vincent* was inapplicable. *Klein*, 584 F.3d at 1201 n.4.

Defendants' dismissive description of Plaintiffs' political writings at issue as "visual blight," Dkt. 34 at 13, simply reveal Defendants' hostility towards freedom of expression. One could imagine Erich Honecker referring to messages written on the Western side of the Berlin Wall in the same way.

While Defendants claim the ordinance is narrowly drawn to substantial governmental interests, Dkt. 34 at 13, the "evil" mentioned – "blight" – is not narrowly tailored to the act of writing on any surface not owned exclusively by the writer. The note left on a friend's porch; the employee's use of a printer at work; the drawing of a rainbow on a sidewalk owned by the City – none of these writings are even arguably "blight" but are simply normal activities done in everyday live of most Seattle residents. As applied to chalking, this "evil" is difficult to square with the fact that chalking does no damage, is impermanent, and Defendants' lack of evidence that chalking in particular is a "blight."

In claiming that they leave open ample alternative channels, dictating other ways they think Plaintiffs should protest, Dkt. 34 at 14, Defendants again misconstrue Plaintiffs' challenge to the Ordinance. Because the Ordinance criminalizes writing, not protesting, Defendants must provide ample alternative channels for *writing*, not *protesting*. Because the Ordinance potentially criminalizes all writing (and all art and every other "mark") on all surfaces, whether public or private, Defendants cannot show ample alternative channels.

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 13

No. 2:23-cv-00017-MJP

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Even if applied to protesting, Defendants did not leave adequate other methods of communication. To the long and sad list City violations of the First Amendment rights of its residents (*see, e.g*, *Seattle Affiliate of the October 22nd Coalition, supra* (parade ordinance unconstitutional); *Battle v. City of Seattle*, *supra* (street use ordinance unconstitutional); *Black Lives Matter Seattle-King Cty. v. City of Seattle*, 466 F. Supp. 3d 1206 (W.D. WA. 2020) (pepper spray use on peaceful protestors)) we can now add its erection of a wall to block the public from accessing a sidewalk, and thereby from peacefully assembling and protesting there, and from petitioning for a redress of grievances from the government hiding behind it. Illegally encroaching on public space for months on end prevented distribution of literature, obstructed demonstrators access to their intended audience, and did not leave open any alternative channel. Writing on wall itself was one of the few ways remaining to exercise First Amendment rights that Defendants failed to seal off from the public.

In this regard, Defendants' citation to *Mahoney v. Doe*, 642 F.3d 1112, 1118 (D.C. Cir. 2011), and *Watters v. Otter*, 986 F. Supp. 2d 1162, 1173 (D. Idaho 2013), is instructive.  Both cases addressed chalking outside public structures  – the White House and Idaho State Legislature – that have unique aesthetic images tied to the seat of democracy itself a location with special significance where the Government may well have assert a special interest in maintaining certain aesthetics. This same logic does not apply at Pine and 12th in the eclectic Capitol Hill neighborhood, a district in which Defendants have no special interest in defining and controlling aesthetics. Here,

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 14

No. 2:23-cv-00017-MJP

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

Defendants simply decided to block access to the sidewalk outside the East Precinct without regard to law or aesthetics, an act incomparable to the intentional protection of the seat of government. If the City wanted to adopt a law regulating chalking outside of its police precincts, it could have attempted to do so via the democratic process. *Compare* 12A.54.010 (prohibiting climbing on Wedgewood Rock). But it did not – it adopted a broad anti-writing ordinance that covers every public and private surface in Seattle.

### 7. The Ordinance is Vague on its Face

Defendants argue that Plaintiffs cannot meet the "high bar" for a facial challenge because "[c]laims of facial invalidity often rest on speculation." Dkt 34 at 16. But the case Defendants misleadingly cite for this proposition involved a facial challenge to an election law enacted *prior to* its enforcement and, thus, was inherently based on "speculation" about the law's constitutional effect. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442 (2008). "Speculation" analysis is entirely different in this case: we need not speculate about the law's effect because Defendants have already demonstrated how it is and will be enforced: in an arbitrary and discriminatory fashion.

Defendants also argue that there is no ambiguity in the Ordinance. *See* Dkt. 34 at 17. Yet, Defendants also claim that they would not enforce the ordinance against children playing hopscotch or chalking rainbows, or against diners presented with credit card receipts. Dkt. 34 at 4, 10-11. Yet, the City's own admitted favoritism for a child's rainbow as opposed to an activist's "peaceful protest" is what makes the Ordinance not "straightforward" as the City claims it to be. Dkt. 34 at 17.

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 15

No. 2:23-cv-00017-MJP

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

The only people who need not guess at SMC 12A.08.020's meaning are those who find themselves arrested for crossing the invisible line, wherever Defendants may choose to draw it. This discretion breeds disparate treatment is the essence of a facially vague ordinance that violates the Fourteenth Amendment's Due Process Clause because it gives police the unfettered discretion to choose who goes to jail. *See Morales*, 527 U.S. at 60 (plurality). The Ordinance endowed Lt. Brooks with the unbridled power to threaten people with "enforcement action" for chalking anti-police slogans on the sidewalk, or to arrest and jail them, or to look the other way –at his whim. Pence Decl., Exhibit 1. While the language of the Ordinance is "straightforward," its breathtaking sweep permits enforcement against both meaningfully "evil" conduct that damages property *and* entirely innocent activities children engage in on a daily basis in this city.

Because *every single application* of SMC 12A.08.020 involves this exercise of discretion, the Ordinance can never be deployed constitutionally, and is therefore unconstitutionally vague.

### 8. A Preliminary Injunction Should Issue

As the foregoing analysis shows, Plaintiffs are likely to prevail on the merits of their facial challenges. With respect to the remaining elements of the injunctive relief standard, Defendants concede that "the loss of First Amendment freedoms, even temporarily, constitutes irreparable injury." Dkt. 34, p. 18. As discussed in Section 2, *supra*, Plaintiffs' injury is not hypothetical – they have actually been arrested under the ordinance and are actually deterred from political chalking as a result. In the case

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 16

No. 2:23-cv-00017-MJP

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Defendants cite on this point, the Ninth Circuit *reversed* a district court's denial of a preliminary injunction and found the plaintiff environmental organization had shown irreparable harm, because the organization's members visited a forest where logging was to occur. *Id.*; *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011). Plaintiffs meet the standard for injunctive relief because they were actually arrested for speech and are actually chilled, which is an irreparable injury that can only be redressed by an injunction. While Defendants claim that the public interest weighs against protecting Plaintiffs' speech rights here because City spends significant amounts of public money "combatting graffiti," yet make no argument that any of this spending related to sidewalk chalk, nor provide any evidence of any other form of the "temporary visual blight" on which they rely. "[M]erely invoking interests…is insufficient." *Klein*, 584 F.3d at 1202 (quotation omitted); *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 73, 75, 101 S. Ct. 2176, 68 L. Ed. 2d 671 (1981) (rejecting asserted interests because the government "presented no evidence")

### 9. Conclusion

For the foregoing reasons, Plaintiffs respectfully request the Court enter a preliminary injunction prohibiting Defendants from enforcing SMC 12A.08.020(A)(2).

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 17

No. 2:23-cv-00017-MJP

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

This memorandum contains 4,182 words in compliance with the Local Rules.

DATED this 19th day of April, 2023.

By: MacDONALD HOAGUE & BAYLESS  
705 Second Avenue, Suite 1500  
Seattle, Washington 98104  
Tel 206.622.1604 Fax 206.343.3961

__s/ Braden Pence_____  
Braden Pence, WSBA #43495  
Email: bradenp@mhb.com

__Nathaniel Flack_____  
Nathaniel Flack, WSBA #58582  
Email: nathanielf@mhb.com

By: THE LAW OFFICE OF NEIL FOX  
2125 Western Ave Ste 330  
Seattle, WA 98121-3573  
Tel 206.728.5440 Fax 866.422.0542

_s/ Neil Fox_____  
Neil Fox, WSBA #15277  
Email: nf@neilfoxlaw.com

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 18

No. 2:23-cv-00017-MJP

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following individuals:

Attorneys for Defendants

Ann Davison
Seattle City Attorney

Jessica Leiser, WSBA#49349
Assistant City Attorney
Email: Jessica.leiser@seattle.gov

Kerala Cowart, WSBA #53649
Assistant City Attorney
Email: kerala.cowart@seattle.gov

Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

DATED this 19th day of April, 2023, at Seattle, Washington.

___s/ Lucas Wildner_____
Lucas Wildner, Legal Assistant

PL's REPLY ISO PL's MOTION FOR
PRELIMINARY INJUNCTION - 19

No. 2:23-cv-00017-MJP

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961