Honorable Marsha J. Pechman
Honorable Theresa L. Fricke

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEREK TUCSON, ROBIN SNYDER, MONSIEREE DE CASTRO, and ERIK MOYA-DELGADO,

Plaintiffs,

vs.

CITY OF SEATTLE, ALEXANDER PATTON, TRAVIS JORDAN, DYLAN NELSON, JOHN DOES (#1-4) AND JANE DOES (#1-2)

Defendants.

No.     2:23-cv-00017 MJP TLF

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT**

NOTE ON MOTION CALENDAR: May 26, 2023

## I.     INTRODUCTION & RELIEF REQUESTED

Seattle Municipal Code 12A.08.020 ("Property Destruction" ordinance) prohibits the damage or defacement of another's property. Plaintiffs claim that prohibition, both on its face and as applied, violates their First Amendment right to chalk political messages on a concrete block wall that was temporarily erected around the Seattle Police Department's (SPD's) East Precinct building. They also assert claims under the Fourteenth and Fourth Amendments. Defendants City of Seattle ("the City"),

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT - 1
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Alexander Patton, Travis Jordon, and Dylan Nelson (together, "the Defendants"), move under Federal Rule 12(b)(1) and 12(b)(6) for an order dismissing Plaintiffs' supplemental complaint with prejudice.

## II.        STATEMENT OF FACTS

**A.  Plaintiffs' factual allegations.**

Plaintiffs were arrested for violating section A(2) of the Property Destruction ordinance on January 1, 2021. Supp. Compl. ¶¶ 1.4, 4.3, 4.10, 4.12, 4.14. Plaintiffs allege that they were arrested after writing messages such as "peaceful protest," "Abolish SPD," and "Kill KKKops" on a wall made out of concrete blocks, called eco-blocks, that had been erected by the City. Supp. Compl. ¶¶ 4.2, 4.3, 4.8, 4.10, 4.12, and 4.14.

Plaintiffs were handcuffed and transported to King County Jail. *Id.* ¶ 4.16. Plaintiffs assert that, under King County's Covid-19 policy at the time, the jail employees should not have accepted them for booking, because they had been arrested for a non-violent misdemeanor. *Id.* ¶¶ 4.17-18. However, high-level officials within SPD and the Mayor's Office "used their official position to 'override'" King County's booking policy for protestors. *Id.* ¶¶ 4.19-21.

Plaintiffs further allege that the City has a "long-established policy . . . to treat the use of sidewalk chalk as non-criminal." *Id.* ¶ 4.38. Plaintiffs contend that their arrests and bookings for writing in charcoal and chalk on the wall evince discriminatory and retaliatory enforcement. *Id.* ¶ 4.44.

**B.  The Property Destruction ordinance at issue.**

The version of the Property Destruction ordinance, in effect on January 1, 2021 ("old version"), prohibits damaging or altering another's property. Exhibit A to Declaration of Kerala T. Cowart ("Cowart Dec.") (text of old version). Section A(2) of the old version, the provision which Plaintiffs violated, prohibits different methods of altering the surface of another's property; it states

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 2
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

that "[a] person is guilty of property destruction if he or she…writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person." SMC 12A.08.020(A)(2). Property destruction is a gross misdemeanor. SMC 12A.08.020(C).

On March 14, 2023, the City amended the ordinance to, among other reasons, mitigate possible legal risk. Exhibit B to Cowart Dec. (certified copy of current version of ordinance).[1] The amendments address Plaintiffs' two, main facial challenges. First, the property owner's permission or lack thereof is now an element, not an affirmative defense. Second, the word "intentionally" has been added to make the *mens rea* requirement explicit. The parties appear to agree that Plaintiffs' challenges to those aspects of the old version of the ordinance are now moot. Plfs.' Opp. Br. 17:12-19 (Dkt. 33). Examination of Plaintiffs' original complaint shows that the gravamen of their facial challenges were directed toward these two features. Nonetheless, Plaintiffs sought leave to file a supplemental complaint and continue to press their facial claims.

## III.    APPLICABLE LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Unlike a complaint's factual allegations, legal conclusions are not entitled to an assumption of veracity. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

In ruling on a 12(b)(1) motion to dismiss for lack of jurisdiction, courts generally are "free to . . .resolv[e] factual disputes where necessary." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th

---

[1] Defendants refer to the amended ordinance as "the ordinance" and the previous version as "the old ordinance."

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT - 3
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Cir.1983)

## IV.    ARGUMENT

Plaintiffs lack standing to assert their facial, overbreadth First Amendment claims (Supp. Compl. ¶¶ 5.2, 5.3). Plaintiffs' booking- and arrest-related injuries are not traceable to the aspects of the Property Destruction ordinance they are challenging. Plaintiffs object that the ordinance makes no allowance for implicit permission—but Plaintiffs do not allege that they had the City's implicit permission to write on the East Precinct wall. Similarly, Plaintiffs object that the ordinance prohibits sidewalk chalking, but they did not chalk on a sidewalk. As an additional injury, Plaintiffs assert that their speech is chilled because they fear being arrested for chalking on sidewalks, but Plaintiffs' own allegations about the City's enforcement policy establish that the prospect of arrest for such conduct is remote, not actual or imminent. Finally, the relief that Plaintiffs request will not redress their asserted injuries. Even if this Court issues an injunction as requested, it still would be a state crime to chalk on public or private property without express permission under RCW 9A.48.090.

Plaintiffs' attempt to rely on the overbreadth doctrine to overcome their lack of standing for their facial First Amendment claims is unsuccessful. The ordinance is not susceptible to an overbreadth challenge for two reasons. It is not directed "narrowly and specifically at conduct commonly associated with expression," and Plaintiffs have not alleged any realistic danger that the protected speech of third parties might be inhibited. *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996). If this Court determines, nonetheless, that Plaintiffs have standing to raise their facial, First Amendment claims, then the Property Destruction ordinance survives the requisite constitutional test, because it is a valid manner restriction.

Plaintiffs' as-applied First Amendment claims (Supp. Compl. ¶¶ 5.1, 5.4) fail because they are unsupported by the allegations and inconsistent with applicable law. Plaintiffs' selective

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 4
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

enforcement claim requires them to identify individuals similarly situated to them who were not arrested. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012). They have not, and cannot, meet this burden because Plaintiffs point to individuals who were not arrested for writing on the sidewalk—but Plaintiffs were arrested for writing on a wall. Plaintiffs' retaliatory arrest claim fails for the same reason (and additional reasons, explained below) under *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).

Plaintiffs' facial, vagueness Due Process Clause claims (Supp. Compl. ¶¶ 5.6, 5.7) also must be dismissed. Plaintiffs lack standing to assert that the ordinance prohibits "entirely innocent conduct," such as children chalking on the sidewalk, because Plaintiffs' own actions were not "entirely innocent." Based on their own allegations, Plaintiffs intentionally wrote on a public wall without any type of permission (implicit or express). Supp. Compl. ¶ 1.4. Plaintiffs' argument based on the ordinance's purported vagueness also lacks merit, because the prohibited conduct in the ordinance is clear, and it provides adequate guidance to law enforcement authorities. A person of ordinary intelligence knows exactly what conduct is prohibited: damaging or marking another's property without express permission.

Plaintiffs' Fourth Amendment claims (Supp. Compl. ¶ 5.9) fail because they have not sufficiently alleged that the officers lacked probable cause to arrest them. On the contrary, Plaintiffs' own allegations demonstrate that they violated the Property Destruction ordinance and that the arresting officers had probable cause. *Id.* ¶ 1.4.

Because Plaintiffs do not adequately plead any violations of their constitutional rights, their claims against the City under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), (Supp. Compl. ¶ 5.10) cannot go forward either. Therefore, the entirety of Plaintiffs' supplemental complaint should be dismissed with prejudice.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 5
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

### A. Plaintiffs' First Amendment facial, overbreadth challenge (¶¶ 5.2, 5.3) should be dismissed for lack of standing.

Defendants set forth their standing analysis in opposition to Plaintiffs' motion for preliminary injunction. (Dkt. 34.) Defendants incorporate those arguments here and, for reference, provide a shortened version below.

1. *Plaintiffs lack standing because they do not allege an injury in fact that is traceable to the alleged constitutional defects.*

Plaintiffs assert two types of injuries. Neither is sufficient to confer standing.

First, Plaintiffs assert injuries arising out of their arrests and bookings into King County Jail. However, Plaintiffs' own allegations establish that the purported constitutional defects could not have caused these injuries. Supp. Compl. ¶ 1.4. One purported defect is that the ordinance criminalizes the conduct of individuals who have implicit permission to write on another person's property. *Id.* ¶ 5.7. However, Plaintiffs do not allege that they had implicit permission to write on the East Precinct wall. Another purported defect is that the ordinance prohibits chalking on the sidewalk. *Id.* ¶ 4.30. But Plaintiffs were arrested for chalking on a wall, not a sidewalk. These breaks in the causal chain defeat standing, because Plaintiffs' injuries are not "trace[able] to the challenged action." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Second, Plaintiffs claim ongoing injuries because their self-expression is chilled. Specifically, in their motion for preliminary injunction, Plaintiffs describe how they are chilled from chalking on sidewalks near government buildings, at a local park, or in the presence of police officers. *See* De Castro Dec. ¶ 6, Moya-Delgado Dec. ¶ 4, Snyder ¶ 4, Tucson ¶¶ 5-6. However, Plaintiffs have not alleged a "credible threat" that they will be arrested for chalking on the sidewalk in any of those settings. *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979). On the contrary, Plaintiffs allege that the City has a long-established, official policy of not arresting people who chalk

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

on sidewalks. Supp. Compl. ¶ 4.38. Plaintiffs do not allege that the City has ever arrested an individual for chalking on a sidewalk. Plaintiffs' allegations of being chilled are insufficient for standing because the possibility of enforcement is entirely remote—not "actual or imminent." *Lujan*, 504 U.S. at 560.

      *2.  Plaintiffs lack standing because the requested relief will not redress their alleged harm.*

      Finally, to "establish standing, a plaintiff must show a substantial likelihood that the relief sought would redress the injury." *Mayfield v. United States*, 599 F.3d 964, 971 (9th Cir. 2010). With respect to their facial First Amendment claims, Plaintiffs have not shown redressability. Even if the Court were to grant Plaintiffs' request and enjoin the City from enforcing the Property Destruction ordinance, it would not redress Plaintiffs' asserted harm of chilling. A parallel Washington State criminal statute, identical in the relevant respects, still would prohibit the conduct at issue. *See* RCW 9A.48.090.[2] Regardless of the outcome in this case, Plaintiffs' proposed conduct of chalking on sidewalks will continue to be defined as a criminal misdemeanor under state law.

      *3.  Plaintiffs do not fall within the overbreadth exception to standing.*

      Plaintiffs also fail to show that they fit within an exception to their lack of standing. A First Amendment overbreadth challenge may succeed even if "a more narrowly drawn statute would be valid as applied to the party"; in this way, overbreadth doctrine is a "departure from the general rule that a litigant has standing only to vindicate his own constitutional rights." *Members of City County of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 796-99 (1984). Under the overbreadth doctrine, "a statute is facially invalid if it prohibits a substantial amount of protected speech." *United*

---

      [2] RCW 9A.48.090(1)(b) provides "A person is guilty of malicious mischief in the third degree if he or she . . . writes, paints or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person unless the person has obtained the express permission of the owner or operator of the property . . . ."

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 7
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*States v. Williams*, 553 U.S. 285, 292 (2008).

Before a statute can be subject to a facial, overbreadth challenge, there must be a threshold showing that it is "directed narrowly and specifically at speech or conduct commonly associated with speech." *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 613-15 (1973)). The Property Destruction ordinance is not directed narrowly and specifically at expression or at conduct commonly associated with expression, because it prohibits conduct only if it damages or alters the property of another person. Subsection A(2) prohibits intrusions on another's property that tangibly alter the appearance of the property. It is the damage or alteration of property that is the ordinance's target, not the regulation of expressive activities.

The City is unaware of authority for the proposition that altering the property of another is a traditional expressive activity protected by the First Amendment. Vandalism of another's property is not protected by the First Amendment merely because it expressed an idea.[3] The ordinance, therefore, does not have a close nexus to expression or conduct commonly associated with expression because it "does not punish only [property defacement] engaged in for the purpose of expressing views" and any burdens upon speech are independent of the expression's content and incidental to the statute's legitimate purpose of protecting property. *United States v. O'Brien*, 391 U.S. 367, 375 (1968); *see also Roulette*, 97 F.3d at 305.

---

[3] *See Riely v. Reno*, 860 F. Supp. 693, 702 (D. Ariz. 1994) ("[I]t is an untenable position that conduct such as vandalism is protected by the First Amendment merely because those engaged in such conduct "intend[ ] thereby to express an idea." (quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989)); *People for Ethical Treatment of Animals v. Giuliani*, 105 F. Supp. 2d 294, 318 (S.D.N.Y. 2000), (dicta) (First Amendment does not guarantee freedom to "readorn with graffiti property owned by the government or by another person"); *Wilson v. Johnson,* 04–CV–059, 2005 WL 2417057, at *7 (E. D. Tenn. Sept. 30, 2005) ("Plaintiff got caught defacing the doors and walls of two University buildings, conduct that constitutes vandalism, and vandalism is not protected by the First Amendment."), *aff'd*, 247 Fed.Appx. 620 (6th Cir. 2007).

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 8
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

To be susceptible to an overbreadth challenge, there also must be a realistic danger posed to the First Amendment rights of parties not before the court. *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984) (upholding restrictions on posting of cardboard signs on public property). The risk of overbreadth must be "not only real, but substantial as well, judged in relationship to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

Plaintiffs have not met their burden to demonstrate a real and substantial risk of overbreadth, judged in relationship to SMC 12A.08.020's plainly legitimate sweep.

Defendants interpret paragraph 4.30 of the Supplemental Complaint as Plaintiffs' effort to demonstrate substantial overbreadth by identifying third parties to whom the Property Destruction ordinance could be unconstitutionally applied. Plaintiffs point to children chalking rainbows on a sidewalk. *Id.* But there is no constitutional right to draw a picture on another person's property or on public property. Nor do Plaintiffs assert that any children have been or are realistically likely to be chilled or deterred. On the contrary, Plaintiffs assert that it is Defendants' longstanding policy not to enforce against such chalking on the sidewalk. *Id.* ¶ 4.38.

The other examples given by Plaintiffs also are inapposite: "Employees . . . using their employer's word processing software" and "an attorney or law clerk . . . writing a note on a legal pad belonging to co-counsel or the court." *Id.* ¶ 4.30. Those are not First Amendment protected activities. Moreover, Plaintiffs do not allege that anyone in those situations has been chilled or that the ordinance realistically might be enforced against them. Therefore, Plaintiffs' overbreadth challenge fails. *See, e.g., Mahoney v. Doe*, 642 F.3d 1112, 1120 (D.C. Cir. 2011) (overbreadth analysis not warranted where plaintiff challenging anti-graffiti ordinance did not "argue there is a likelihood of prosecution . . . that deters otherwise protected speech").

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT - 9
2:23-cv-00017 TLF

The Ordinance is not susceptible to a facial, overbreadth challenge, and Plaintiffs' facial First Amendment Claims should be dismissed with prejudice.

**A. Even if Plaintiffs could overcome their lack of standing, their First Amendment facial, overbreadth claims (¶¶ 5.2, 5.3) should be dismissed because the Property Destruction ordinance is a constitutional manner restriction under *Clark*.**

If the Court determines that the Ordinance *is* susceptible to a facial, overbreadth challenge, that does not end its inquiry. The next step is to identify the nature of the forum and determine whether the Property Destruction ordinance survives the constitutional standard. *See, e.g.*, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 944 (9th Cir. 2011) (concluding that ordinance was overbroad and also applying forum analysis); *S.O.C., Inc. v. Cnty. of Clark*, 152 F.3d 1136, 1144 (9th Cir.), *amended*, 160 F.3d 541 (9th Cir. 1998) (same).

In the forum analysis, the level of judicial scrutiny depends upon whether the site is a public forum or a nonpublic forum. *See Int'l Soc'y for Krishna Consciousness of Cal., Inc. v. City of Los Angeles*, 764 F.3d 1044, 1049 (9th Cir. 2014). In a public forum, the government "may impose reasonable, content-neutral restrictions on the time, place, or manner of protected speech so long as those limits are 'narrowly tailored to serve a significant governmental interest' and 'leave open ample alternative channels for communication of the information.'" *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The Ninth Circuit has referred to this test as "an intermediate level of scrutiny." *Id.* (quoting *Berger v. City of Seattle*, 569 F.3d 1029, 1059 (9th Cir. 2009) (en banc)).

For purposes of Plaintiffs' facial challenge, the Property Destruction ordinance must withstand the test for restrictions in public forums, because it prohibits writing and marking on public streets and sidewalks (it also restricts conduct in a variety of other forums).[4] Public streets and sidewalks are

---

[4] Because this claim is a facial challenge, the eco-block wall that Plaintiffs defaced is not the correct forum for analysis. As explained below in section IV.C.3 the wall on which Plaintiffs wrote was a nonpublic forum.

traditional public forums. *See, e.g.*, *Perry Educational Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983).

Expressive activity in a public forum, "whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293-94 (1983). *Clark* established a three-part test for restrictions on expressive activity in a public forum: such restrictions "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Id.* at 293-294; *see also, e.g.*, *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The City's ordinance survives this three-part test.

> 1. *The Property Destruction Ordinance is content and viewpoint neutral.*

The ordinance is plainly content and viewpoint neutral. Its text prohibits damage and alteration of another's property without reference to the conduct's motivation or viewpoint.

> 2. *The Property Destruction ordinance is narrowly tailored to serve a significant government interest.*

The second prong of the Supreme Court's test asks whether the restriction is "narrowly tailored to serve a significant government interest." *Clark*, 468 U.S. at 293-94. The City's interests are significant. The Supreme Court has explained that "municipalities have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression." *Taxpayers for Vincent*, 466 U.S. at 805-07 (upholding restriction as applied to political campaign signs made of cardboard and stapled to public utility poles). Accordingly, courts have consistently recognized the governments' substantial esthetic interest in preventing even temporary visual blight caused by posters, signs, or

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT - 11
2:23-cv-00017 TLF

chalk writing. *See, e.g.*, *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1072-73 (9th Cir. 2006) (pole signs); *Mahoney*, 662 F. Supp. 2d at 90 (chalking on the sidewalk).

The test for "narrowly tailored" is not a proxy for "the least restrictive means." *White House Vigil for ERA Comm. v. Clark*, 746 F.2d 1518, 1531-32 (D.C. Cir. 1984). "So long as the means chosen *are not substantially broader than necessary* to achieve the government's interest, [] the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward*, 491 U.S. at 798 (emphasis added). In addition, courts "have been loath to second guess the Government's judgment to that effect." *Board of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469 (1989).

The "essence of narrow tailoring" is having the regulation "focus[ ] on the source of the evils the city seeks to eliminate ... and eliminate[ ] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Ward*, 491 U.S. at 799 n. 7. For example, a city has a legitimate esthetic interest in preventing littering, but the requirement of narrow tailoring does not allow a city to ban the public distribution of handbills—even though some handbills inevitably end up as litter. *See Schneider v. State of New Jersey*, 308 U.S. 147, 160–61 (1939); *Klein v. City of San Clemente*, 584 F.3d 1196, 1202 n.4 (9th Cir. 2009).

The Property Destruction ordinance does not suffer from the same defect as the handbill and leafletting bans in *Schneider* and *Klein*. In contrast, it is narrowly tailored because it does not ban or restrict speech that does not create the evils the City seeks to eliminate. Rather, the Property Destruction ordinance is narrowly tailored, because it "target[s] and [eliminates] no more than the exact source of the 'evil' [it seeks] to remedy," *Taxpayers for Vincent*, 466 U.S. at 808. The "evil" in this situation is unpleasant and intrusive, visual blight, clutter, and defacement. Thus the ordinance "responds precisely to the substantive problem which legitimately concerns the [City]" and "curtails

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT - 12
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

no more speech than is necessary to accomplish its purpose." *Id.* at 810.  In upholding a ban on chalking on the sidewalk in front of the White House, the D.C. Circuit explained why a restriction like the one at issue here was narrowly tailored:

> It is the tangible medium—chalking—that creates the very problem the Defacement Statute seeks to remedy. . . It is true, the defacement at issue is temporary and can be cured. . . .  The government can proscribe even temporary blight.

*Mahoney v. Doe*, 642 F.3d 1112, 1118-19 (D.C. Cir. 2011). Accordingly, this Court should conclude that the Property Destruction ordinance is narrowly tailored to advance a significant governmental interest.

   *3. The Property Destruction ordinance leaves open ample alternative channels of communication.*

   The third prong of the *Clark* test asks whether the restriction at issue leaves open ample alternative channels for communication. There are myriad other ways in which protestors can communicate their messages in the vicinity of the East Precinct, both orally and in writing, such as distributing literature, buttons and bumper stickers, marching, speaking, or holding vigils. The availability of such alternative channels of communication satisfies First Amendment concerns with respect to time, place, and manner limitations. *See Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 827 F.3d 1192, 1202 (9th Cir. 2016) (describing alternatives and upholding ban on mobile billboards because, "[a]lthough mobile billboards are a unique mode of communication, nothing in the record suggests that Appellants' overall "ability to communicate effectively is threatened."); *see also, e.g.*, *Clark,* 468 U.S. at 295 (outright ban on one manner of speech valid where it did not constitute "any barrier to delivering to the media, or to the public by other means, the intended message.").

   Neither the supplemental complaint nor Plaintiffs' declarations in support of their motion for preliminary injunction allege that Plaintiffs were not able to use these other means of communication

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 13
2:23-cv-00017 TLF

in the vicinity of the East Precinct. Nor do they assert that these methods would not reach their intended audience.

In sum, if the Court determines that Plaintiffs have standing to raise their First Amendment overbreadth claim, then the Court should conclude that the ordinance survives the Clark test.

> 4. *It depart from legal precedent to hold that the ordinance is facially invalid.*

At least three courts have applied the Clark test to prohibitions on chalking in traditional public forums and held that the restrictions are constitutional manner restrictions on expressive conduct. *See Watters v. Otter,* 986 F. Supp. 2d 1162 (D. Idaho 2013) (chalking on Idaho state capitol grounds); *Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011) (chalking on street outside of White House); *Occupy Minneapolis v. Cnty. of Hennepin*, 866 F. Supp. 2d 1062, 1070 (D. Minn. 2011) (chalking on plaza adjacent to government).

Defendants were unable to locate authority holding a similar ordinance to be facially unconstitutional. The Ninth Circuit and a district court within this circuit previously have addressed the allegedly retaliatory arrests or prosecutions for chalking on public sidewalks. However, in no case did the court invalidate the underlying statute. *MacKinney v. Nielsen*, 69 F.3d 1002, 1005-08, 1010 (9th Cir. 1995) (; *Ballentine v. Tucker*, 28 F.4th 54, 63 (9th Cir. 2022); *Bledsoe v. Ferry Cnty.*, 499 F. Supp. 3d 856, 876 (E.D. Wash. 2020).

In addition to the parallel Washington State statute, a ruling invalidating the City's Property Destruction ordinance logically would imply that laws throughout the country that criminalize graffiti are unconstitutional.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 14
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

**B. Plaintiffs' as-applied First Amendment claims of viewpoint discrimination (¶¶ 5.1, 5.4) fail as a matter of law.**

Plaintiffs assert as-applied, First Amendment claims based on two different theories: selective enforcement and retaliatory arrest. Neither is persuasive.

*1.     Plaintiffs' claim of selective enforcement (¶ 5.4) is unsupported by their allegations.*

Plaintiffs assert that the City selectively enforced the Property Destruction ordinance against them based on their anti-police viewpoint they expressed. Supp. Compl. ¶¶ 5.1, 5.4.  To prevail on a claim of selective enforcement,[5] Plaintiffs must establish that, regardless of whether the Ordinance may be facially valid, the City has an intentional policy or practice of enforcing the Ordinance in a content- or viewpoint-discriminatory manner. *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011). Defendants do not have such a policy, nor have the Plaintiffs adequately alleged that they do.

Here, Plaintiffs' claim must be dismissed because they have not alleged facts from which the Court could "draw the reasonable inference" that the City has a policy of content-discriminatory enforcement.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On the contrary, Plaintiffs' factual allegations indicate that Defendants do not enforce the ordinance against individuals who use chalk on city sidewalks. Plaintiffs allege that the City articulated its "long-established" enforcement policy under the ordinance in a 2015 tweet: "[T]he use of sidewalk chalk doesn't constitute graffiti." Supp. Compl. ¶¶ 4.38-39. Plaintiffs point to a series of occasions in which people who were expressing pro-police viewpoints were not arrested for writing pro-police messages on public sidewalks using chalk, despite acting in plain view of police officers. *Id.* ¶¶ 4.40-41. Based on Plaintiffs' own version of the facts, however, the City does not single out pro-police viewpoints for special treatment—it also allows

---

[5] This claim can be styled as a selective-enforcement claim under the Equal Protection Clause or an as-applied challenge under the First Amendment. *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011).

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT - 15
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

political protestors to chalk on sidewalks. That is, Plaintiffs assert that they themselves have chalked "messages of political protest" on city sidewalks "regularly" in the past without being arrested or asked to stop by City officials.[6] Plaintiffs were writing not on a public sidewalk but rather on a wall that the City had erected around the East Precinct building. *Id.* ¶ 1.4.

Even accepting all these facts as true, they establish a consistent enforcement policy—not a pattern of selective enforcement. Based on Plaintiffs' allegations, Defendants do not enforce the Property Destruction ordinance against people who chalk or mark *on the public sidewalks*. *Id.* ¶¶ 4.38-4.41.

Defendants' enforcement policy is content- and viewpoint-neutral, because it treats different ways of altering another's property (chalking on the sidewalk versus chalking on a wall) differently without reference to motivation or viewpoint. *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293-94 (1983). Therefore, Plaintiffs have not alleged a "content-discriminatory enforcement of an ordinance [that] is the result of an intentional policy or practice." *Hoye v. City of Oakland*, 653 F.3d 835, 855 (9th Cir. 2011) (citations omitted).

In addition to the failure to adequately allege a content- or viewpoint-discriminatory enforcement policy, Plaintiffs also have not alleged "facts, either anecdotal or statistical, demonstrating that similarly situated defendants . . . could have been prosecuted, but were not." *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012); *accord Hoye*, 653 F.3d at 855 ("Plaintiffs

---

[6] De Castro Dec. (Dkt. 18) ¶ 4 ("Prior to January 1, 2021, I regularly used sidewalk [chalk] to write messages of political protest on public sidewalks."); Moya-Delgado Dec. (Dkt. 19) ¶ 3 ("Before this incident, I had been chalking the names of police violence victims at vigils and memorials, using temporary chalk on public sidewalks."); Tucson Dec. (Dkt. 21) ¶ 4 ("Prior to January 1, 2021, I regularly used sidewalk [chalk] to write messages of political protest on public sidewalks. I was referred to as 'Chalk Guy' by other participants in protests, because I would frequently attend events with a box of chalk.").

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

are generally required to show the existence of an unconstitutional policy by extrapolating from a *series* of enforcement actions." (emphasis added)). Plaintiffs do not point to any other individual who was not arrested for marking on the East Precinct wall or on any other public wall, fence, building or structure.[7] Therefore they fail to sufficiently allege that even a single "similarly situated" individual expressing a different viewpoint was not arrested, and the supplemental complaint does not allege a pattern of inconsistent enforcement.

The distinction between writing chalk messages on a public sidewalk versus a police station wall is not a small one. The public sidewalks have "immemorially been held in trust for use of the public... for purposes of communicating thoughts between citizens, and addressing public questions." *Hague v. Committee. for Indus. Org.,* 307 U.S. 496, 515 (1939). In contrast, courts repeatedly have held that walls and fences surrounding public buildings are not traditional public forums. *See, e.g.*, *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 964-67 (9th Cir. 1999) (fence around baseball field); *Rosebrock v. Beiter*, 788 F. Supp. 2d 1127, 1136 (C.D. Cal. 2011), *aff'd sub nom. Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014) (fence around Veterans Administration medical center); *Boyd v. City of Hermosa Beach*, No. CV 04-10528, 2007 WL 9717630, at *8 (C.D. Cal. Sept. 11, 2007) (exterior of police station).

Plaintiffs' proposed control group of individuals who use chalk on sidewalks is not "similarly situated in all respects  . . .except for the attribute on which the selective enforcement claim rests," as required. *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1063 (9th Cir. 1995); *Taylor*

---

[7] Leave to amend would be futile. Pointing to one or two individuals who fit this description would be insufficient, because it would not establish a pattern from which the court could infer the City's intent to discriminate. *See Hoye*, 653 F.3d at 855; *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("'[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.'").

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 17
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

*v. San Diego County*, 800 F.3d 1164, 1169 (9th Cir. 2015) (the two groups "must be similar in the respects pertinent to the State's policy."); *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1154 (9th Cir. 2007) (affirming dismissal and describing facts that needed to be similar).

>    2.    *Plaintiffs' claim of retaliatory arrest (¶ 5.1) is unsupported by their allegations.*

Plaintiffs assert that Defendants arrested them in retaliation for their protected speech. Compl. ¶ 5.1. To state a First Amendment retaliation claim, a plaintiff must allege, among other elements, (1) there was no probable cause for the underlying arrest, and (2) the government defendant had "retaliatory animus" toward the plaintiff. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722-23 (2019). Plaintiffs here do not meet either of these two required elements.

Plaintiffs do not sufficiently allege that the officers lacked probable cause to arrest them for violating the Property Destruction ordinance. The allegations in the Supplemental Complaint establish that probable cause did exist. Plaintiffs admit that they intentionally wrote on the eco-block wall and that the wall was a public structure owned by the City, meeting the elements of subsection A.2 of ordinance (both the old and new versions). *See* Supp. Compl. ¶¶ 1.4, 4.28. Accordingly, plaintiffs have not alleged that the officers lacked probable cause, because the statement in paragraph 5.9 is a "legal conclusion[] . . . not entitled to an assumption of veracity." *Iqbal*, 566 U.S. at 678.

Even when probable cause is present, there is one, alternative way for a plaintiff to make out a claim for retaliatory arrest. Plaintiffs must "present[] objective evidence that [they were] arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 139 S. Ct. at 1727; *see also Thomas v. Cassia Cnty.*, No. 20-35862, 2022 WL 1223705, at *2 (9th Cir. Apr. 26, 2022). As described above in the section addressing selective enforcement, Plaintiffs do not meet this requirement.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT - 18
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Because Plaintiffs fail to adequately plead the absence of probable cause or an exception that requirement, this Court need not address the question of retaliatory animus. *Thomas v. Cassia Cnty.*, 2022 WL 1223705, at *2 (At this stage of the analysis, "the statements and motivations of the particular arresting officer are 'irrelevant.'" (quoting *Nieves*, 139 S.Ct. at 1727)); *cf. Johnson v. Cnty. of San Bernardino*, No. EDCV 18-2523-GW-AFMX, 2020 WL 5224350, at *19 (C.D. Cal. June 24, 2020) (analyzing *Nieves* and concluding that if the plaintiff does adequately plead lack of probable cause or an exception to that requirement, then the court proceeds to the "substantial motivating factor" step of the analysis).

To the extent the Court considers the element of retaliatory animus, Plaintiffs' allegations do not meet the pleading standard. The Supplemental Complaint lacks any non-conclusory, factual allegations to suggest the individual officers who arrested plaintiffs were motivated by the viewpoint of Plaintiffs' speech.[8] It is not enough to allege that Plaintiffs were arrested based on the fact that they wrote on the precinct wall—rather, the Plaintiffs must establish that Plaintiffs were arrested based on the *viewpoint* that their writing expressed. *See, e.g., Nieves*, 139 S. Ct. at 1724 ("protected speech is often a 'wholly legitimate consideration' for officers when deciding whether to make an arrest").

The only non-conclusory, factual allegation as to any City employee's subjective motives relates to a statement made by a lieutenant in a different precinct, two months *after* the incident in question. Plaintiffs allege that a lieutenant "threaten[ed] 'enforcement action' against members of the public for chalking the public sidewalk outside of SPD's West Precinct" on March 3, 2021. Supp. Compl. ¶ 4.43. That allegation has no bearing on the motivations of the individual, arresting officers

---

[8] Plaintiffs also assert: "Defendants would not have arrested any Plaintiff but for their protected speech. The moving force and substantial motivating factor of each arrest was retaliation for protected speech." ¶ 5.1. That statement is simply a recitation of the elements of the claim, which this Court need not accept as true. *Twombly*, 550 U.S. at 555.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 19
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

named in this case. *Cf. Nieves*, 139 S. Ct. at 1728 ("[T]hat allegation about *Nieves* says nothing about what motivated *Weight*, who had no knowledge of Bartlett's prior run-in with Nieves." (emphasis in original)).

3.    *To the extent Plaintiffs argue otherwise, the application of the Property Destruction ordinance to chalking on the East Precinct wall is a reasonable restriction in a non-public forum.*

It is unclear whether Plaintiffs contend that the Ordinance itself is unconstitutional as applied to them, irrespective of whether Defendants discriminated against them based on their viewpoint. If Plaintiffs are making that argument, it fails.

Plaintiffs assert that the eco-block wall was an "open and traditional public forum" because it was "built over the public sidewalk." Supp. Compl. ¶ 1.3. That does not make the wall a traditional public forum. The Supreme Court has explained that lampposts which are also located on city sidewalks, are not a traditional public forum. *See Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 814 (1984). It upheld an ordinance forbidding the posting of signs on public property, including attaching political signs on lampposts. *Id.* at 815.

The eco-block wall around the East Precinct was a non-public forum, where free speech rights are at their "are at their constitutional nadir." *Mezibov v. Allen*, 411 F.3d 712, 718 (6th Cir. 2005) (citation omitted). As noted above, courts repeatedly have held that walls and fences surrounding public buildings are not traditional public forums.

As the Supreme Court has observed, government intent is the essential question in determining whether a designated public forum has been established: "The government does not create a public forum by inaction or by permitting limited discourse, but only by *intentionally* opening a nontraditional public forum for public discourse." *Cornelius v. NAACP Legal Defense and Educ.*

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 20
2:23-cv-00017 TLF

*Fund*, 473 U.S. 788, 802 (1984). Plaintiffs do not allege that the City took any actions that would be interpreted as intentionally opening up the eco-block wall for public expression.

Because the eco-block wall was a non-public forum, the ordinance's restrictions need only to be reasonable to survive First Amendment analysis. *Int'l Soc. for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 679 (1992). The restrictions at issue are reasonable for the reasons set forth above in section IV.B—the City has a significant esthetic interest in combatting even temporary visual blight and the ordinance is tailored to accomplish that objective. Accordingly, to the extent Plaintiffs argue otherwise, the Court should determine that the prohibition on chalking on walls or barriers is a reasonable restriction in a non-public forum.

**C. Plaintiffs' facial Due Process claims (¶¶ 5.6, 5.7) fail for lack of standing and as a matter of law.**

Plaintiffs make two arguments in support of their facial challenge to the Property Destruction ordinance under the Due Process Clause. Plaintiffs assert that the ordinance criminalizes "entirely innocent conduct regardless of Plaintiffs' intent and regardless of whether Plaintiffs reasonably believed they were expressly or impliedly authorized to make the mark, figure, or inscription alleged." Supp. Compl. ¶ 5.7. In addition, Plaintiffs allege that ordinance is "impermissibly vague on its face . . . such that Plaintiffs have no notice of the conduct prohibited, depriving them of due process of law." *Id.* ¶ 5.6. Both challenges fail.

*1.  Plaintiffs lack standing for their claim that the Property Destruction Ordinance facially violates the Due Process Clause because it criminalizes entirely innocent conduct (¶ 5.7).*

Plaintiffs claim that the Ordinance is facially invalid because it "criminaliz[es] entirely innocent conduct regardless of whether Plaintiffs were legally or impliedly authorized" to write on the East Precinct wall. Supp. Compl. ¶ 5.7. Plaintiffs own allegations establish that their conduct was not "entirely innocent." Plaintiffs do not allege that they had implicit permission to write on the wall.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 21
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Nor do Plaintiffs allege any facts from which the Court could infer that Plaintiffs might have had permission to write on the wall.[9] Based on their own allegations, Plaintiffs wrote without express permission on a wall owned by the City. Writing on someone else's property without their permission is "entirely innocent conduct."

Outside of the First Amendment context, Plaintiffs are foreclosed from asserting the Due Process rights of other parties who are not before the court. *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010) (plaintiff cannot raise a successful vagueness claim "based on the speech of another" under the Due Process Clause). Accordingly, Plaintiffs cannot attempt to assert the rights of third parties, such as "children chalking a rainbow." Supp. Compl. ¶ 4.30. Plaintiffs lack standing to assert this claim and it should be dismissed with prejudice.

2.    *In addition to the lack of standing with respect to paragraph 5.7, both of Plaintiffs' facial Due Process challenges (¶¶ 5.6 & 5.7) must be dismissed because they lack substantive merit.*

The general rule is that to prevail on a facial challenge a plaintiff "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).  The Supreme Court has explained:

> Facial challenges are disfavored for several reasons. Claims of facial invalidity often rest on speculation. As a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebones records. Facial challenges also run contrary to the fundamental principle of judicial restraint . . . Finally, facial challenges threaten to short circuit the democratic process . . .

*Washington State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008) (citations, brackets, and internal quotation marks omitted).

---

[9] For example, Plaintiffs do not allege that the wall had any other marks, writing, or drawings on it, nor do Plaintiffs allege that SPD employees or any other City employee used the wall for communication or expression of any kind.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL COMPLAINT - 22
2:23-cv-00017 TLF

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

Plaintiffs cannot establish that "no set of circumstances exists under which the [ordinance] would be valid." *Salerno*, 781 U.S. at 745. Plaintiffs must acknowledge that the City may lawfully enforce the ordinance against individuals who spray paint the outside of the courthouse or key an SPD patrol car.

Moreover, the ordinance neither "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or (2) "authorizes . . arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Plaintiffs acknowledge that "[t]he ordinary meaning of the [Ordinance] is straightforward," belying their argument that it is vague. Plfs.' Mot. for Prelim. Inj. 15. A "straightforward" regulation does not require someone to guess what conduct is proscribed. Indeed, a person of ordinary intelligence knows what conduct is prohibited: damaging or marking another's property without express permission.

The terms in the Ordinance have common meanings clear to a reasonable person, and Plaintiffs do not argue otherwise. *See Tingley v. Ferguson*, 47 F.4th 1055, 1090 (9th Cir. 2022) (anti-conversion therapy law not vague because terms have "common meanings that are clear to a reasonable person"). By comparison, a "statute is vague if it does not provide explicit standards to those who apply them, so as to avoid arbitrary and discriminatory enforcement." *Anderson v. Morrow*, 371 F.3d 1027, 1032 (9th Cir. 2004). The ordinance provides explicit standards: do not mark, draw, write, or paint on another's property without express permission. Its terms have common meanings clear to a reasonable person.

Plaintiffs assert that SMC 12A.08.020 violates Due Process because it "prohibits 'entirely innocent' or 'normally innocent' conduct." Plfs.' PI Mot. 23. As noted above, Plaintiffs lack standing to make this argument because their conduct was not "entirely innocent." Plaintiffs are correct that a law may be rendered unconstitutionally vague if it criminalizes ordinarily innocent activities.

DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SUPPLEMENTAL
COMPLAINT - 23
2:23-cv-00017 TLF

*See Papachristou v. City of Jacksonville*, 405 U.S. 156, 163 (1972) (vagrancy statute was impermissibly vague because it criminalized "activities which by modern standards are normally innocent"). The problem in *Papachristou* was that the prohibition failed to distinguish between innocent conduct and conduct calculated to cause harm. *Id.* at 163. That is not a problem here, because marking another's property without express permission can cause harm. Plaintiffs offer only a handful of unconvincing examples of innocent conduct. Supp. Compl. ¶ 4.30.

The Due Process Clause does not require the City to allow marking or otherwise altering the appearance of other people's property without their express permission. For these reasons, Plaintiffs' facial Due Process claim is not a valid basis for relief.

## D.  Plaintiffs' Fourth Amendment claims (¶ 5.9) fail as a matter of law.

Plaintiffs allege that they were "subjected to… unreasonable search and seizure, without probable cause or other justification" in contravention of the Fourth Amendment to the U.S. Constitution. Supp. Compl. ¶ 5.9. Plaintiffs' conclusory allegation is insufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555-56). Crucially, "the constitutionality of a law is generally irrelevant to whether probable cause existed to believe that Plaintiff violated the law." *Frey v. Town of Jackson, Wy.*, 41 F.4th 1223, 1243 (10th Cir. 2022); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). Police officers are excused "from liability for acting under a statute that… [was] reasonably believed to be valid but that was later held unconstitutional on its face or as applied."[10] *Pierson v. Ray*, 386 U.S. 547, 555 (1967).

---

[10] To the extent this immunity falls within qualified immunity, it is appropriate to adjudicate on a motion to dismiss. "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (overruled, in part, on other grounds). Dismissal of Plaintiffs' claims fulfills the "strong public interest in protecting public officials from the costs associated with the defense of damages claims," and conserves judicial resources by "resolving that

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

The old version of the Property Destruction ordinance had been in effect for twenty-five years on January 1, 2021. It is axiomatic that belief in the validity of the ordinance was reasonable. Where "a police officer has probable cause to arrest someone under a statute that a reasonable officer could believe is constitutional, the officer will be immune from liability even if the statute is later held to be unconstitutional." *Grossman*, 33 F.3d at 1209. Moreover, as explained above, Plaintiffs concede facts establishing that they violated subsection A.2 of the ordinance and that the officers who arrested them had probable cause. Supp. Compl. ¶ 1.4.

**E. Because Plaintiffs' facial challenges under the First and Fourteenth Amendments lack merit, the requests for declaratory and injunctive relief (¶¶ 6.2, 6.4, 6.5) associates with these claims must be dismissed.**

If Plaintiffs' as-applied claims are the only claims that proceed in this case, then Plaintiffs' request for an injunction prohibiting Defendants from enforcing the ordinance is impermissibly overbroad. Supp. Compl. ¶ 6.4. Where the "claim and the relief that would follow . . . reach beyond the particular circumstances of the [ ] plaintiffs," "[t]hey must . . . satisfy [the] standards for a facial challenge to the extent of that reach." *Doe v. Reed*, 561 U.S. 186, 194 (2010). The same principles applies to Plaintiffs' request for an overbroad declaratory relief. Supp. Compl. ¶¶ 6.2, 6.5.

**F. Plaintiffs' Monell claims (¶ 5.10) must be dismissed as a matter of law.**

A municipal liability claim under *Monell* cannot succeed if there is no underlying constitutional violation. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994). Plaintiffs have not stated a claim for any violation of their constitutional rights, and so their *Monell* claims must be dismissed.

---

threshold question before permitting discovery." *Crawford-El v. Britton*, 523 U.S. 574, 575, 589 (1998) (citation omitted).

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200

With respect to their First Amendment retaliatory arrest claim, Plaintiffs' *Monell* claims against the City fail for an additional reason.  Plaintiffs assert a *Monell* liability on based on a single, conclusory allegation that "the Defendant City has a pattern, practice, or policy of enforcing and threatening to enforce Property Destruction ordinance in retaliation for protected speech." Compl. ¶ 5.8. This allegation is insufficient under *Iqbal* and *Twombly*.

With respect to their bookings, Plaintiffs' *Monell* claims fail, additionally, because the City does not have authority over bookings. The supplemental complaint contains a vague and conclusory assertion that high-level officials within SPD and the Mayor's Office ""used their official position to 'override' the County's Covid-19 booking policy." Compl. ¶¶ 4.20, 4.21. These allegations cannot establish liability for the City under *City of St. Louis v. Praprotnik.* 485 U.S. 112, 123 (1988) ("the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy *in that area* of the city's business" (emphasis in original). City officials, including an "assistant chief or higher" or someone "in an executive leadership position in the Mayor's Office," have no authority under state law to make policy for County jails. Wash. Const. Art. XI, § 11 (authorizing a city or county to make and enforce regulations "within its limits"); RCW 70.48.071 (stating that "counties shall adopt the standards [for operation of correctional facilities] after considering guidelines established collectively by the counties of the state."). Plaintiffs' allegation that City officials in any position can "override" a County policy for the operation of a County jail fails as a matter of law, and fails to establish *Monell* liability under, at least, the fourth prong of *Praprotnik*.[11]

---

[11] Furthermore, to the extent Plaintiffs seek to allege a § 1983 conspiracy claim, the supplemental complaint is insufficient. Plaintiffs must allege "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws… (3) an overt act in furtherance of the conspiracy; and (4) an injury… or deprivation." *Thomas v. Roach*, 165 F.3d 137, 146 (2nd Cir. 1999); *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983).

## V. CONCLUSION

For the foregoing reasons, this Court should dismiss the Plaintiffs' supplemental complaint in its entirety. Plaintiffs' conclusory allegations, even taken as true, do not establish that they are entitled to relief. The viability of Plaintiffs' allegations will not be strengthened through discovery or amendment of Plaintiffs Complaint. Consequently, the City is entitled to dismissal of Plaintiffs' Complaint with prejudice.

DATED this 3rd day of May, 2023.

I certify that this memorandum contains 8,319 words, in compliance with the Local Civil Rules.

ANN DAVISON
Seattle City Attorney

By:   */s/Kerala Cowart*_____
Kerala Cowart, WSBA# 53649
Jessica Leiser, WSBA# 49349
Assistant City Attorneys

E-mail: kerala.cowart@seattle.gov
E-mail: jessica.leiser@seattle.gov

Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104
Phone: (206) 684-8200

*Attorneys for Defendant City of Seattle*

**Ann Davison**
Seattle City Attorney
701 5th Avenue, Suite 2050
Seattle, WA 98104-7095
(206) 684-8200