1

Honorable Marsha J. Pechman

2

3

4

5

6

7          UNITED STATES DISTRICT COURT
    WESTERN DISTRICT OF WASHINGTON AT SEATTLE

8

DEREK TUCSON, ROBIN SNYDER,          No. 2:23-cv-00017-MJP
9   MONSIEREE DE CASTRO, and ERIK
    MOYA-DELGADO,                        PLAINTIFFS' RESPONSE TO
10                                        DEFENDANTS' **SECOND MOTION TO**
                 Plaintiffs,             **DISMISS**
11
         v.
12
    CITY OF SEATTLE, ALEXANDER
13   PATTON, TRAVIS JORDAN, DYLAN
    NELSON, JOHN DOES (#1-4), and JANE
14   DOES (#1-2)

15              Defendants.

16

17              **I.      INTRODUCTION**

18        Defendants' Motion to Dismiss the Supplemental Complaint should be denied. The

19   City's amendment to the ordinance does not cure facial issues identified in the original complaint

20   and the Supplemental Complaint.  Furthermore, Defendants' amendment to the ordinance in no

21   way bears on Plaintiffs' claims for viewpoint discrimination and retaliatory arrest, which

22   occurred under the prior version of the ordinance. The City continues to contend the ordinance

23   authorizes arrest for non-destructive political speech in the public forum, and Plaintiffs have

24   standing to seek injunctive relief.

25        Defendants' motion should be denied.

26

27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

## II.     FACTS AND PROCEDURAL BACKGROUND

The facts are contained in Plaintiffs' Response to Defendants' first Motion to Dismiss, see Dkt. 33, Section II, and in Plaintiffs' Supplemental Complaint, Dkt. 36.

Plaintiffs first filed their Complaint, Dkt. 1, on January 4, 2023. On March 21, 2023, the City filed its first motion to dismiss, Dkt. 14. Plaintiffs filed a response asking the Court to deny the motion to dismiss as moot, because the City amended the municipal ordinance at issue between the filing of the complaint and Defendants' first motion. Dkt. 33, Section III.A. Plaintiffs sought leave to file a supplemental complaint regarding the amendment. *See* Dkt. 22. On April 19, 2023, this Court granted Plaintiffs leave to file their Supplemental Complaint and finding Defendants' motion to dismiss the first Complaint moot. *See* Dkt. 35. Defendants then filed the instant motion to dismiss. Dkt. 42. Also before the Court is Plaintiffs' Motion for Preliminary Injunction. Dkt. 16.

### A.  Plaintiffs' Allegations

The Supplemental Complaint, Dkt. 36, alleges Defendants' arrest of Plaintiffs violated the First, Fourth, and Fourteenth Amendments because they were arrested because of the content of their speech, under a facially overbroad and vague ordinance, and without probable cause. Their allegations describe the circumstances of their arrest, and they further make detailed allegations regarding Defendants' discriminatory enforcement of the ordinance.

The Supplemental Complaint alleges that Defendants Patton, Jordan, and Nelson arrested Plaintiffs on January 1, 2021. Dkt. 36, ¶¶4.1-4.15. Prior to the arrests, Defendant City of Seattle erected a concrete barrier which blocked access to the public sidewalk along Pine Street and 12th Avenue. *Id*., ¶4.2.

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS - 2

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

The arrests began when Plaintiff Tucson wrote the words "peaceful protest" using a piece of ordinary charcoal on the barrier blocking the sidewalk. *Id*., ¶¶4.3, 1.4 (photograph of "peaceful protest" message). This writing was inherently temporary, caused no damage to the function or aesthetic purpose of the wall, and would wash off in Seattle's abundant winter rain. *Id*., ¶4.5. For this act of political speech, Plaintiff Tucson was handcuffed, arrested, escorted into the East Precinct, placed in a holding cell, and then booked into King County Jail in contravention of the County's Covid safety protocols. *Id*., ¶¶4.16-4.24. At the King County jail, Plaintiff Tucson was searched, stripped of civilian clothing, dressed in jail garb, photographed, fingerprinted, and placed in a holding cell, all because he had written the words "peaceful protest" as depicted in ordinary charcoal. *Id*., ¶¶4.25; 1.4.

The arrest was based on the Defendant officers' reliance on the then-existing version, SMC 12A.08.020, which stated that a "A person is guilty of property destruction if he or she . . . (2) Writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person." Dkt. 36, ¶¶ 4.27-4.30. The Supplemental Complaint alleges that the ordinance was facially overbroad and vague because its wording allows arrest for a vast array of protected speech. *Id*., ¶¶4.28-4.35.

The Supplemental Complaint further alleges that Defendants arrested Plaintiff Tucson because of retaliatory animus and without probable cause. *Id*., ¶¶ 4.34, 5.7. The Supplemental Complaint alleges that the City has a practice of treating politically-neutral or pro-police chalking on *all* public surfaces as non-arrestable or even lawful, *id.,* ¶¶ 4.37-4.45, while repressing comparable speech that criticizes police, *id.* ¶¶ 4.42-4.43. These allegations include an incident less than 90 days after Plaintiffs' arrest in which a City police lieutenant threatened

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS - 3

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

protesters with "enforcement action" under "SMC property destruction" for chalking messages criticizing SPD on the sidewalk outside of the SPD's West Precinct building. *Id*., ¶¶ 4.43.

Plaintiffs Snyder, De Castro, and Moya-Delgado make substantively identical allegations about their arrests. *Id.*, ¶¶4.7-4.16. After Defendants arrested Plaintiff Tucson, Defendants arrested each of the three other Plaintiffs on suspicion of having written other messages of protest in ordinary sidewalk chalk or charcoal. *Id*. Like Plaintiff Tucson's message, all of the other Plaintiffs' messages were inherently temporary and would wash off in the rain. *Id*., ¶4.9. Plaintiffs Snyder, De Castro, and Moya-Delgado were all arrested after verbally protesting the arrest of Plaintiff Tucson, demanding an explanation from the Defendant arresting officers, and writing temporary messages of further protest in temporary chalk and charcoal. *Id*., ¶¶4.6-4.9. Plaintiffs Snyder, De Castro, and Moya-Delgado allege they were arrested and booked into the King County Jail under the same "property destruction" ordinance as Plaintiff Tucson, *id*., ¶¶4.6-4.9, and pursuant to the same City enforcement practice and policy of targeting protest messages while treating messages of support for police as non-arrestable and lawful. *Id*., ¶¶ 4.36-4.43. All four Plaintiffs allege their speech is thereby chilled and deterred. *Id*., ¶¶4.42-4.43.

**B.  The City Amends the Ordinance in Response to the Complaint, Leading to Plaintiffs' Supplemental Complaint.**

On March 14, 2023 – after the Complaint was filed – the Seattle City Council passed, and Mayor Bruce Harrell signed, City Council Bill 120521, reorganizing the ordinance. Dkt. 36, ¶4.35. The bill's sponsor, Councilmember Lisa Herbold, described it is as a "risk management bill intended to mitigate a possible risk with our current code, that has come to light in the course of a current lawsuit." *Id*. Councilmember Herbold explained that her "objective as the sponsor of the legislation was to address only the risk exposure, otherwise I believe if we were dealing with policy issues, the bill should be heard in committee to have those deliberations. So, very

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

narrowly limited to address the risk management recommendations of the City Attorney's Office." *Id.*

The City's amendment changed SMC 12A.08.020, in two ways. First, it added the *mens rea* element of intent to SMC 12A.08.020(A)(2), the provision at issue in this case. *Id.*, ¶4.36. Second, it made the "express permission of the owner or operator of the property" an element rather than an affirmative defense. *Id.*, ¶¶4.35-4.36. The Ordinance's substantive prohibition on writing of any kind without "express permission" (including with implicit permission) remains the same. *Id.* The ordinance continues to make no distinction between non-protected, permanent, and/or destructive writing and protected, temporary, and inherently non-destructive writing. *See id.*, ¶¶4.35.

### III.    ARGUMENT

#### A.  Legal Standard on Motion to Dismiss

Defendants ask the Court to dismiss the Complaint in its entirety. Dkt. 42. A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* On a motion to dismiss, '[a]ll of the facts alleged in the complaint are presumed true, and the pleadings are construed in the light most favorable to the nonmoving party.'" *Miracle v. Hobbs*, 427 F. Supp. 3d 1150, 1153 (D. Ariz. 2019) (quoting *Bates v. Mortg. Elec. Registration Sys., Inc.*, 694 F.3d 1076, 1080 (9th Cir. 2012)). The court draws all reasonable inferences in the plaintiff's favor. *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1073 (9th Cir. 2010). The party moving for dismissal has the burden of proving that no claim has been stated. Moore's Fed. Practice, §12.34 (3d. ed. 2011).

#### B.  The Amended Ordinance Does Not Moot Plaintiffs' Facial Challenges

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS - 5

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1

2

The differences between the pre- and post-amendment versions of SMC 12A.02.080 are

3

discussed at Dkt. 16 (Pl.'s Mtn. for Prelim. Injun.), pp. 2-6 and at Dkt. 36 (Supplemental

4

Complaint), at ¶¶4.35-4.36. Plaintiffs do not dispute that the post-litigation amendment cured

5

part of the problem with the Ordinance, but as Plaintiffs have explained,

6

> Plaintiffs' facial challenges…are largely unaffected by the 2023 amendments which do
> not narrow the ordinance's sweeping prohibition on all writing or marking without
> express permission and which the City contends allows it to criminalize the use of
> sidewalk chalk on any surface. Plaintiffs' claims are not "moot," because the amended
> Ordinance is essentially identical to pre-amendment Ordinance in this important
> respect…

7

8

9

Dkt. 16, p. 9.

10

11

The original Complaint identified five distinct problems with SMC 12A.08.020; the

12

City's amendment cured at most two of these problems. First, the original ordinance criminalized

13

all writing on the property of another even where the writer has implied permission of the owner

14

of the property. *See*  Dkt. 1,  ¶¶1.2, 4.30. Second, the original ordinance criminalized all writing

15

16

on the property of another (including public property) without respect to whether the writing was

17

protected by legal right, such as under the First Amendment. *Id.*, ¶¶4.30, 4.32, 5.1-5.4. Third,

18

while titled as a "property destruction" ordinance, the ordinance criminalized writing "of any

19

type" regardless of whether any damage or diminution in value of the property results. *Id*., ¶¶1.4,

20

4.5, 4.9, 4.14, 4.30. Fourth, the original ordinance allowed arrest even where the writer had the

21

express permission of the property owner, making express permission an affirmative defense

22

only. And fifth, the original ordinance had no *mens rea*  requirement.

23

24

The post-litigation amendment to the ordinance solves problem four and partially solves

25

problem five[1], but not problems one through three. *See* Dkt. 36, ¶¶4.35-46 (strike through

26

27

---

[1] It remains unclear whether the *mens rea* refers to the element of writing or "without express permission."

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO
DISMISS - 6

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

showing changes to the ordinance). The plain language of the new ordinance still (1) criminalizes all writing on the property of another (including public property) even where the writer has implied permission of the owner of the property, (2) criminalizes all writing on the property of another (including public property) without respect to whether the writing was protected by legal right, such as under the First Amendment; and (3) criminalizes writing "of any type" regardless of whether any damage or diminution in value of the property results. The amended ordinance remains unconstitutionally vague and overbroad for each of these reasons.

### C. Plaintiffs Have Standing to Seek Injunctive Relief

Plaintiffs have briefed standing to seek injunctive relief at Dkt. 16 (Pl.'s Mtn. for Preliminary Injunction), p. 9, Dkt. 33 (Pl.'s Response to Def.'s First Mtn. to Dismiss), p. 23-25, and Dkt. 37 (Reply ISO Mtn. for Prelim. Injun.), pp. 2-5. Plaintiffs address standing issues further here.

Defendants concede that the standing analysis for overbreadth claims is a departure – in Plaintiffs' favor – from standing requirements for injunctive relief on other types of claims. *See* Dkt. 42, p. 8; *see*, e.g., *4805 Convoy, Inc. v. City of San Diego*, 183 F.3d 1108, 1112 (9th Cir. 1999)Yet Defendants assert that the ordinance is not susceptible to an overbreadth challenge because, in their view, it does not regulate expression. *Id.*, p. 9. Defendants are wrong, since the ordinance expressly and directly regulates writing, which the Ninth Circuit and Supreme Court have made clear is a form of pure speech, and not "conduct." The written word is a form of pure speech subject to the full protection of the First Amendment. *See Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1061-62 (9th Cir. 2010) (citing "writing or painting" as forms of "pure speech" and holding with "no difficulty" that tattoos are a form of pure speech) (emphasis in original); *accord Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018); *see*

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS - 7

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

*also Texas. V. Johnson,* 491 U.S. 397, 406 (1989) (contrasting the "written word," as pure speech, with still-protected but separately analyzed expressive conduct such as flag burning).

Defendants mistakenly rely on a case which illustrates the difference between speech and conduct, and which actually support Plaintiffs' standing. *Roulette v. City of Seattle*, 97 F.3d 300, 305 (9th Cir. 1996). Defendants do not mention that the provision at issue in *Roulette* required that "No person shall sit or lie down upon a public sidewalk…" *Id.* It was in this context that the court in *Roulette* invoked the principle that overbreadth doctrine is applicable only to statutes directly regulating speech. *Id.* Defendants omit discussion of the facts of *Roulette*, because writing is speech, while sitting is usually not.

Defendants' other citations on this point are similarly misleading. Defendants cite *Riely v. Reno*, 860 F. Supp. 693, 702 (D. Ariz. 1994), but in that case, the court found that plaintiff had standing. Defendants invoke this authority as if it were favorable for them and make no effort to distinguish it; in truth it supports Plaintiffs' argument for standing. Similarly, Defendants cite what they acknowledge is dicta from *People for Ethical Treatment of Animals v. Giuliani*, 105 F. Supp. 2d 294, 318 (S.D.N.Y. 2000), but that case did not address standing at all, so it does not support Defendants' argument. Defendants finally cite an unpublished opinion from the Eastern District of Tennessee which also does not discuss standing. *Wilson v. Johnson,* 04–CV–059, 2005 WL 2417057 (E. D. Tenn. Sept. 30, 2005).

The reality is that a statute which makes writing a crime, even when done with the implied permission of the property owner, and even when protected by the First Amendment, plainly regulates expression. The relaxed overbreadth standing analysis is therefore applicable according to the very test Defendants invoke. Dkt 37, p. 10 (listing array of innocent writings criminalized by ordinance). Nevertheless, Plaintiffs satisfy all requirements of ordinary standing

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS - 8

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

1   analysis, and seek injunctive relief tailored to protect and restore their speech rights and redress

2   the harm caused by the language of SMC 12A.08.020. All Plaintiffs were injured in fact when

3   they were arrested and booked into jail, which continues to chill their speech. Dkt. 1, 4.42-4.43.

4   Plaintiffs suffer continuing injury in fact because, pursuant to the plain language of the

5   ordinance, Plaintiffs could be arrested for political chalking, including on the sidewalk, and are

6   thereby chilled from this expression. *Cuviello v. City of Vallejo*, 944 F.3d 816, 824-825 (9th Cir.

7   2019) (facial challenge was not rendered moot by amendment to ordinance where amended

8   ordinance was sufficiently similar and harm to plaintiff continued); *Italian Colors Rest. v.*

9   *Becerra*, 878 F.3d 1165, 1171-72 (9th Cir. 2018); *see* Dkt. 36, ¶¶4.44-4.45. Notably, Defendants'

10  second motion to dismiss abandons their previous argument that they have not threatened

11  enforcement against sidewalk chalking, because, as both the original and supplemental complaint

12  allege with specificity, the City has threatened enforcement against sidewalk chalking when the

13  message is critical of police, and have done so on video no less. *See id.*, ¶¶4.43; Dkt. 38-1 (video

14  footage of SPD officers threatening arrest for political sidewalk chalking).

15         Regarding traceability and causation, the text of SMC 12A.08.020 was the express basis

16  and cause of Plaintiffs' arrest – the arresting officers quoted from the ordinance as the basis for

17  the arrest. An injunction prohibiting enforcement would redress Plaintiffs' injury and end the

18  ordinance's chilling effect. *See Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010)

19  (holding that "if [defendants] are enjoined from enforcing the challenged provisions, [plaintiff]

20  will have obtained redress in the form of freedom to engage in certain activities without fear of

21  punishment."). Plaintiffs have pleaded – and are in fact – deterred and chilled from their speech

22  by the Ordinance and Defendants' enforcement. *See also* Dkt. 37 (Reply ISO Mtn. for Prelim.

23  Injun.), pp. 2-5.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

Defendants' arguments against traceability and redressability lack merit, as discussed at Dkt. 37 (Pl.'s Reply ISO Mtn. for Prelim. Injun.), pp. 2-6. Defendants deny that the threat of arrest Plaintiffs face for chalking is traceable to the ordinance. However, Plaintiffs allege, and Defendants can hardly dispute, that Defendants arrested Plaintiffs for chalking while relying expressly on the ordinance. Plaintiffs also allege, based on video evidence, that after the arrests the City continued to threaten enforcement of the ordinance under similar circumstances. And Plaintiffs allege that these arrests and threats based on the ordinance chill and deter Plaintiffs from chalking.  Dkt. 36, ¶¶4.43. Thus, Plaintiffs' injury is "trace[able] to the challenged" ordinance. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). In truth, Plaintiffs' need not show that they were arrested or threatened to establish standing, *Becerra*, 878 F.3d at 1171-72, but these facts put standing beyond serious dispute. Similarly, while Defendants invoke a separate provision of state law which they surmise may apply to Plaintiffs' chalking even if an injunction issues, that state law is materially different from the challenged ordinance. Further, Defendants have no authority to enforce the state law provision. *City of Auburn v. Gauntt*, 174 Wn.2d 321, 325-32, 274 P.3d 1033, 1034-38 (2012) (city lacks authority to enforce and prosecute state misdemeanor statutes unless incorporated into the Seattle City Code). Finally, the existence of a similar provision does not rebut redressability. *Get Outdoors II, LLC v. City of San Diego, Cal*., 506 F.3d 886, 893 (9th Cir. 2007) (where the lawsuit implicitly challenges another statute, the claims are redressable). In sum, Plaintiffs have standing to seek an injunction, and even if the Court denies Plaintiffs' motion for a preliminary injunction, Plaintiffs are entitled to complete discovery on their claim for injunctive relief and seek an injunction at trial. FRCP 65.

**D. The Supplemental Complaint, Like the First Complaint, More Than Adequately Pleads Facts Supporting Each Cause of Action Alleged**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

### i.    Overbreadth Challenge

Defendants' arguments on the merits regarding Plaintiffs' overbreadth challenge rely on public forums analysis and the City's asserted aesthetic interest in the sweeping elimination of a wide range of entirely non-destructive forms of expression. *See* Dkt. 37, at p. 10.

Defendants' arguments fail for two reasons. First, the ordinance directly regulates pure speech in both public and private fora, not distinguishing between the two. Regarding the former, the ordinance applies to writing on the sidewalk (which Defendants concede is a traditional public forum) and on concrete eco-blocks the City chose at its sole discretion to dump on the public sidewalk in an effort to block public access. *See* Dkt. 33, pp. 10-11. Second, the City's freewheeling aesthetic interest asserted in the course of its public forum analysis lacks a limiting principle and would lead to anomalous results. Defendants' "non public forum" argument would treat the government's "weighty aesthetic" interest in the hallowed halls of courthouse[2] the same as a temporary stack of concrete blocks interposed over a public sidewalk. The City's argument treats pure political speech written on public property in Seattle's eclectic and iconoclastic arts district as criminal based solely on the aesthetic discretion of police officers.[3] This the wrong result. *See Cohen v. California*, 403 U.S. 15, 25 (1971).

Defendants walk the Court down a slippery slope. Their arguments, if credited, would allow "aesthetic" interests to swallow the First Amendment whole and rewrite decades of precedent protecting messages and means of expression that the government considers

---

[2] "The lobby of the courthouse is not a traditional public forum or a designated forum, not a place open to the public for presentation of views." *Sefick v. Gardner*, 164 F3d 370, 372 (7th Cir 1998). "The courtroom is a nonpublic forum, Berner, 129 F.3d at 26, where the First Amendment rights of everyone (attorneys included) are at their constitutional nadir." *Mezibov v. Allen*, 411 F3d 712, 718 (6th Cir 2005).

[3] Plaintiffs do not contend the First Amendment would protect them if they defaced a courthouse. The point is that Defendants' public forum analysis fails to properly balance the interests at stake in this analysis or reckon with basic but unfavorable caselaw.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

"intrusive" and undesirable, regardless of governmental aesthetic objections. *See*, *e.g.*, *Johnson*, 491 U.S. at 406. The Supreme Court has cautioned that the categories of unprotected speech are carefully limited to the well-known few, and that courts may not create new categories of unprotected or less-protected speech on an ad-hoc basis. *United States v. Stevens*, 559 U.S. 460, 471 (2010) (the First Amendment does not "permit the Government to imprison any speaker so long as his speech is deemed valueless or unnecessary, or so long as an ad hoc calculus of costs and benefits tilts in a statute's favor," and describing the government's proposed ad hoc balancing of interests as "startling and dangerous"). That is functionally what Defendants ask the Court to do here: where the government finds a manner of expression aesthetically unpleasant, the government says it can prohibit it. When speech does not fall within the First Amendment's exacting obscenity standard – the government can still prohibit it according to its "aesthetic" preferences. When speech does not rise to the level of a true threat – the government can invoke its aesthetic interest in well-mannered discourse, and silence those who rudely disagree with the government's aesthetically preferred decorum. That is where the City's argument points – but it is not the law. *Taxpayers for Vincent*[4] (on which Defendants rely for their aesthetic interest arguments) must be read in harmony with the foundational precedents of First Amendment jurisprudence. *Vincent* cannot be read to establish a *sub rosa* "aesthetic interest" exception to the First Amendment, and indeed is largely inapposite because it relied on commercial speech precedent not at issue in the case at hand. *See* Dkt. 37, p. 12. Today's City government may have what it sees as benign and agreeable "aesthetic" goals – but one person's beautification is another's degeneracy; one's Frank Lloyd Wright is another's Albert Speer.

---

[4] *Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789 (1984)

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS - 12

Simply because the City may have aesthetic goals does not mean that its means of enforcing those goals, here SMC 12A.08.020, is Constitutional. *See Hopper v. City of Pasco*, 241 F.3d 1067 (2001) (reversing district court's denial of plaintiff's motion for summary judgment regarding First Amendment right of artists to display controversial works of art at an art exhibition at city hall, in spite of the city's "taste"). SMC 12A.08.020 hands Defendants unlimited discretion to determine, on pain of imprisonment, what is "aesthetically" acceptable. Thus, without any legislative authorization, guidelines or democratic oversight, Defendants decided that bleak concrete blocks were more aesthetically pleasing than political writings that dealt with issues of national importance. Here, police used their standardless discretion to impose criminal consequences for violating their personal (not the public's) preferred aesthetics: a cityscape dominated by a temporary concrete wall free of any and all adornment, protest, or criticism.

The case of *United States v. Grace*, 461 U.S. 171, 182 (1983) is instructive. Protesters challenged the constitutionality of a federal law that criminalized "signs, banners, or devices" on the grounds in front of the Supreme Court including public sidewalks. The district court dismissed the protester's claims, but the Court of Appeals reversed, and the Supreme Court affirmed the reversal, upholding the right to display "signs, banners, or devices" even in front of the weightiest and most symbolic institutions in American society, where aesthetic interests are at their apex. Notably, the Court recognized that the statute served the government's interest in "decorum," an essentially aesthetic interest.[5] *Id.*, at 182. The court made clear it did not "denigrate the necessity to protect persons and property or to maintain proper order and decorum

---

[5] Decorum means, "propriety and good taste in conduct or appearance," Merriam Webster Online Dictionary,  https://www.merriam-webster.com/dictionary/decorum, accessed May 11, 2023.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

within the Supreme Court grounds." *Id.*, at 182. But the court found that such a purpose was not sufficient where there was "no suggestion, for example, that [the protesters'] activities in any way obstructed the sidewalks or access to the building, threatened injury to any person or property, or in any way interfered with the orderly administration of the building or other parts of the grounds." *Id.* The Court then observed that the "building's [i.e., the Supreme Court's] perimeter sidewalks are indistinguishable from other public sidewalks in the city that are normally open to the conduct that is at issue here." *Id.* While the Court did not address whether the constitutional problem with the statute would be cured if the government unilaterally decided to fill the public sidewalk with concrete eco-blocks and then apply the same prohibition, this binding authority makes clear that in areas "indistinguishable from other public sidewalks," the government's mere aesthetic interests are insufficient to justify regulation of expression.

The ordinance here criminalizes chalking, which like the "banners and devices" at issue in *Grace*, does not "threaten[] injury to any person or property." *Id.* The ordinance prohibits chalking on both sidewalks and a sidewalk-obstructing eco-block wall , surfaces which are "indistinguishable from other public sidewalks in the city that are normally open to the conduct that is at issue here." *Id.* In support of the prohibition, Defendants assert an analogous interest in decorum, which does not support the prohibition. This court should apply *Grace* and deny Defendants' motion.

### ii.    As Applied Challenge for Viewpoint Discrimination

Plaintiffs need only "plausibly allege[] a discrepancy in treatment on the basis of viewpoint," taking all of the factual allegations in the complaint as true. *Waln v. Dysart*, 54 F.4th 1152, 1163 (9th Cir. 2022).Taking Plaintiffs' detailed allegation as true, it is more than plausible that the City and its employees enforce SMC 12A.08.020 in a selective and viewpoint-

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS - 14

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

discriminatory manner, permitting pro-police chalking in the public forum while enforcing the ordinance against anti-police chalking, including when that chalking is done on the sidewalk. *See* Dkt. 36, ¶¶1.3, 4.34, 4.37-4.45, 5.1. To the extent the City asserts it has a discretionary policy of permitting sidewalk chalking regardless of viewpoint, that contention is irrelevant on this FRCP 12(b) motion because Plaintiffs allege with specificity that Defendants enforce SMC 12.08.020 against chalking on sidewalks where the message is critical of police. *See* Dkt. 36, ¶4.43. Thus, Plaintiffs have alleged sufficient facts to show a First Amendment violation unless the government can satisfy strict scrutiny. *Waln*, 54 F.4th at 1163; see also *First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1277 (9th Cir. 2017) (recognizing that viewpoint discrimination is subject to strict scrutiny); *Hoye v. City of Oakland*, 653 F.3d 835, 853 (9th Cir. 2011) (applying strict scrutiny to an ordinance neutral on its face but content-based as applied).

Defendants do not attempt to meet this burden: the words "strict scrutiny" appear nowhere in Defendants' motion. There is no compelling state interest in discriminating against writing temporary, non-destructive political criticism of the government. Plaintiffs have sufficiently alleged the City's policy and practice of viewpoint discrimination. Consequently, the motion to dismiss these claims should be denied.

### iii.    Retaliatory Arrest

"[A]s a general matter, the First Amendment prohibits government officials from subjecting individuals to retaliatory actions after the fact for having engaged in protected speech." *Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022), (*quoting Houston Cmty. Coll. Sys. v. Wilson*, 142 S. Ct. 1253, 1259, 212 L. Ed. 2d 303 (2022) (*quoting Nieves v. Bartlett*, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019)). "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO
DISMISS - 15

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

the adverse consequences, the injured person may generally seek relief by bringing a First

Amendment claim." *Id*. (internal quotation marks omitted). Probable cause does not defeat a

retaliatory arrest claim where police would typically exercise their discretion to not arrest.

*Nieves*, 139 S. Ct. at 1727 (*citing Lozman v. Riviera Beach*, 585 U. S. ___, 138 S. Ct. 1945, 201

L. Ed. 2d 342 (2018) (holding that even the existence probable cause does not bar a plaintiff's

First Amendment retaliation claim against a municipality where arrest occurred pursuant to

municipal policy of retaliation)). Justice Roberts discussed the following hypothetical in *Nieves*,

making it clear that Plaintiffs have properly pleaded a First Amendment retaliation claim:

> For example, at many intersections, jaywalking is endemic but rarely results in
> arrest. If an individual who has been vocally complaining about police conduct is
> arrested for jaywalking at such an intersection, it would seem insufficiently
> protective of First Amendment rights to dismiss the individual's retaliatory arrest
> claim on the ground that there was undoubted probable cause for the arrest. In
> such a case… probable cause does little to prove or disprove the causal
> connection between animus and injury[.]

139 S. Ct. at 1727. The Court expressly held, "the no-probable-cause requirement should not

apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly

situated individuals not engaged in the same sort of protected speech had not been." *Id*. at 1727.

The Supreme Court makes clear that, in order to defeat Defendants' motion at the pleading stage,

Plaintiff must only allege that retaliatory animus caused the arrest:

> To prevail on such a claim, a plaintiff must establish a causal connection between
> the government defendant's "retaliatory animus" and the plaintiff's subsequent
> injury. It is not enough to show that an official acted with a retaliatory motive and
> that the plaintiff was injured—the motive must cause the injury. Specifically, it
> must be a but-for cause, meaning that the adverse action against the plaintiff
> would not have been taken absent the retaliatory motive.

*Nieves*, 139 S. Ct. at 1722 (2019) (internal citations and quotations omitted).

Here, Plaintiffs have pleaded just such a causal connection between the City and its officers' retaliatory animus and their decision to arrest Plaintiffs, including detailed allegations showing that the City's policy is not to arrest similarly situated individuals who engaged in neutral or pro-police speech. The Complaint and Supplemental Complaint both allege that Defendants retaliated against Plaintiffs based on animus related to Plaintiffs' protected expressions.

First, Plaintiffs allege that Defendants arrested Plaintiffs for writing messages critical of Defendants near the East Precinct within months of Defendants exercising their discretion to tolerate supportive messages chalked (likely by police officers themselves) at City Hall. Dkt. 36, ¶¶1.3, 1.5, 1.6, 5.1. The Supplemental Complaint alleges specifically that the City has publicly stated that in the context of non-critical messages, the use of sidewalk chalk is not a crime under the municipal code. Dkt. 1, ¶4.39. The Supplemental Complaint then alleges with specificity that SPD tolerates (and may even participate in) pro-police chalking. Dkt. 36, ¶¶4.40, 4.41. Plaintiffs further allege (and substantiate) that Defendants intentionally targeted Plaintiffs and similarly situated political detainees for incarceration by exercising authority to "override" Covid-19-era booking policies such that Plaintiffs were incarcerated while similarly situated non-political detainees were released. Dkt. 36, ¶¶4.17-4.24. Plaintiffs' original and Supplemental Complaint are both more than adequate to survive a challenge on the pleadings because they allege with particularity and plausibility that the City has a policy of retaliation in which the speech at issue is not subject to arrest except when the message is critical. *Nieves*, 139 S. Ct. at 1727.

The City's motion attempts to rewrite, rather than address, Plaintiffs' allegations. As Defendants would have it, Plaintiffs' allegations distinguish between sidewalks and walls, irrespective of the message. But that argument fails for multiple reasons.

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS - 17

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

First, Plaintiffs allege specifically that the City threatens protesters engaged in critical speech with arrest for chalking when the chalking occurs on the sidewalk or on a SPD barrier blocking the sidewalk, while permitting sidewalk chalk that supports SPD. Dkt. 36, ¶¶4.37-4.44. Defendants' claim that a pile of cinder blocks transforms the public sidewalk into their private forum is inconsistent with Plaintiffs' allegations, and not a basis for dismissal at this stage. *See Jacobson v. United States Dep't of Homeland Sec.*, 882 F.3d 878, 883 (9th Cir. 2018) (inappropriate to dismiss complaint alleging exclusion from Border Patrol enforcement zone because Plaintiffs were entitled to discovery regarding facts going to public forum analysis). Certainly, a public sidewalk in a major urban area, adjacent to a public street, is a traditional public forum. *See Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) ("Public streets and sidewalks occupy a special position in terms of First Amendment protection. They are the archetype of a traditional public forum.") (alteration and internal citations and quotation marks omitted). *See also Snyder v. Phelps*, 562 U.S. 443, 456 (2011) ("But Westboro conducted its picketing peacefully on matters of public concern at a public place adjacent to a public street. Such space occupies a special position in terms of First Amendment protection.") (internal quotes and citation omitted).

As the space Plaintiffs chalked was a traditional public forum, Defendants cannot simply close it to insulate themselves from public criticism and transform it into a private forum. "Although it is possible for a public forum to lose its status, 'the destruction of public forum status . . . is at least presumptively impermissible.'" *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1105 (9th Cir. 2003) (alteration in original) (quoting *United States v. Grace*, 461 U.S. 171, 180 (1983)). The government bears the burden of proving that it has altered a public forum into a

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO
DISMISS - 18

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

non-public forum, *Jacobson*, 882 F.3d at 882-83, which Defendants cannot possibly accomplish in a 12(b)(6) motion.

Defendants cannot unilaterally eliminate access to the traditional public forum, and thereby transform the public's form into their private forum in which the public has no speech right whatsoever. Yet Defendants have also conceded that "[p]ublic streets and sidewalks constitute traditional public forums for First Amendment activities" and that "the Property Destruction ordinance restricts conduct in traditional public forums." Dkt. 14 (first motion to dismiss), p. 15. It is clear that the Ninth Circuit recognizes temporary political chalk writing outside of government buildings as protected. *MacKinney*, 69 F.3d at 1005; *Ballentine v. Tucker*, 28 F.4th 54 (9th Cir. 2022). Defendants' cavil that the eco-block wall is more akin to a lamppost or a "fence around [a] baseball field," Dkt. 42, p. 17, misses the point. Plaintiffs have alleged facts which, taken as true along with the reasonable inferences therefrom, show a discrepancy in treatment based on content and viewpoint. Dkt. 36, ¶¶4.37- 4.44. Nothing further is necessary to defeat Defendants' motion. *Waln*, 54 F.4th at 1163.

While Defendants deny that it is their policy and practice to allow chalking on sidewalks, but not on barriers, they provide no evidence to support that contention and it is factually disputed. It is an issue that must be developed through discovery and at trial, not a ground for dismissal at the pleading stage.

Finally, Defendants' arguments are self-contradictory. Defendants suggest, on the one hand, that Plaintiffs would not have been arrested had they chalked on the sidewalk. (Dkt. 42, p. 17). On the other hand, Defendants, suggest there is no right to chalk on the sidewalk at all., (Dkt. 42, p. 9). Defendants' position is also undermined by *MacKinney v. Nielsen*, 69 F.3d 1002, 1005 (9th Cir. 1995). Defendants also fail to note that its out-of-circuit precedent, Dkt. 42, p. 9

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS - 19

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

(citing *Mahoney v. Doe*, 642 F.3d 1112 (D.C. Cir. 2011)), does not apply to cases involving an allegation of retaliatory enforcement, *see Bledsoe v. Ferry Cty.*, 499 F. Supp. 3d 856, 874 (E.D. Wash. 2020). And given that the plain language of the ordinance potentially applies to all writing on all surfaces, Defendants' unsubstantiated claim that the sidewalk enjoys some degree of protection while a barrier obstructing the sidewalk does not, actually supports Plaintiffs' claim of unconstitutional vagueness.

In *MacKinney*, the plaintiff asserted a First Amendment retaliation claim after police arrested him for writing in chalk on the sidewalk. 69 F.3d at 1004. The Ninth Circuit reversed the district court's grant of summary judgment to defendants. In holding that the plaintiffs' refusal to stop chalking was protected speech, the court applied the well-established rule that the First Amendment protects the right to verbally challenge police, and further observed that "[n]o reasonable person could think that writing with chalk would damage a sidewalk." *Id.* at 1005. The Ninth Circuit and district courts in Washington have reaffirmed that chalking on the public right of way is protected by the First Amendment. *See Ballentine v. Tucker*, 28 F.4th 54 (9th Cir. 2022); *Bledsoe v. Ferry Cty*, *supra.* It is clear from the face of Plaintiffs' complaint, and a subject for discovery, that the temporary barrier which Plaintiffs were arrested for writing on was erected to block access to the very same public sidewalk on which the City must concede Plaintiffs could otherwise protest. *See* Dkt. 36, ¶4.2.

Because "[n]o reasonable person could think that writing with chalk would damage a sidewalk," 69 F.3d at 1005, no reasonable officer, could think that chalk or charcoal would "damage" a temporary concrete barrier blocking the sidewalk. As alleged, no probable cause existed, but regardless of whether it existed under the words of the overbroad ordinance, Plaintiffs state a claim for retaliatory arrest. *Nieves*, 139 S. Ct. at 1727; *see also Leonard v.*

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS - 20

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604   Fax 206.343.3961

*Robinson*, 477 F.3d 347 (6th Cir. 2007) (discussing lack of probable cause in retaliatory arrest claim where statute claimed for arrest was clearly unconstitutional).

Contrary to Defendants' attempt to reframe the challenge to the ordinance as rooted in a distinction between the surfaces on which messages are written, Plaintiffs have actually alleged discrimination based upon the viewpoint expressed therein irrespective of the surface on which it happens to be expressed. Importantly, the plain language of the ordinance criminalizes writing on all surfaces: sidewalks, concrete barriers, paper, word processers, and literally every other surface. Plaintiffs clearly allege that the City selectively enforced (and threatened to enforce) that ordinance on the basis of viewpoint. Dkt. 36, ¶¶ 4.37-4.44.

The City's argument is a thinly veiled effort to prematurely cut Plaintiffs off from conducting discovery precisely because Plaintiffs have not yet conducted discovery. Defendants quote language about the necessity of "anecdotal or statistical" evidence, (Dkt. 42, p. 16), while ignoring the anecdotal evidence in Plaintiffs' complaint (Dkt. 36, ¶¶ 4.37-4.43) and while attempting to deny Plaintiffs' access to statistical evidence via discovery. Even if the Court permits Defendants to define Plaintiffs' theory of discrimination as based on surface rather than viewpoint, Defendants' motion must still be denied: Plaintiffs have plausibly pled that Defendants have threatened "enforcement action" for writing anti-police messages on the sidewalk while not doing so against pro-police messages written on the sidewalk. Dkt. 36., ¶¶ 4.37-4.44.

### iv.  Fourteenth Amendment Claims

Defendants' arguments for dismissal of Plaintiffs' Fourteenth Amendment claims are meritless. Defendants make three arguments: (i.) that Plaintiffs "lack standing" to raise a vagueness challenge because the City considers their speech obviously proscribed by the

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Ordinance; (ii.) that the Ordinance gives notice as to what is prohibited; and (iii.) that the City does not consider the enforcement discretion inherent in the ordinance to be arbitrary or problematic.

The first argument fails because it mischaracterizes Plaintiffs' allegations. Plaintiffs allege that it is unclear whether the terms of the property destruction ordinance apply to them because their writing was inherently temporary and caused no damage to any property. Dkt. 36, ¶¶4.5, 4.9, 5.2, 5.5. The City believes it can arrest people under the ordinance in these circumstances. The City's belief does not make the sweeping scope of the ordinance clear to the public or provide reasonable notice as to any limit on its enforcement. This leap in logic is perhaps best illustrated by the City's failure to articulate the scope of authority it actually asserts under the ordinance. Could a child be arrested for chalking a rainbow on the sidewalk or not? Could a protester be arrested for chalking political slogans on the sidewalk in front of the East Precinct or not? Does the scope of the ordinance's plain language theoretically give Defendants authority to arrest anyone for making any marking on any surface, however temporary and non-destructive, if the person does not have the express permission of the owner? These questions illustrate the ordinances' vagueness on its face and as applied to Plaintiffs. *See* Dkt. 37, p. 10.

Defendants' second argument fails for nearly identical reasons. The City still has not staked out exactly what it thinks is and is not prohibited or how that distinction is rooted in the plain language of the ordinance. Neither the ordinance nor Defendants' motion explains why Plaintiffs cannot be arrested for chalking the exact same messages on the sidewalk in front of the temporary wall. Defendants certainly have produced no evidence of a policy distinguishing between the two scenarios. The public did not and does not have reasonable notice of what is

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO DISMISS - 22

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

prohibited, even if the City were to proffer such an interpretation for the first time in its reply. *See Hunt v. City of L.A*., 638 F.3d 703, 712 (9th Cir. 2011); Dkt. 36, ¶¶4.35-37.

Defendants' third argument also fails. The complaint alleges that the ordinance gives unfettered discretion to police and proscribes entirely innocent conduct. The sweeping language of the ordinance, and detailed factual allegations in the Supplemental Complaint, show that Defendants use the broad discretion afforded by the ordinance to target disfavored individuals and messages. Dkt. 36, ¶¶4.39-4.43. Curiously, Defendants have cited to *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (plurality), (*see* Dkt. 14, p. 21), in which the Supreme Court found provisions like the one at bar unconstitutionally vague due to overbroad discretion given to police. As the Supreme Court observed, mere "adopt[tion of] internal rules limiting [] enforcement" does not give the public reasonable notice of what conduct may be subject to arrest or prosecution. 527 U.S. at 63. Especially in the absence of any evidence of such standards, the ordinance affords Defendants unconstitutional discretion regarding enforcement.

### v.    Fourth Amendment Claims

In the alternative, Plaintiffs allege Fourth Amendment claims to the extent the City has offered constructions of the ordinance that attempt to limits its vagueness and overbreadth.

The Supplemental Complaint alleges that Defendants arrested Plaintiffs without probable cause, stating a claim for false arrest under the Fourth Amendment. *Beck v. City of Upland*, 527 F.3d 853, 864-66 (9th Cir. 2008); Dkt. 36, ¶¶4.9, 4.16, 4.27, 5.7. In response to Plaintiffs' use of sidewalk chalk, which neither damaged nor destroyed any property, Defendants caused Plaintiffs to be arrested, searched, and booked into jail overnight. *See* Dkt. 36, ¶4.16.

The Ninth Circuit has clearly established that "[n]o reasonable person could think that writing with chalk would damage a sidewalk." *MacKinney*, 69 F.3d at 1005. No reasonable

**MacDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

1    officer could think that writing "peaceful protest" in chalk or charcoal would "damage" a

2    temporary concrete barrier blocking the sidewalk.

3           To the extent Defendants attempt to save the ordinance from its facial overbreadth and

4    vagueness by claiming a narrowing construction limiting its application to situations in which

5    property has been damaged, destroyed, or diminished in value, then no probable cause existed to

6    arrest any Plaintiff because their conduct would be in no way criminal under such a construction.

7    *See United States v. Lopez-Soto*, 205 F.3d 1101, 1106 (9th Cir. 2000) (holding that officer had no

8    reasonable suspicion for traffic stop where driver "simply was not" violating any law); *see also*

9    *Leonard v. Robinson*, 477 F.3d 347, 354-361 (6th Cir. 2007) (discussing lack of probable cause

10   where statute claimed as basis for arrest was unconstitutional).

11          Indeed, as the Supplemental Complaint alleges, the City itself takes the position in

12   statements to the public that it does not consider chalking to be "property destruction." *See* Dkt.

13   36, ¶4.39 (SPD tells member of the public during public dialogue that, "we can say the use of

14   sidewalk chalk doesn't constitute graffiti.").  Thus, by the City's own definition, it appears no

15   probable cause existed to arrest any Plaintiff.

16          **vi.    *Monell* Claims**

17          The City is liable for constitutional violations of its employees when "the acts in question

18   were undertaken pursuant to official policy or custom." *Hopper v. City of Pascoe*, 241 F.3d

19   1067, 1082 (9th Cir. 2001) (upholding Monell claim for First Amendment violation) (citing

20   *Monell v. Dep't of Social Services*, 436 U.S. 658, 690-91, 98 S. Ct. 2018 (1978)).

21          Plaintiffs' *Monell* allegations are highly detailed and not conclusory. Dkt. 36, ¶¶ 4.16-

22   4.25, 4.37-4.43. Specific allegations in the complaint establish the City's policy, practice, or

23   custom. The Complaint not only alleges multiple instances in which the City has tolerated or

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO
DISMISS - 24

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

encouraged neutral and pro-police chalking, but includes images of those instances. The

Complaint also includes a public quote that, after consulting the municipal code, the City does

not generally consider sidewalk chalk to be "graffiti." This, taken together with the arrest of the

four Plaintiffs for the use of sidewalk chalk, constitutes a plausible allegation that the City has a

practice or custom of discriminatory enforcement.

There are three separate ways to meet the policy or custom requirement for a *Monell*

claim. *Hopper*, 241 F.3d at 1083. First, by showing (at this stage, alleging) a city employee acted

pursuant to a longstanding practice or custom or formal policy. *Id.*, quoting *Gillette*, 979 F.2d at

1346-47. Second, by alleging that a final policy-maker committed the tort. *Id*. And third by

showing a policymaking official ratified a subordinate's unconstitutional decision. Plaintiffs

have pleaded facts sufficient for all three *Monell* theories, and need only prove one. First, as

discussed above, Plaintiffs allege in detail the City's ongoing and well documented custom of

treating sidewalk chalk as a generally non-arrestable activity, while arresting or threatening

arrest when chalk is used for protest messages. Dkt. 23-2, ¶¶ 4.37-4.43. Second, Plaintiffs allege

that an executive in the mayor's office and police department – whose identity Plaintiffs will

learn in discovery –made the decision to subject Plaintiffs to booking in retaliation for non-

violent protest activity. Dkt. 36, ¶¶ 4.21-4.25. Finally, in subjecting Plaintiffs to extended

booking following their arrest for protected speech, these policy making officials ratified the

First Amendment violations committed by the Defendant officers, yet another basis for *Monell*

liability appearing plausibly on the face of the complaint.

### IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

*I certify that this memorandum contains 7,618 words in compliance with the Local Rules.*

DATED this 22nd day of May, 2023.

By: MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

\_\_\_/s/Braden Pence_____
Braden Pence, WSBA #43495
Email: bradenp@mhb.com

\_\_\_/s/Nathaniel Flack_____
Nathaniel Flack, WSBA #58582
Email: nathanielf@mhb.com

By: THE LAW OFFICE OF NEIL FOX
2125 Western Ave Ste 330
Seattle, WA 98121-3573
Tel 206.728.5440 Fax 866.422.0542

\_\_\_/s/Neil Fox_____
Neil Fox, WSBA #15277
Email: nf@neilfoxlaw.com

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO
DISMISS - 26

1

CERTIFICATE OF SERVICE

2

I hereby certify that on this date I electronically filed the foregoing document with the

3

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

4

following individuals:

5

6

Attorneys for Defendants

7

Ann Davison
Seattle City Attorney

8

Jessica Leiser, WSBA#49349
Assistant City Attorney
Email: Jessica.leiser@seattle.gov

9

10

Kerala Cowart, WSBA #53649
Assistant City Attorney
Email: kerala.cowart@seattle.gov

11

12

Seattle City Attorney's Office
701 Fifth Avenue, Suite 2050
Seattle, WA 98104

13

14

15

DATED this 22nd day of May, 2023, at Seattle, Washington.

16

17

18

__/s/Chris Bascom_____
Chris Bascom, Legal Assistant

19

20

21

22

23

24

25

26

27

PLAINTIFFS' RESPONSE TO DEFENDANTS' SECOND MOTION TO
DISMISS - 27

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961