UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEREK TUCSON, ROBIN SNYDER, MONSIEREE DE CASTRO, and ERIK MOYA-DELGADO, | CASE NO. C23-17 MJP |
| Plaintiffs, | ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION |
| v. | |
| CITY OF SEATTLE, ALEXANDER PATTON, TRAVIS JORDAN, DYLAN NELSON, JOHN DOES (#1-4), and JANE DOES (#1-2), | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' Motion for Preliminary Injunction. (Dkt. No. 16.) Having reviewed the Motion, the Response (Dkt. No. 34), the Reply (Dkt. No. 37), the Surreply (Dkt. No. 41), and all supporting materials, the Court GRANTS the Motion and PRELIMINARILY ENJOINS the enforcement of Seattle Municipal Code 12A.08.020 (as amended).

# BACKGROUND

On January 1, 2021, Plaintiffs wrote political messages, some of which were critical of the Seattle Police Department (SPD), in sidewalk chalk and charcoal on "eco-block" walls that were temporarily erected by the City outside of the SPD's East Precinct. (Supplemental Complaint ¶¶ 2.1-2.4, 4.1-4.2 (Dkt. No. 36); Declaration of Derek Tucson ¶ 2 (Dkt. No. 21); Declaration of Robin Snyder ¶ 2 (Dkt. No. 20); Declaration of Erik Moya-Delgado ¶ 2 (Dkt. No. 19); Monsieree de Castro ¶ 2 (Dkt. No. 18).) Tucson wrote the words "peaceful protest" in charcoal, while the precise messages the other Plaintiffs wrote are not clearly identified. (See Tucson Decl. ¶ 2; see also Supp. Compl. ¶¶ 4.8-4.15.) SPD officers arrested all four Plaintiffs for violating Seattle Municipal Code 12A.08.020 (the "Ordinance"). (Supp. Compl. ¶¶ 4.3-4.4, 4.10-4.4.14, 4.27-4.28.) Plaintiffs allege that the Ordinance was selectively enforced against them because of the views they expressed and that they are currently chilled in their use of chalk to express their views on public sidewalks and barriers built over the public sidewalk. (Id. ¶¶ 4.44-4.45, 5.3; Tucson Decl. ¶¶ 3-9; Snyder Decl. ¶¶ 3-6; Moya-Delgado Decl. ¶¶ 3-6; de Castro Decl. ¶¶ 4-7.)

At the time of the arrests, the Ordinance stated:

A.      A person is guilty of property destruction if he or she:

        1. Intentionally damages the property of another; or

        2. Writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person.

B.

        1. It is an affirmative defense to property destruction under subsection 12A.08.020.A.1 that the actor reasonably believed that he had a lawful right to damage such property.

2. It is an affirmative defense to property destruction under subsection 12A.08.020.A.2 that the actor had obtained express permission of the owner or operator of the building, structure, or property.

C.      Property destruction is a gross misdemeanor.

SMC 12A.08.020 (2021). "Property destruction" under SMC 12A.08.020 is punishable by imprisonment of up to 364 days and a fine of up to five thousand dollars. SMC 12A.08.020(C); 12A.02.070(A).

After Plaintiffs filed suit, the City amended the Ordinance to take effect on May 13, 2023, which now reads:

A.      A person is guilty of property destruction if the person intentionally:

1. Damages the property of another; or

2. Writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person unless the person has obtained the express permission of the owner or operator of the property.

B.

1. It is an affirmative defense to property destruction under subsection 12A.08.020.A.1 that the actor reasonably believed that he had a lawful right to damage such property.

C.      Property destruction is a gross misdemeanor.

(Declaration of Nathaniel Flack Decl. Ex. 6.)

Plaintiffs pursue four claims: (1) First Amendment violations under 42 U.S.C. § 1983; (2) Fourteenth Amendment violations under 42 U.S.C. § 1983; (3) Fourth Amendment violations under 42 U.S.C. § 1983; and (4) Monell claims against the City.

As to their First Amendment claims, Plaintiffs allege that Defendants selectively enforced the Ordinance and retaliated against them because of their political views in violation of the First Amendment. (Suppl. Compl. ¶¶ 5.1, 5.4.) They allege that their arrests have chilled their right to engage in further political speech. (Id.) They also argue that the Ordinance (both pre- and post-

1  amendment) is facially unconstitutional because it is impermissibly vague and substantially

2  overbroad. (Id. ¶¶ 5.2-5.3, 5.5.) As to their Fourteenth Amendment claims, Plaintiffs allege that

3  the Ordinance is facially unconstitutional because it is impermissibly vague and criminalizes

4  innocent conduct without due process. (Id. ¶¶ 5.6-5.8.) As to their Fourth Amendment claims,

5  each Plaintiff asserts that their arrest was an unreasonable search and seizure without probable

6  cause or justification. (Id. ¶ 5.9.)

7       Plaintiffs now move for a preliminary injunction to prevent the enforcement of the

8  Ordinance on the theory that it is facially unconstitutional under the First and Fourteenth

9  Amendments.

10                                    **ANALYSIS**

11  **A.    Standing**

12       The Court must first determine whether Plaintiffs have standing.

13       "[T]he irreducible constitutional minimum of standing contains three elements." Lujan v.

14  Defs. of Wildlife, 504 U.S. 555, 560 (1992). The three elements are as follows:

15       First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally
         protected interest which is (a) concrete and particularized; and (b) "actual or imminent,
16       not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between
         the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the
17       challenged action of the defendant, and not ... th[e] result [of] the independent action of
         some third party not before the court." Third, it must be "likely," as opposed to merely
18       "speculative," that the injury will be "redressed by a favorable decision."

19  Id. at 560–61 (alterations in original) (citations omitted).

20       Challenges that involve First Amendment rights "present unique standing considerations"

21  because of the "chilling effect of sweeping restrictions" on speech. Ariz. Right to Life Pol.

22  Action Comm. v. Bayless, 320 F.3d 1002, 1006 (9th Cir. 2003). "In order to avoid this chilling

23  effect, the Supreme Court has endorsed what might be called a 'hold your tongue and challenge

24  now' approach rather than requiring litigants to speak first and take their chances with the

consequences." <u>Italian Colors Rest. v. Becerra</u>, 878 F.3d 1165, 1171 (9th Cir. 2018) (internal

quotation marks omitted). Accordingly, when the challenged law "implicates First Amendment

rights, the [standing] inquiry tilts dramatically toward a finding of standing." <u>LSO, Ltd. v. Stroh</u>,

205 F.3d 1146, 1155 (9th Cir. 2000). Where First Amendment claims involve pre-enforcement

claims, the Ninth Circuit applies a "three-factor inquiry to help determine whether a threat of

enforcement is genuine enough to confer an Article III injury": "(1) whether the plaintiff has a

'concrete plan' to violate the law, (2) whether the enforcement authorities have 'communicated a

specific warning or threat to initiate proceedings,' and (3) whether there is a 'history of past

prosecution or enforcement.'" <u>Tingley v. Ferguson</u>, 47 F.4th 1055, 1067 (9th Cir. 2022).

Plaintiffs have sufficiently demonstrated standing.

First, Plaintiffs allege they suffered an injury-in-fact by being arrested under the

Ordinance and by continuing to be chilled in their free exercise of speech for fear of future

prosecution. Plaintiffs' arrests are evidence of a concrete and particularized injury of their

constitutional rights under the First and Fourteenth Amendments. And Plaintiffs have provided

sufficient, credible evidence through their declarations that they would like to continue to write

political messages using chalk or charcoal on City sidewalks and barriers erected on public

walkways, but are chilled from doing so because of the Ordinance and threat of future

prosecution. These are two bases on which the Court finds injuries-in-fact.

Second, the injuries are traceable to the Ordinance and its enforcement against Plaintiffs.

But-for the Ordinance, they would not have been arrested and would not fear future arrest.

Defendants argue that the arrests are not traceable to the purported unconstitutionality of the

Ordinance because Plaintiffs were arrested for chalking on a wall, not the sidewalk. The barriers

here are alleged to have been placed on a public right of way and appear to fall within the

1    Ordinance's reach to a "public . . . structure." And under either version of the Ordinance,

2    Plaintiffs fear an arrest for chalking messages on public sidewalks and barriers, which is

3    traceable to the Ordinance. Defendants also argue that there are no credible allegations that

4    Plaintiffs face a future threat of arrest under the amended Ordinance. This ignores Plaintiffs

5    declarations. Plaintiffs have expressed a credible and reasonable threat of arrest for future

6    chalking that the amended Ordinance still criminalizes. The Court similarly rejects Defendants'

7    argument that there is no credible threat of future harm given Plaintiffs' allegations that the City

8    has a "long-established, official policy of not arresting people who chalk on sidewalks." (Resp.

9    at 6.) As alleged, Plaintiffs were arrested notwithstanding this policy, which undermines

10   Defendants' argument.

11          Third, the relief Plaintiffs seek would redress their injury because an injunction

12   preventing the enforcement of the Ordinance would alleviate Plaintiffs' concerns about future

13   arrests. Defendants argue that redressability fails because a similar state law remains on the

14   books and could lead to arrest for the same conduct. (Resp. at 7.) It is true that there is a state law

15   that would likely criminalize the same conduct. See RCW 9A.48.090. But there is no evidence

16   that Defendants can enforce the state law or that any state law enforcement has done so or

17   threatened to do so. And the Ninth Circuit has noted that redressability remains satisfied where a

18   claim implicitly challenges another law forbidding the same conduct challenged in the lawsuit.

19   See Get Outdoors II, LLC v. City of San Diego, 506 F.3d 886, 893 (9th Cir. 2007). Here,

20   Plaintiffs' claims implicitly challenge this state law, which falls clearly within Get Outdoors.

21   And although Plaintiffs gave notice to the Attorney General's Office of this suit, the Attorney

22   General's Office has indicated its lack of desire to participate in this action. The Court is

23   satisfied as to redressability.

24

1    The Court finds that Plaintiffs have standing to pursue their challenges to the Ordinance

2    and their request for a preliminary injunction.

3    **B.    Preliminary Injunction**

4        "A plaintiff seeking a preliminary injunction must show that: (1) she is likely to succeed

5    on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3)

6    the balance of equities tips in her favor, and (4) an injunction is in the public interest." Farris v.

7    Seabrook, 677 F.3d 858, 864 (9th Cir. 2012) (citing Winter v. NRDC, 555 U.S. 7, 20 (2008));

8    Garcia v. Google, Inc., 786 F.3d 733, 740 (9th Cir. 2015). A preliminary injunction is an

9    "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is

10   entitled to such relief." Winter, 555 U.S. at 22. And it is "never awarded as of right." Id. In each

11   case, the Court "must balance the competing claims of injury and must consider the effect on

12   each party of the granting or withholding of the requested relief." Id.

13       The Ninth Circuit applies a "sliding scale" approach in considering the factors outlined in

14   Winter. A stronger showing of one element may offset a weaker showing of another. All. for the

15   Wild Rockies v. Cottrell, 632 F.3d 1127, 1131–32 (9th Cir. 2011). So "when the balance of

16   hardships tips sharply in the plaintiff's favor, the plaintiff need demonstrate only 'serious

17   questions going to the merits.'" hiQ Labs, Inc. v. LinkedIn Corp., 938 F.3d 985, 992 (9th Cir.

18   2019) (quoting All. for the Wild Rockies, 632 F.3d at 1135).

19       In considering the likelihood of success on the merits, the Court is not strictly bound by

20   the rules of evidence, as the "preliminary injunction is customarily granted on the basis of

21   procedures that are less formal and evidence that is less complete than in a trial on the merits."

22   Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). Because of the extraordinary nature of

23   injunctive relief, including the potential for irreparable injury if not granted, a court may consider

24

evidence outside the normal rules of evidence, including: hearsay, exhibits, declarations, and pleadings. Johnson v. Couturier, 572 F.3d 1067, 1083 (9th Cir. 2009). "[I]n the First Amendment context, the moving party bears the initial burden of making a colorable claim that its First Amendment rights have been infringed ... at which point the burden shifts to the government to justify the restriction." Thalheimer v. City of San Diego, 645 F.3d 1109, 1115–16 (9th Cir. 2011).

Below, the Court reviews the four Winter factors and then assesses whether a bond is necessary.

**1.      Likelihood of Success on the Merits**

Plaintiffs have shown that they are likely to prove that the Ordinance (pre- and post-amendment) violates the First and Fourteenth Amendments by being both vague and overbroad.

**a.      First Amendment Overbreadth**

Plaintiffs have demonstrated a strong likelihood of success on the merits of their First Amendment overbreadth argument.

Where the law at issue regulates speech in a traditional public forum like public streets and sidewalks, the law is "'subject to the highest scrutiny.'" Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (quoting Int'l Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672 678 (1992)). The law will be upheld only "if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 805 (1984) (quotation omitted).

"In the First Amendment context," the Supreme Court recognizes a unique "type of facial challenge, whereby a law may be invalidated as overbroad if a substantial number of its

1    applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."

2    United States v. Stevens, 559 U.S. 460, 473 (2010). To determine whether a law is facially

3    overbroad under the First Amendment, "a court's first task is to determine whether the enactment

4    reaches a substantial amount of constitutionally protected conduct." City of Houston, Tex. v.

5    Hill, 482 U.S. 451, 458 (1987) (internal citation and quotation omitted). "Criminal statutes must

6    be scrutinized with particular care; those that make unlawful a substantial amount of

7    constitutionally protected conduct may be held facially invalid even if they also have legitimate

8    application." Id. (citation omitted). For a facial challenge to proceed, "[t]he law must have a

9    close enough nexus to expression, or to conduct commonly associated with expression, to pose a

10   real and substantial threat of the identified censorship risks." City of Lakewood v. Plain Dealer

11   Publ'g Co., 486 U.S. 750, 759 (1988).

12        Here, the Ordinance plainly targets expressive speech in a real and substantial way that

13   infringes on Plaintiffs' First Amendment right to free expression. The Ordinance criminalizes

14   "[w]riting, paint[ing], or draw[ing] any inscription, figure, or mark of any type." SMC

15   12A.08.020. This appears overbroad on its face. And although the Ordinance also criminalizes

16   "property destruction," it equally targets speech. As such, it has a close enough nexus to

17   expression that it poses a real and substantial threat of censorship. Defendants advance no

18   plausible argument or basis to conclude that the Ordinance could be read otherwise.

19   Additionally, the Court finds Plaintiffs are likely to show that there is no substantial

20   governmental interest in foreclosing expressive conduct as the Ordinance does or that the

21   Ordinance is narrowly tailored to serve that interest. Defendants argue the Ordinance serves the

22   City's interest in "preventing even temporary visual blight." (Resp. at 4.) The Court

23   acknowledges that "[i]t is well settled that the state may legitimately exercise its police powers to

24

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 9

1    advance esthetic values." <u>Taxpayers for Vincent</u>, 466 U.S. at 805. But Defendants have failed to

2    articulate just what blight troubles it and why such a sweepingly broad law is narrowly tailored

3    to avoid such troubling blight. On its face, the Ordinance sweeps so broadly that it criminalizes

4    innocuous drawings (from a child's drawing of a mermaid to pro-police messages written by the

5    Seattle Police Foundation (<u>see</u> Supp. Compl. ¶¶ 4.40-4.41)) that can hardly be said to constitute

6    "visual blight" and which would naturally wash away in the next rain storm. Based on the record

7    before it, the Court finds the Ordinance fails to narrowly target the purported visual blight. The

8    Court finds that Plaintiffs have shown a likelihood of success on the merits of their claim.

9         The Court also disagrees with Defendants' argument that the Ordinance is a valid manner

10   restriction. "[T]he government may impose reasonable restrictions on the time, place, or manner

11   of protected speech, provided the restrictions 'are justified without reference to the content of the

12   regulated speech, that they are narrowly tailored to serve a significant governmental interest, and

13   that they leave open ample alternative channels for communication of the information.'" <u>Ward v.</u>

14   <u>Rock Against Racism</u>, 491 U.S. 781, 791 (1989) (quoting <u>Clark v. Community for Creative</u>

15   <u>Non–Violence</u>, 468 U.S. 288, 293 (1984)). While the Ordinance is facially neutral, it is not

16   narrowly tailored. The purported need to prevent property destruction could be accomplished

17   without a provision criminalizing speech in public areas without permission. The Ordinance is

18   not narrowly tailored to serve the government interest of avoiding property damage or "visual

19   blight." And the Ordinance provides no guidance as to how an individual might apply for or

20   obtain "express" permission from the City to engage in sidewalk chalking.

21        The Court notes that Defendants contend Plaintiffs have raised new arguments about

22   overbreadth in the Reply that should be stricken. (Surreply at 2-3.) This is not a reasonable

23

24

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 10

1  request. Plaintiff's Reply merely responds to Defendants' response and there is no basis to strike

2  these examples. The Court denies the Motion to Strike as to this section of the Reply.

3          **b.**        **Fourteenth Amendment Vagueness**

4        The Court also finds Plaintiffs have demonstrated a likelihood of success on the merits of

5  their vagueness challenge to the Ordinance.

6        "A law is unconstitutionally vague if it does not give 'a person of ordinary intelligence

7  fair notice of what is prohibited' or if it is 'so standardless that it authorizes or encourages

8  seriously discriminatory enforcement.'" <u>Tingley</u>, 47 F.4th 1055, 1089 (9th Cir. 2022) (quoting

9  <u>United States v. Williams</u>, 553 U.S. 285, 304 (2008)). "In making a vagueness challenge, a

10  plaintiff actually raises a due process, as opposed to First Amendment, claim." <u>Hunt v. City of

11  Los Angeles</u>, 638 F.3d 703, 710 (9th Cir. 2011). "An ordinance may be void for vagueness

12  because either it (1) fails to give a 'person of ordinary intelligence a reasonable opportunity to

13  know what is prohibited;' (2) 'impermissibly delegates basic policy matters to policemen,

14  judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of

15  arbitrary and discriminatory application;' or (3) 'abut(s) upon sensitive areas of basic First

16  Amendment freedoms, [ ] operat[ing] to inhibit the exercise of (those) freedoms.'" <u>Id.</u> (quoting

17  <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108 (1972)). "The operative question under the fair

18  notice theory is whether a reasonable person would know what is prohibited by the law."

19  <u>Tingley</u>, 47 F.4th at 1089. "The terms of a law cannot require 'wholly subjective judgments

20  without statutory definitions, narrowing context, or settled legal meanings.'" <u>Id.</u> (quoting <u>Holder

21  v. Humanitarian L. Project</u>, 561 U.S. 1, 20 (2010)). "For facial vagueness challenges, we tolerate

22  uncertainty at the margins; the law just needs to be clear 'in the vast majority of its intended

23  applications.'" <u>Id.</u> (quoting <u>Cal. Teachers Ass'n v. State Bd. of Educ.</u>, 271 F.3d 1141, 1151 (9th

24  Cir. 2001)). A law may also be "void for vagueness if it "'ack[s] any ascertainable standard for

inclusion and exclusion.'" Id. at 1090 (quoting Kashem v. Barr, 941 F.3d 358, 374 (9th Cir. 2019)).

Plaintiffs have successfully argued that the Ordinance is impermissibly vague. First, the Ordinance appears not to give fair notice. The Ordinance's criminalization of property damage is overly vague given that it provides no boundaries on what constitutes "damage" and how an ordinary citizen is to interpret the term. For example, it is wholly unclear whether one might "damage" property in violation of the Ordinance by attaching a streamer to someone else's bicycle or writing a note of "hello" on a classmate's notebook without express permission. Second, the Ordinance impermissibly delegates enforcement of the Ordinance to the SPD without any guidance or boundaries. This is evident in the fact that SPD has apparent, unfettered discretion to enforce the Ordinance or not. While there is allegedly a policy not to arrest children drawing rainbows on the sidewalk, the Ordinance itself allows the police to do just that and to arrest those who might scribe something that irks an individual officer. (See Supp. Compl. ¶¶ 4.2-4.16; 4.38.) This highlights the unbounded discretion that impermissibly allows for subjective enforcement. Plaintiffs have also highlighted how the Ordinance may criminalize a variety of innocuous activities—which range from signing a guest book to drawing in the sand on a beach to marking public utilities on the street. (See Reply at 10.) Whether this conduct prompts criminal enforcement all depends on the whim of those enforcing the Ordinance. This highlights the Ordinance's impermissible vagueness.

Defendants ask the Court to strike Plaintiffs' list of potentially innocuous conduct listed in the Reply. (See Surreply at 2.) The Court finds that these examples respond appropriately to Defendants' arguments in the Response that parried Plaintiffs' arguments in the Motion as to vagueness. (See Mot. at 22-25.) The Court denies the Motion to Strike this portion of the Reply.

### 2.      Irreparable Harm

Plaintiffs have shown an irreparable harm.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976) (citation omitted). Here, Plaintiffs allege that they are not free to exercise their right to engage in political speech by writing in sidewalk chalk and charcoal on public sidewalks. Defendants argue that there is no irreparable harm because there is no real threat or possible enforcement of the Ordinance against Plaintiffs. (Resp. at 18-19.) This argument does not track Plaintiffs' allegations in the Supplemental Complaint and their declarations explaining how their right to free speech is chilled. The Court finds irreparable harm.

### 3.      Balance of Equities

The balance of equities favor the Plaintiffs. While Defendants have an interest in protecting against property damage or visual blight, the Ordinance is presently so broad as to make any child's sidewalk art a criminal act. The equities here favor Plaintiffs and their right to engage in free speech. Moreover, the City could amend the Ordinance to more narrowly target property damage or visual blight without also criminalizing writing, drawing, and painting as the Ordinance currently does. The equities here favor Plaintiffs and their interest in engaging in free speech on public sidewalks and spaces.

### 4.      Public Interest

The Court finds that the public interest is served by issuance of a preliminary injunction. The Court agrees with Defendants that the public benefits from preventing property damage and visual blight. But the criminalization of free speech significantly harms the public interest in far

greater measure than the public might benefit from criminalizing property damage. The public interest here weighs strongly in favor of Plaintiffs' requested injunction.

\*       \*       \*

The Court finds that all four factors favor entry of the preliminary injunction and based on the above analysis, the Court GRANTS the Motion. The Court PRELIMINARILY ENJOINS enforcement of SMC 12A.08.020 (as amended) for the duration of this action or until further order of the Court.

**5.      Bond**

The Court finds that no bond is necessary to be posted to support issuance of the preliminary injunction. Under Rule 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Here, there is no evidence of economic damage to Defendants that might result from issuance of the preliminary injunction. The Court therefore finds that no bond shall be required.

**C.      Motion to Strike**

Defendants ask the Court to strike additional arguments in Plaintiffs' Reply: (1) that the Ordinance is a prior restraint; and (2) that the erection of eco-blocks violates the First Amendment. Defendants also ask the Court to strike video evidence submitted with the Reply.

Plaintiffs' arguments concerning prior restraint were reasonably made in response to Defendants' arguments in the Response. The Court DENIES the Motion to Strike these arguments.

As to arguments concerning the eco-blocks and the video evidence, the Court DENIES the Motion to Strike as MOOT. Neither the argument nor the video evidence is necessary to

1  consider in deciding the motion. The Court has not considered them in resolving the pending

2  motion.

3  **CONCLUSION**

4        The Court finds that Plaintiffs have standing to pursue the claims in this action. The

5  Court also finds that four <u>Winter</u> factors support issuance of the preliminary injunction without

6  posting of a bond. The Court GRANTS the Motion and PRELIMINARILY ENJOINS

7  enforcement of SMC 12A.08.020 (as amended) for the duration of this action or until further

8  order of the Court.

9        And the Court DENIES the Motion to Strike.

10        The clerk is ordered to provide copies of this order to all counsel.

11        Dated June 13, 2023.

12

13  Marsha J. Pechman
   United States Senior District Judge

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION - 15