**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| DEREK TUCSON; ROBIN SNYDER; MONSIEREE DE CASTRO; ERIK MOYA-DELGADO, | No. 23-35449 |
| *Plaintiffs-Appellees,* | D.C. No. 2:23-cv-00017-MJP |
| v. | |
| CITY OF SEATTLE, | OPINION |
| *Defendant-Appellant,* | |
| and | |
| ALEXANDER PATTON; TRAVIS JORDAN; DYLAN NELSON; JOHN DOES, 1-4; 1-2, | |
| *Defendants.* | |

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted January 9, 2024
San Francisco, California

Filed February 2, 2024

Before:  EUGENE E. SILER,[*] RICHARD R. CLIFTON, and MILAN D. SMITH, JR., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

---

## SUMMARY[**]

---

### Overbreadth and Vagueness Doctrines

The panel reversed the district court's order preliminarily enjoining enforcement of a Seattle ordinance that criminalizes the intentional writing, painting, or drawing on property without the express permission of the property's owner or operator.

Plaintiffs brought suit pursuant to 42 U.S.C. § 1983 alleging, in part, that the Seattle ordinance was substantially overbroad under the First Amendment and facially vague under the Fourteenth Amendment.

The panel first determined that plaintiffs had Article III standing because enjoining enforcement of the ordinance was substantially likely to redress plaintiffs' injury by allowing them to chalk political messages on City sidewalks and barriers erected on public walkways without fear of arrest.

---

[*] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel next held that the district court erred when it enjoined the ordinance as facially overbroad. To justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep. Here, the district court never acknowledged the ordinance's numerous applications that would not implicate protected speech. By failing to inquire into the ordinance's numerous lawful applications, the district court was unable to analyze whether the number of unconstitutional applications was substantially disproportionate to the statute's lawful sweep. The panel therefore reversed the district court's order granting plaintiffs a preliminary injunction on their First Amendment facial overbreadth claim.

The panel next held that the district court erred in applying the facial vagueness doctrine. Instead of examining whether the ordinance was not vague in the vast majority of its intended applications, the district court instead speculated about possible vagueness in hypothetical and fanciful situations not before the court. The district court's failure to employ the requisite analysis to sustain a facial vagueness claim was sufficient to warrant reversal.

---

## COUNSEL

Kerala T. Cowart (argued) and Jessica L. Zornes Leiser, Assistant City Attorneys; Ann Davison, Seattle City Attorney; Seattle City Attorney's Office, Seattle, Washington; for Defendant-Appellant.

Nathaniel Flack (argued) and Braden Pence, MacDonald Hoague & Bayless, Seattle, Washington; Neil Fox, The Law

Office of Neil Fox, Seattle, Washington; for Plaintiffs-Appellees.

Charlene Koski, Van Ness Feldman LLP, Seattle, Washington; Adam L. Rosenberg, Keller Rohrback LLP, Seattle, Washington; for Amici Curiae Washington State Association of Municipal Attorneys and the International Municipal Lawyers Association.

Taryn Darling and Brent Low, American Civil Liberties Union of Washington, Seattle, Washington; Brian Flaherty, King County Department of Public Defense, Seattle, Washington; for Amici Curiae American Civil Liberties Union of Washington and King County Department of Public Defense.

---

## OPINION

M. SMITH, Circuit Judge:

On January 1, 2021, Derek Tucson wrote the words "peaceful protest" in charcoal on a temporary wall built over the sidewalk outside the Seattle Police Department's (SPD) East Precinct. SPD officers arrested Tucson for doing so. The same night Tucson was arrested, SPD officers arrested three other individuals for writing political messages in charcoal and sidewalk chalk at or near the same location. The arresting officers documented their offense as having violated Seattle Municipal Code (SMC) § 12A.08.020, which criminalizes "[w]rit[ing], paint[ing], or draw[ing] any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person," without "express

permission." They were released from jail the next day, and prosecutors did not pursue charges.

Tucson and the three other individuals (together, Plaintiffs) eventually filed suit pursuant to 42 U.S.C. § 1983 against the City and several of its officers in federal district court. Apart from challenging the constitutionality of their prior arrests, Plaintiffs asserted that SMC § 12A.08.020.A.2 is substantially overbroad pursuant to the First Amendment and facially vague pursuant to the Fourteenth Amendment such that it can never be enforced. The district court held that Plaintiffs were likely to succeed on the merits of their overbreadth and facial vagueness challenges and preliminarily enjoined the City from enforcing it. Because the district court erred in applying the overbreadth and facial vagueness doctrines, we reverse.

## BACKGROUND

When SPD officers arrested Tucson for writing the words "peaceful protest" in charcoal on a temporary wall built outside the SPD's East Precinct, the officers documented his offense as "SMC – 12A.08.020 | PROPERTY DESTRUCTION." At the time of Tucson's arrest, SMC § 12A.08.020 provided that:

    A. A person is guilty of property destruction if he or she:

        1. Intentionally damages the property of another; or

        2. Writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or

    personal property owned by any other person.

B.

    1. It is an affirmative defense to property destruction under subsection 12A.08.020.A.1 that the actor reasonably believed that he had a lawful right to damage such property.

    2. It is an affirmative defense to property destruction under subsection 12A.08.020.A.2 that the actor had obtained express permission of the owner or operator of the building, structure, or property.

C. Property destruction is a gross misdemeanor.

SMC § 12A.08.020 (2021). A violation of § 12A.08.020 is punishable by imprisonment of up to 364 days and a fine of up to five thousand dollars. *See id.* § 12A.02.070.A.

The same night Tucson was arrested, SPD officers arrested the remaining Plaintiffs pursuant to § 12A.08.020 for writing political messages in charcoal and sidewalk chalk at or near the same location. Other than § 12A.08.020, no other provision of law was cited by the arresting officers as a basis for the arrests. The following day, Plaintiffs were released from jail. Prosecutors did not charge any of them within the two-year statute of limitations for violating § 12A.08.020. Two months later, SPD Lieutenant John Brooks allegedly cited "SMC Property Destruction" while threatening "enforcement action" against members of the

public for chalking the public sidewalk outside of the SPD's West Precinct.

On January 4, 2023, Plaintiffs filed suit against the City and several of its officers in federal district court. Two months later, in response to the litigation, the City amended § 12A.08.020 as follows:

A. A person is guilty of property destruction if ((he or she)) the person intentionally:

    1. ((Intentionally   d)) Damages   the property of another; or

    2. Writes, paints, or draws any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person unless the person has obtained the express permission of the owner or operator of the property.

B.

    1. It is an affirmative defense to property destruction under subsection 12A.08.020.A.1 that the actor reasonably believed that he had a lawful right to damage such property.

    ((2. It is an affirmative defense to property destruction under subsection 12A.08.020.A.2 that the actor had obtained express permission of the owner or operator of the building, structure, or property.))

C. Property destruction is a gross misdemeanor.

By removing the affirmative defense of "express permission" and importing it into the elements of the offense, the amendment newly required the prosecution to prove beyond a reasonable doubt that the defendant "ha[d] [not] obtained express permission of the owner or operator of the property[]" to sustain a conviction.

After obtaining leave from the court, Plaintiffs filed an amended complaint challenging the amended § 12A.08.020. In the complaint, Plaintiffs assert that the amended § 12A.08.020 is overbroad pursuant to the First Amendment and facially vague pursuant to the Fourteenth Amendment. Plaintiffs moved for a preliminary injunction to enjoin the City from enforcing subsection A.2 of the amended § 12A.08.020, which criminalizes "intentionally . . . [w]rit[ing], paint[ing], or draw[ing] any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person" without "express permission" from "the owner or operator of the property" (hereinafter, the amended § 12A.08.020.A.2 is referred to as the Local Ordinance). The City opposed the motion by arguing that Plaintiffs lacked Article III standing to pursue their requested injunctive relief and otherwise were unlikely to succeed on the merits of their challenge to the Local Ordinance.

The district court ultimately granted the motion and preliminarily enjoined the City from enforcing the entirety of the amended § 12A.08.020, including subsection A.1, which prohibits intentional property damage. By stipulation of the parties, the district court modified its order so that it

now enjoins only the Local Ordinance.   The City timely appealed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) to review the district court's grant of a preliminary injunction. *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 613 (9th Cir. 2018).  "We review de novo a district court's determination whether a party has [Article III] standing." *Jones v. Ford Motor Co.*, 85 F.4th 570, 573 (9th Cir. 2023). "We review the district court's decision to grant a preliminary injunction for abuse of discretion."   *Daniels Sharpsmart, Inc.*, 889 F.3d at 613.  "A district court abuses its discretion if it rests its decision 'on an erroneous legal standard or on clearly erroneous factual findings.'"   *Am. Beverage Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 754 (9th Cir. 2019) (en banc) (quoting *United States v. Schiff*, 379 F.3d 621, 625 (9th Cir. 2004)).  "A district court's decision is based on an erroneous legal standard if: (1) the court did not employ the appropriate legal standards that govern the issuance of a preliminary injunction; or (2) in applying the appropriate standards, the court misapprehended the law with respect to the underlying issues in the litigation."  *California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 475 (9th Cir. 2022) (internal quotation marks omitted), *cert. denied*, 143 S. Ct. 1749 (2023).

## ANALYSIS

### I.   Plaintiffs Have Article III Standing to Challenge the Local Ordinance.

We begin our analysis by addressing the City's threshold challenge to Plaintiffs' Article III standing.  Specifically, the

City argues that Plaintiffs have failed to satisfy the redressability prong of Article III standing because the district court's order enjoining the Local Ordinance failed to enjoin a nearly identical provision found in the State of Washington's malicious mischief statute.  That statute similarly prohibits "[w]rit[ing], paint[ing], or draw[ing] any inscription, figure, or mark of any type on any public or private building or other structure or any real or personal property owned by any other person unless the person has obtained the express permission of the owner or operator of the property." Wash. Rev. Code Ann. § 9A.48.090(1)(b).  In the City's view, "[b]ecause the state law remains in force in Seattle, the court's order enjoining the [Local] Ordinance cannot redress Plaintiffs' claimed injury."

For a plaintiff to have Article III standing, there must be a likelihood that a plaintiff's injury will be redressed by a favorable court decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  "The question in deciding whether a plaintiff's injury is redressable is not whether a *favorable decision* is likely but whether a favorable decision *likely will redress* a plaintiff's injury." *Bonnichsen v. United States,* 367 F.3d 864, 873 (9th Cir. 2004). Therefore, "redressability analyzes the connection between the alleged injury and requested judicial relief." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013). In other words, redressability asks whether "the district court had the power to prevent the injury at the time the complaint was filed." *Am. C.L. Union of Nevada v. Lomax*, 471 F.3d 1010, 1016 (9th Cir. 2006).

A plaintiff's burden to demonstrate redressability is "relatively modest." *Bennett v. Spear,* 520 U.S. 154, 171 (1997).  A plaintiff "need not demonstrate that there is a guarantee that her injuries will be redressed by a favorable

decision; rather, a plaintiff need only show a substantial likelihood that the relief sought would redress the injury." *M.S. v. Brown*, 902 F.3d 1076, 1083 (9th Cir. 2018) (cleaned up). In evaluating whether the redressability prong is met, courts "must look at the facts '*as they exist at the time the complaint was filed.*'" *Lomax*, 471 F.3d at 1015 (quoting *Lujan*, 504 U.S. at 569 n.4).

Here, when Plaintiffs filed their amended complaint on April 19, 2023, they requested in their prayer for relief that the district court enjoin enforcement of the Local Ordinance, such that they would no longer risk arrest pursuant to the Local Ordinance if they resumed chalking political messages on City sidewalks and barriers erected on public walkways. This request for injunctive relief is clearly connected to Plaintiffs' alleged injury—i.e., being chilled in their free exercise of speech for fear of future enforcement of the Local Ordinance.[1] *See Bellon*, 732 F.3d at 1146 ("[R]edressability

---

[1] In its briefing on appeal, the City also suggests in passing that Plaintiffs lack Article III standing to enjoin the future enforcement of the Local Ordinance because there is no genuine threat that the City will enforce it against individuals who chalk on sidewalks. But that suggestion is unpersuasive given the district court's factual findings. Notably, Plaintiffs were previously arrested for writing political messages in charcoal and chalk on a temporary wall built over the sidewalk outside the SPD's East Precinct and on other nearby public property. Moreover, Plaintiffs alleged in their complaint that SPD Lieutenant Brooks in 2021 cited "SMC Property Destruction" while threatening "enforcement action" against members of the public for chalking the public sidewalk outside of the SPD's West Precinct. It was therefore not clearly erroneous for the district court to find, as a factual matter, that Plaintiffs were chilled from chalking political messages critical of the SPD on public property near SPD buildings, including City sidewalks. *See Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1098 (9th Cir. 2016) ("The district court's factual findings on jurisdictional issues are reviewed for clear error.").

analyzes the connection between the alleged injury and requested judicial relief."). Given that Plaintiffs had been arrested for violating the Local Ordinance prior to its amendment, and the amendment did not alter the scope of the conduct that the Local Ordinance criminalized, an order from the district court enjoining enforcement of the Local Ordinance was "substantial[ly] likel[y]" to redress Plaintiffs' injury by allowing them to chalk political messages on City sidewalks and barriers erected on public walkways without fear of enforcement. *M.S.*, 902 F.3d at 1083. Thus, their injury was redressable by a favorable decision from the district court.

The City's argument that Plaintiffs' alleged injury is not redressable because the district court ultimately failed to enjoin a nearly identical provision found in the State of Washington's malicious mischief statute, is unpersuasive. As a threshold matter, the City errs by suggesting that redressability hinges on whether the relief the district court ultimately fashioned actually redresses Plaintiffs' injury. As noted earlier, in evaluating whether the redressability prong is met, courts "must look at the facts '*as they exist at the time the complaint was filed.*'" *Lomax*, 471 F.3d at 1015 (quoting *Lujan*, 504 U.S. at 569 n.4). Accordingly, courts must examine whether "the relief sought" at the time the complaint was filed was "substantial[ly] likel[y]" to redress their injury. *M.S.*, 902 F.3d at 1083. The City's attack on the adequacy of the preliminary injunction that the district court ultimately issued nearly two months after the complaint was filed is therefore misplaced. The appropriate inquiry centers on whether Plaintiffs, at the time the complaint was filed, sought relief from the district court that was substantially likely to redress the injury they alleged in their complaint.

The fact that Plaintiffs did not challenge the State of Washington's malicious mischief statute, which criminalizes the same conduct, does not jeopardize the redressability of their injury, which is traceable to the City's credible threat to enforce the Local Ordinance. Plaintiffs have never alleged that they are injured by a genuine risk of future enforcement of the State of Washington's malicious mischief statute. That is because, as Plaintiffs point out in their answering brief, that statute "has never been applied against Plaintiffs" or cited as a basis for their arrests. In addressing redressability, Plaintiffs are not required to challenge all laws that plausibly criminalize their desired course of conduct in a given jurisdiction, regardless of how credible the threat to enforce those laws is. Such a requirement would necessarily conflict with the injury-in-fact doctrine, which requires "a credible threat" to enforce a specific criminal provision before a plaintiff may have standing to request that a district court enjoin that provision's future enforcement. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).

Based on the allegations outlined in Plaintiffs' amended complaint, there was no credible threat that the City would begin enforcing the State of Washington's malicious mischief statute against Plaintiffs in the future. In its opposition to Plaintiffs' motion for a preliminary injunction, the City never argued that it would start enforcing it against Plaintiffs; nor did it provide any evidence in support of such capability or intent. Accordingly, the district court was correct to credit Plaintiffs' allegations and evidence showing that they faced a credible threat of future enforcement of the Local Ordinance but not the State of Washington's malicious mischief statute. Significantly, Plaintiffs would have lacked Article III standing to ask the district court to enjoin the City

from enforcing the State of Washington's malicious mischief statute because Plaintiffs were not presently injured by such a threat. Their failure to ask the district court to enjoin a statute by which they were not injured for the purposes of Article III could not deprive them of the redressability of their injury arising from the City's credible threat to continue enforcing the Local Ordinance against them. Accordingly, we hold that Plaintiffs had Article III standing to sue and we proceed to the merits of the City's appeal of the preliminary injunction.

## II. The District Court Erred in Its Application of the Overbreadth Doctrine.

On appeal, the City argues that the district court abused its discretion when it enjoined the Local Ordinance as facially overbroad because the district court failed to evaluate whether Plaintiffs demonstrated a substantial and realistic danger that the protected speech of third parties would be chilled. Plaintiffs have not moved for a preliminary injunction on an as-applied basis. The City emphasizes that apart from Plaintiffs' "conduct of chalking on walls and sidewalks without permission," they only provided "far-fetched" hypotheticals to demonstrate danger to the rights of third parties without any "actual facts to ground their claim of overbreadth." Plaintiffs respond that "an examination of the scope of speech which the [Local] Ordinance's plain language criminalizes," which includes the hypotheticals the City has criticized as far-fetched, "is the necessary starting point in determining whether [the Local Ordinance] is overbroad." Plaintiffs add that they need not produce "evidence of each and every application of the statute" where those applications are clearly covered by the plain language of the statute.

As the Supreme Court recently observed, "litigants mounting a facial challenge to a statute normally 'must establish that *no set of circumstances* exists under which the [statute] would be valid.'" *United States v. Hansen*, 599 U.S. 762, 769 (2023) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). However, "[b]reaking from [this] rule, the [First Amendment] overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications." *Id.* The Supreme Court has justified this departure from the normal rule of facial invalidation "on the ground that it provides breathing room for free expression." *Id.* "Overbroad laws 'may deter or "chill" constitutionally protected speech,' and if would-be speakers remain silent, society will lose their contributions to the 'marketplace of ideas.'" *Id.* at 769–70 (quoting *Virginia v. Hicks*, 539 U.S. 113, 119 (2003)). "To guard against those harms, the overbreadth doctrine allows a litigant . . . to vindicate the rights of the silenced, as well as society's broader interest in hearing them speak." *Id.* at 770. "If the challenger demonstrates that the statute 'prohibits a substantial amount of protected speech,' relative to its 'plainly legitimate sweep,' then society's interest in free expression outweighs its interest in the statute's lawful applications, and a court will hold the law facially invalid." *Id.* (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)).

Explaining how the doctrine applies, the Court stated that "[t]o justify facial invalidation, a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Id.* "In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do— case-by-case." *Id.* The "mere fact that one can conceive of

some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). In determining whether an unconstitutional application is realistic, courts may consider whether that application has occurred in the past. *See Williams*, 553 U.S. at 302 ("[W]e are aware of no prosecution for giving child pornography to the police. We can hardly say, therefore, that there is a 'realistic danger' that § 2252A(a)(3)(B) will deter such activity."). Courts may also consider whether an unconstitutional application is "implausible." *Id.* at 301–02 ("We think it implausible that a reputable distributor of Hollywood movies, such as Amazon.com, believes that one of these films contains *actual* children engaging in *actual or simulated* sex on camera; and even more implausible that Amazon.com would *intend* to make its customers believe such a thing. The average person understands that sex scenes in mainstream movies use nonchild actors, depict sexual activity in a way that would not rise to the explicit level necessary under the statute, or, in most cases, both.").

   In the district court's order granting Plaintiffs' request for a preliminary injunction, the district court correctly recognized that pursuant to the overbreadth doctrine, "a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." However, the district court then proceeded to ignore that legal standard in its analysis by erroneously conflating the overbreadth question of whether a substantial number of the law's applications are unconstitutional with the merits question of whether the law's application to a particular set of facts is not narrowly tailored to serve a significant governmental interest.

The district court never acknowledged the numerous applications of the Local Ordinance that would not implicate any protected speech, such as spray-painting an individual's private home, vehicle, or other private property, or chalking messages on an individual's private driveway. *See generally Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1931 (2019) ("The Constitution does not disable private property owners and private lessees from exercising editorial discretion over speech and speakers on their property."). By failing to inquire into the Local Ordinance's numerous lawful applications, the district court was unable to analyze whether the number of unconstitutional applications was "substantially disproportionate to the statute's lawful sweep," such that a facial attack on the Local Ordinance was warranted. *Hansen*, 599 U.S. at 770.

The district court's statement that "[t]he purported need to prevent property destruction could be accomplished without a provision criminalizing speech in public areas without permission," perfectly captures its error with respect to the overbreadth doctrine. In the district court's view, because it found that the Local Ordinance as applied to individuals chalking messages on public sidewalks was likely to violate the First Amendment, the whole law had to be invalidated. But the overbreadth doctrine may not be employed so casually. *See id.* ("Because it destroys some good along with the bad, invalidation for overbreadth is strong medicine that is not to be casually employed." (cleaned up)). Contrary to what the district court suggested in its order granting the preliminary injunction, the overbreadth doctrine does not license the federal courts to strike down laws in their entirety just because the legislature could have more carefully crafted the statutory language to

avoid some unconstitutional applications. *See Members of City Council*, 466 U.S. at 800; *Williams*, 553 U.S. at 292.

The district court's failure to correctly apply the law of the overbreadth doctrine is sufficient to reverse the preliminary injunction as to Plaintiffs' facial overbreadth claim. *See Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 752 (9th Cir. 1982) ("A district court's order [granting or denying a preliminary injunction] is reversible for legal error if the court . . . misapprehends the law with respect to the underlying issues in litigation."). We therefore reverse the district court's order granting Plaintiffs a preliminary injunction on their First Amendment facial overbreadth claim.

## III. The District Court Erred in Its Application of the Facial Vagueness Doctrine.

On appeal, the City also argues that Plaintiffs are unlikely to succeed on their facial vagueness claim because the Local "Ordinance is not vague in all—or even a substantial number—of its applications." Plaintiffs do not respond to that argument directly and instead emphasize that when an individual undertakes to chalk in a public forum, "there is no way for . . . a[] member of the public[] to know how [to] obtain 'express permission'" and that the very requirement of obtaining express permission allows for the City to enforce the ban in a viewpoint-discriminatory way.

A law is unconstitutionally vague if it does not give "a person of ordinary intelligence fair notice of what is prohibited" or if it is "so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304. "The operative question under the fair notice theory is whether a reasonable person would know what is prohibited by the law." *Tingley v. Ferguson*,

47 F.4th 1055, 1089 (9th Cir. 2022), *cert. denied*, 144 S. Ct. 33 (2023). "The terms of a law cannot require 'wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.'" *Id.* (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010)). As for the arbitrary enforcement theory of unconstitutional vagueness, a law is void for vagueness if it "lack[s] any ascertainable standard for inclusion and exclusion," thereby authorizing or encouraging "the authorities [to] arbitrarily prosecute one class of persons instead of another." *Kashem v. Barr*, 941 F.3d 358, 374 (9th Cir. 2019) (cleaned up).

While it is generally true that a vagueness challenge to a statute must be examined as applied to the challenger, *see id.*, "facial vagueness challenges are appropriate if the statute clearly implicates free speech rights." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149 (9th Cir. 2001). "When First Amendment freedoms are at stake, courts apply the vagueness analysis more strictly, requiring statutes to provide a greater degree of specificity and clarity than would be necessary under ordinary due process principles." *Id.* at 1150. "Nevertheless, perfect clarity is not required even when a law regulates protected speech." *Id.* "Condemned to the use of words, [courts] can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). "Therefore, even when a law implicates First Amendment rights, the constitution must tolerate a certain amount of vagueness." *Cal. Teachers*, 271 F.3d at 1151.

For the purposes of a facial attack on a statute or ordinance, a statute's vagueness exceeds constitutional limits if its "deterrent effect on legitimate expression is . . . both real and substantial, and if the statute is [not] readily subject to a narrowing construction by the state courts."

*Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 60 (1976) (internal quotation marks omitted). "[S]peculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid 'in the vast majority of its intended applications.'" *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)).

In its order granting Plaintiffs' request for a preliminary injunction, the district court failed to employ the analysis required by the facial vagueness doctrine.  Instead of examining whether the Local Ordinance is not vague "in the vast majority of its intended applications," *Raines*, 362 U.S. at 23, the district court instead speculated about possible vagueness in hypothetical and fanciful situations not before the Court, such as whether the Local Ordinance criminalizes "signing a guest book," "drawing in the sand on a beach," and "marking public utilities on the street."  The district court's failure to employ the requisite analysis to sustain a facial vagueness claim is sufficient to warrant reversal. *See Sports Form*, 686 F.2d at 752.

The City's additional criticisms of the district court's vagueness analysis further support reversal.  First, the district court devoted much of its vagueness analysis to the Local Ordinance's failure to define the term "damage," but as the City correctly points out, "the word 'damage' appears nowhere in the text of the [Local] Ordinance[]" that Plaintiffs have challenged.  And even if that word did appear in the challenged portion of the statute, its meaning is sufficiently clear.  *See* SMC § 12A.08.010 (defining "damage" as "injury or harm to property sufficient to lower its value or involving significant inconvenience or loss of efficiency").  Second, the fact the Local Ordinance "delegates enforcement of [it] to the SPD without any

guidance or boundaries," does not render it facially vague, contrary to what the district court found.   As the City correctly observes, "executive branch discretion 'to decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law' is a fundamental requirement of the separation of powers."  The mere fact that the City and its officers have discretion to enforce the Local Ordinance in some circumstances and not others is not a sufficient basis for concluding that the Local Ordinance is wholly vague such that it can never be enforced.  Accordingly, we reverse the district court's order granting Plaintiffs a preliminary injunction on their Fourteenth Amendment facial vagueness claim.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's order preliminarily enjoining the City and its officers from enforcing the Local Ordinance.  We **REMAND** this case to the district court so that Plaintiffs may continue to litigate their challenge to the Local Ordinance as it applies to them.