UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEREK TUCSON, ROBIN SNYDER, MONSIEREE DE CASTRO, and ERIK MOYA-DELGADO,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE, ALEXANDER PATTON, DYLAN NELSON, RYAN KENNARD, and MICHELE LETIZIA,<br><br>Defendants. | CASE NO. C23-17 MJP<br><br>ORDER ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INTEREST |

This matter comes before the Court on Plaintiffs' Motion for Attorneys' Fees, Costs, and Interest. (Dkt. No. 173.) Having reviewed the Motion, the Response (Dkt. No. 194), the Reply (Dkt. No. 197), and all supporting materials, the Court GRANTS the Motion, in part.

**BACKGROUND**

Plaintiffs convinced a jury that four Seattle Police Department Officers violated their constitutional rights by arresting and booking them because of the political messages they wrote

on a temporary concrete wall outside the East Precinct and on the Precinct itself. The jury also found that the City of Seattle violated Plaintiffs' constitutional rights because the Officer Defendants booked Plaintiffs into King County Jail pursuant to the City's policy that allowed booking low-level misdemeanants who were engaged in protests. The jury awarded each Plaintiff $20,000 in compensatory damages against the Officer Defendants and the City collectively, and each Plaintiff $150,000 in punitive damages against the Officer Defendants alone.

Before their success at trial, Plaintiffs faced some mixed results in pursuing all of the relief they sought. Although the Court preliminary enjoined the City's property damage ordinance, the Ninth Circuit reversed and vacated the preliminary injunction. (See Ninth Circuit Opinion (Dkt. No. 72).) At summary judgment, the Court also granted summary judgment in several of the named defendants' favor and as to certain claims. (See Order on Cross-Motions for Summary Judgment (Dkt. No. 116).) The Court did, however, sustain the bulk of Plaintiffs' claims against four individual officers and the City. (See id.) And at trial, Plaintiffs obtained favorable verdicts as to all claims against each of the Defendants. (See Jury Verdict (Dkt. No. 164).)

Plaintiffs now seek $760,452.50 in fees and $48,262.91 in costs. (See Reply at 8 (Dkt. No. 197).) In calculating the lodestar for trial counsel, Plaintiffs ask the Court to utilize $500 per hour for both Neil Fox and Braden Pence, $375 per hour for Nathaniel Flack, and $200 per hour for Cristy Caldwell, a paralegal. Neil Fox has nearly forty years of experience, with a focus primarily on criminal defense at the trial and appellate level, though he has also handled civil rights matters. (Declaration of Braden Pence ¶ 12 (Dkt. No. 174).) Braden Pence has fourteen years of experience as a criminal defense attorney and civil rights lawyer who joined

MacDonald, Hoague, and Bayless ("MHB") in 2022 where his hourly rate increased from $350 to $500 per hour. (Id. ¶¶ 3, 6-9.) Nathaniel Flack is a 2021 graduate from University of Michigan Law School and has been in practice with MHB since that time, billing at $375 per hour to paying clients. (Id. ¶ 11.) And Caldwell has been a paralegal for over 18 years at a variety of firms and with particular experience in civil rights matters. (Id. ¶ 13.) Caldwell's hourly rate of $200 per hour has been approved by judges in both King County and Western District of Washington. (Id.) Plaintiffs also seek approval of a handful of hours incurred by other attorneys at MHB who are billing at the following rates: (1) $500 per hour for Joe Shaeffer (a discount of $50/hour); (2) $700 per hour for Tim Ford (a discount of $50/hour); (3) $525 per hour for Katherine Chamberlain; and (4) $600 per hour for Jesse Wing. (Id. at ¶ 15.) Plaintiffs have provided detailed billing records for all hours incurred by these attorneys and paralegal. (See id. Exs. 1-2; Ex. 1 to the Declaration of Neil Fox (Dkt. No. 175).)

In support of their requested hourly rates, Plaintiffs have submitted a declaration from Erik Heipt, a civil rights attorney who practices in state and federal courts in Washington and in other jurisdictions. (Declaration of Erik Heipt ¶ 2 (Dkt. No. 177).) With more than 25 years of experience, Heipt avers that an hourly rate between $325 to over $650 per hour is customary for civil rights work in this jurisdiction and that he charges $600 for his work. (Id. ¶ 3.) He is personally and professionally familiar with all three trial attorneys and declares that their requested rates are reasonable in light of each lawyer's experience, skill, and knowledge. (Id. ¶¶ 5-7.) He also asserts that the hours expended are reasonable given the complexity of the case. (Id. ¶ 9.) Defendants provide no contrary evidence concerning the reasonableness of the hourly rates requested.

1    Plaintiffs seek $48,492.91 in costs, which includes both taxable and non-taxable costs.
2    (See Pence Decl. ¶ 42; but see Pls. Mot. at 13 (incorrectly identifying the amount as $47,765.13,
3    a sum that excludes the costs that Fox seeks).) Plaintiffs' break down their cost request as
4    follows: (1) $1,092.54 for "[f]iling, service, public records, private investigator, and similar
5    costs"; (2) $25,288.45 for deposition transcripts and videos; (3) $13,540.39 for travel, lodging,
6    and meals; (4) $2,275 for e-discovery costs; (5) $5,568.75 for a trial consultant; and (6) $727.78
7    for trial transcripts and court filing fees. (Pence Decl. ¶ 42; Fox Decl. Ex. 1.) After filing their
8    Motion, Plaintiffs also filed a "Motion in the Alternative to Tax Costs" that is pending before the
9    Court that seeks $25,202.00 in taxable costs. (Dkt. No. 200.) The motion for taxable costs is
10   duplicative of a portion of Plaintiffs' Motion for Attorneys' Fees, Costs, and Interest.

## ANALYSIS

**A.    Standard**

"The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." Fox v. Vice, 563 U.S. 826, 838 (2011). To determine the fee award for a prevailing party, the Court begins by calculating a lodestar "by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." Fischer v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley, 461 U.S. at 435. And "[i]n these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." Id.

The Court determines the hourly rate by considering the "evidence produced by the parties, including fee rates of other attorneys in similar practices, awards in comparable cases,

1  counsel's experience and reputation level, and the market rates, as well as two additional <u>Kerr</u>
2  factors: the novelty/difficulty of the issues and the preclusion of other work." <u>Dang v. Cross</u>, 422
3  F.3d 800, 814 (9th Cir. 2005). In deciding the number of hours "reasonably expended," the Court
4  considers whether the time on matter that was "excessive, redundant, or otherwise unnecessary."
5  <u>Hensley</u>, 461 U.S. at 434. The requesting attorney must provide reasonable documentation of the
6  work performed to enable this determination. <u>See</u> <u>id.</u>, 461 U.S. at 433.

7  **B.    Prevailing Party**

8  Although Defendants do not seriously challenge the fact that Plaintiffs prevailed on their
9  claims, they argue that the time spent on the preliminary injunction should be excluded because
10 it did not lead to a favorable outcome and was unrelated to the claims on which they did succeed.
11 (<u>See</u> Def. Resp. at 2 (Dkt. No. 194.) The Court disagrees.

12 "A plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims
13 that are unrelated to a plaintiff's successful § 1983 claim." <u>McCown v. City of Fontana</u>, 565 F.3d
14 1097, 1103 (9th Cir. 2009). But "in a lawsuit where the plaintiff presents different claims for
15 relief that 'involve a common core of facts' or are based on 'related legal theories,' the district
16 court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." <u>Id.</u>
17 (quoting <u>Hensley</u>, 461 U.S. at 435). Instead, the court must proceed to the second part of the
18 analysis and "focus on the significance of the overall relief obtained by the plaintiff in relation to
19 the hours reasonably expended on the litigation." <u>Id.</u> (quoting <u>Hensley</u>, 461 U.S. at 435).

20 The Court finds that Plaintiffs are entitled to all of the time reasonably spent on the
21 preliminary injunction. While Plaintiffs were unsuccessful on their facial challenge, it was not
22 "unrelated" to the claims on which they succeeded at trial. The facial and as-applied challenges
23 contain the same core legal theories and facts making any exclusion of the time spent on the
24

1  injunction improper. See McCown, 565 F.3d at 1103. The Court declines to find that the time
2  spent on the preliminary injunction should be excluded and rejects Defendants' argument.
3  **C.     Lodestar**
4      The Court reviews the hourly rates and hours expended to achieve the success at trial to
5  determine the lodestar and fee award.
6      **1.     Hourly Rates**
7      The Court finds that the hourly rates requested by counsel are reasonable and appropriate.
8      The Court determines the hourly rate by considering the "evidence produced by the
9  parties, including fee rates of other attorneys in similar practices, awards in comparable cases,
10 counsel's experience and reputation level, and the market rates, as well as two additional Kerr
11 factors: the novelty/difficulty of the issues and the preclusion of other work." Dang, 422 F.3d at
12 814.
13     Plaintiffs have provided sufficient evidence to support their hourly rate requests. First,
14 they have identified the relative education, skill, and experience of all counsel and the paralegal
15 who worked on this matter, which support the requested rates. Second, they have provided
16 support from Erik Heipt showing that the rates requested are in line with the standard for civil
17 rights work within this market. Third, this case did present difficult issues on which to prevail,
18 and counsel avers that this matter occupied a good deal of his time over many years. The Court
19 therefore approves the following hourly rates: (1) $500/hour for Fox; (2) $500/hour for Pence;
20 (3) $375/hour for Flack; (4) $200/hour for Caldwell; (5) $500/hour for Shaeffer; (6) $700/hour
21 for Ford; (7) $525/hour for Chamberlain; and (8) $600/hour for Wing.
22     Defendants, for their part, offer little more than comparative nit-picking over Fox's and
23 Pence's rates. As to Fox, Defendants point out that he customarily charges $375/hour for
24

criminal work, and suggest that a blended rate of $437.50 makes sense because he has less experience litigating civil rights cases as compared to criminal cases. The Court finds no merit in this argument. Defendants offer no serious critique of Fox's ability and skill, and seemingly ignore that he has nearly 40 years of experience as a litigator. And the comparison to his hourly rate for criminal work is inapt, as such work is not typically performed on a contingent basis, while Fox here worked on a contingent basis. Moreover, Defendants offer nothing to contradict Plaintiffs' evidence that Fox's $500/hour rate falls in line with market rates. As to Pence, Defendants suggest he lacks the depth of experience as compared to two other MHB attorneys and that his rate should be necessarily lower. But having observed Pence in court and considering both the difficult nature of claims at trial and the evidence presented from Heipt, the Court finds no merit in Defendants' argument and unsupported request to reduce Pence's rate to $425/hour. The Court rejects Defendants' requested reductions and approves the rates sought. And the Court notes that Defendants do not challenge the rates requested for the remaining attorneys and paralegal.

**2.      Hours Incurred**

Plaintiffs have identified the following hours billed: (1) Pence, 550.05 hours; (2) Flack, 645.5 hours; (3) Fox, 361.2 hours; (4) Caldwell, 139.4 hours; (5) Shaffer, 0.5 hours; (6) Ford, 10.6 hours; (7) Chamberlain, 5.7 hours; and (8) Wing, 0.9 hours. (Pence Decl. ¶¶ 38-43; Fox Decl. ¶¶ 13-14.)

Defendants present several attacks, which the Court reviews below.

**a.      Block Billing**

Defendants argue that all three of Plaintiffs' trial counsel block billed some portion of their time and that these entries should be subjected to a 20% reduction. (Def Opp. at 6-7.) The Court agrees only in part.

1          Block billing generally deprives the Court of the ability to determine whether time spent
2  on more than one distinct tasks was reasonable. Inadequate segregation of time falls below the
3  standards required of counsel to support a request for fees under federal law. See Stewart v.
4  Gates, 987 F.2d 1450, 1453 (9th Cir. 1993).
5          After reviewing the detailed billing records provided by counsel, the Court finds that only
6  certain entries from Flack and Pence are improperly block billed. On several occasions, Flack
7  and Pence block billed time exceeding 8 hours without providing a breakdown of the time spent
8  on discrete activities. Given the large number of hours and lack of segregation, this necessarily
9  deprives the Court of the ability to assess the reasonableness of the time spent on discrete tasks.
10 Based on its own review, the Court finds eight billing entries where Flack block billed more than
11 8 hours (totaling 103 hours) and four entries where Pence block billed more than 8 hours
12 (totaling 57.9 hours) should be reduced. The Court reduces these entries by 20 percent, which
13 reasonably accounts for the lack of detailed time segregation and ensures that these large number
14 of hours billed in a single day exclude any excessive time. The Court thus reduces Flack's time
15 by 20.6 hours and Pence's time by 11.6 hours. As to the other block billing entries Defendants
16 identify, which are eight hours or less, the Court finds sufficient evidence to find the time spent
17 on the discrete tasks were reasonable. The Court notes that for future billing, all counsel should
18 ensure that time billed in a single day contain as much detailed segregation as is possible.

19                 **b.      Duplicative Time**

20         Defendants argue that Plaintiffs overbilled for time incurred by attorneys who only
21 attended and did conduct certain depositions. (Defs. Opp. at 7.) Defendants suggest that
22 Plaintiffs did not explain why they needed multiple attorneys and that the time is unreasonable,
23 though Defendants do not challenge the time multiple attorneys spent preparing for depositions.
24 The Court is unmoved by Defendants' argument. Having two attorneys at a single deposition

appears a reasonable practice, particularly since the additional counsel serves as another set of eyes and ears who can help shape the investigation and ensure that the questioning is thorough and complete. And, as Plaintiffs point out, Defendants often had multiple attorneys present at depositions. The Court therefore rejects Defendants' request to reduce these hours.

### c.     Excessive Time

Defendants ask for a reduction of the 30.9 hours Pence billed to prepare for a 5 hour deposition of John Diaz. The Court does not find this time excessive. Pence has filed a supplemental declaration explaining why this particular witness required a lot of preparation. (Supp. Pence Decl. ¶ 4 (Dkt. No. 198).) In particular, Pence asserts that Diaz was a high-ranking county executive (the former head of the King County Department of Adult and Juvenile Detention) and that his deposition required review of his lengthy career and extensive documentary records that were produced by King County just before the deposition. (Id.) The Court finds that these reasons supports counsel's time spent, even if the deposition was just 5 hours. The Court rejects Defendants' request to reduce these hours.

### d.     Additional Time

In their Reply, Plaintiffs also ask for approval of an additional $23,457.50 for the time spent briefing the post-rial motions. The Court has reviewed the supporting records and finds this time spent was reasonable and compensable. The Court approves the requested time.

\*     \*     \*

Applying the requested rates and the reduction for block billing, the Court awards $746,937.50 in attorneys' fees ($736,995.00 + $23,457.50 - $5,790 - $7,725 = $746,937.50).

**D.     Expenses/Costs**

As part of their Motion, Plaintiffs ask the Court to award both taxable and non-taxable costs. As explained below, all taxable costs will be considered by the Court separately through

1 | Plaintiffs' pending Motion for Bill of Costs. And as to the non-taxable costs, Plaintiffs are
2 | entitled to only a small fraction of the expenses requested.

3 |      **1.**     **Taxable Costs**

4 |      Defendants argue that Plaintiffs' request for taxable costs should have been filed through
5 | a motion for bill of costs, and that they cannot now do so because any such motion would be
6 | untimely under the Local Civil Rules. The Court agrees that taxable costs are not properly sought
7 | through the motion for fees, but it finds that Plaintiffs' Motion for Bill of Costs is timely.

8 |      To recover those costs taxable under 28 U.S.C. § 1920, the prevailing party must file a
9 | motion for bill of costs pursuant to Local Rule 54(d)(1). Any motion for costs must be filed
10 | within 21 days of the judgment, and the failure to do so "shall be deemed" a waiver. See LCR
11 | 54(d)(1). The Local Rules do not specify whether this time frame also runs from an amended
12 | judgment. Regardless, as the Ninth Circuit has explained, a district court may deny a request for
13 | taxable costs where the request was untimely under the local rules. See Lytle v. Carl, 382 F.3d
14 | 978, 989–90 (9th Cir. 2004) (affirming district court's decision to deny taxable costs where the
15 | movant failed to file his bill of costs within the time permitted by the local rules).

16 |      The Court here finds that Plaintiffs' request for filing fees, deposition transcripts and
17 | videos costs, and trial transcript costs are properly sought through their pending Motion for Bill
18 | of Costs. The Court rejects Plaintiffs' argument that these costs may be considered as expenses
19 | that are compensable under 42 U.S.C. § 1988. (See Reply at 7.) The three cases Plaintiffs rely on
20 | are inapposite because they considered the court's discretion to award non-taxable costs under §
21 | 1988, not taxable costs under 28 U.S.C. § 1920. See Woods v. Carey, 722 F.3d 1177, 1180 (9th
22 | Cir. 2013); Grove v. Wells Fargo Fin. Cal., Inc., 606 F.3d 577, 581 (9th Cir. 2010); Chalmers v.
23 | City of Los Angeles, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986).

24 |

ORDER ON PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND INTEREST - 10

1      That being said, the Court finds that Plaintiffs' pending Motion for Bill of Costs was timely filed. Defendants are correct that Plaintiffs waited more than 21 days from the entry of judgment, but Plaintiffs did file the motion within 21 days of the amended judgment. While Local Civil Rule 54(d)(1) speaks to entry of "judgment" without also identifying an amended judgment, the Court finds that the term "judgment" should include an amended judgment. This makes practical sense because an amended judgment constitutes a new judgment, rendering the initial one non-final. And even if the Court were to limit Local Civil Rule 54(d)(1) to the initial judgment, the Court accepts Plaintiffs' Motion for Bill of Costs as timely, given that they filed the Motion for Fees which sought these taxable costs within 21 days of the entry of judgment. While the form was improper, Defendants were put on notice and able to present arguments in opposition.

The Court declines to consider or award any request for taxable costs. The Court will address these requested costs separately through the pending Motion for Bill of Costs.

      **2.    Travels, Lodging, and Meals**

Plaintiffs ask for $13,540.39 for travel, lodging, and meals costs incurred by counsel and their clients. (Pence Decl. ¶ 42(a)(iii).) This includes travel and lodging costs for two attorneys to attend oral arguments before the Ninth Circuit. (Id.) It also includes $11,225.02 for "hotel lodging within walking distance of the courthouse to improve efficiency and accommodate intense working hours during trial." (Id.) The supporting records only indicate that Plaintiffs incurred $11,225.02 for a "VRBO" rental from June 6 to 23, 2024, and there is no explanation of what the accommodations were, where the lodging was, or how many people were housed at this rental. Plaintiffs also request reimbursement for the cost of meals during trial.

1  The Court agrees with Defendants that Plaintiffs are not entitled to their lodging request
2  during trial. The Court finds inadequate evidence as to what the accommodations were during
3  trial, who used the accommodations, or why they were necessary. To the extent the rental was
4  used to house MHB counsel from out of state, that is a cost MHB must bear as overhead for its
5  own counsel who has chosen to reside outside of the state. Similarly, if the rental was used to
6  house one of the Plaintiffs, he/she must bear the cost of lodging having chosen to file this action
7  in Washington. The Court therefore DENIES the request for trial lodging. Similarly, the Court
8  DENIES the request for meals during trial. That, too, is an expense to be borne by the lawyers as
9  overhead.

10  The Court will reimburse counsel for the costs associated with travel and lodging to San
11  Francisco for the Ninth Circuit oral argument given that neither firm maintains offices in San
12  Francisco and the costs requested are reasonable. Defendants argue that Plaintiffs should not be
13  allowed to recover costs incurred by two attorneys who traveled to the Ninth Circuit argument,
14  where only one person presented argument. The $814.29 incurred by Pence to attend oral
15  arguments where Flack presented argument is reasonable. Similar to having two attorneys attend
16  a deposition, it is reasonable to have a more senior attorney join a younger associate present oral
17  argument to the Ninth Circuit, as the additional presence helps respond to opposing arguments
18  and questions from the panel.

19  Having reviewed the cost accounting, the Court awards $1,904.12 for the airfare and
20  lodging expenses identified by Plaintiffs regarding the Ninth Circuit argument. No other costs
21  incurred for lodging, meals, or travel shall be awarded.

### 3. Trial Consultant, E-Discovery, Investigator, and Records Costs

Plaintiffs request reimbursement for costs for the use of a trial consultant, for e-discovery, for a private investigator, and for public records. The Court finds that only some of these costs are recoverable.

First, Plaintiffs request to be reimbursed $5,586.75 charged by a trial consultant. The Court finds that these costs are not reasonable or necessary. The attorneys in this case have substantial trial experience, as is reflected in their hourly rates. The Court does not believe that such an experienced team needed the assistance of a consultant or that the time spent was reasonable or necessary. The Court will not award the $5,586.75 requested.

Second, Plaintiffs ask for $2,275 in e-discovery costs. The Court finds these costs were reasonable and necessary given the electronic records used at trial and throughout this case.

Third, Plaintiffs ask for the costs of a private investigator and the cost of public records requests. Specifically, the accounting records identify $249.30 spent on an investigator and $5.25 for public records. These fees are minimal and reasonable.

### 4. Ninth Circuit Admission Fee

Plaintiffs concede in their reply that they should not be awarded $230 for a Ninth Circuit admission fee. The Court will not award any such costs.

\*     \*     \*

The Court finds that Plaintiffs are entitled to an award of $4,433.67 in costs ($1,904.12 + $2,275 + $249.30 + $5.25 = $4,433.67).

**E.  Post-Judgment Interest**

The Court agrees with Plaintiffs' unopposed request for post-judgment interest. Any post-judgment interest shall accrue and be calculated as specified in 28 U.S.C. § 1961.

## CONCLUSION

Plaintiffs have provided sufficient evidence and argument to support the lion's share of their request for fees, though not costs. As explained in more detail, the Court GRANTS, in part, the Motion for Fees, Costs, and Interest. The Court finds that Plaintiffs' are entitled to an award of $746,937.50 for attorneys' fees and an award of $4,433.67 in costs. Plaintiffs are also entitled to post-judgment interest as is permitted by 28 U.S.C. § 1961.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 19, 2024.

Marsha J. Pechman
United States Senior District Judge