1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEREK TUCSON, ROBIN SNYDER, MONSIEREE DE CASTRO, and ERIK MOYA-DELGADO,

Plaintiffs,

v.

CITY OF SEATTLE, ALEXANDER PATTON, DYLAN NELSON, RYAN KENNARD, and MICHELE LETIZIA,

Defendants.

CASE NO. C23-17 MJP

ORDER DENYING DEFENDANTS' MOTION FOR DIRECTED VERDICT AND MOTION FOR NEW TRIAL

This matter comes before the Court on Defendants' Renewed Motion for Directed Verdict (Dkt. No. 191) and Motion for New Trial (Dkt. No. 190). Having reviewed the Motions, the Responses (Dkt. Nos. 209, 210), the Replies (Dkt. Nos. 211, 212), and all supporting materials, the Court DENIES Defendants' Motion.

**BACKGROUND**

Defendants renew their motion for a directed verdict, which the Court denied on the record during trial, and separately move for a new trial. As the Parties are familiar with the facts, the Court addresses the factual issues in its analysis below.

**ANALYSIS**

**A.    Motion for Relief from Deadline**

Before addressing Defendants' Motions, the Court reviews Plaintiffs' Motion for Leave to File Late Response Briefs. (Dkt. No. 214.) Plaintiffs filed their briefs in respond to both Motions one day late. Plaintiffs claim this was due to "a calendaring error under the recently amended local rules, for which Plaintiffs' counsel take responsibility." (Id. at 1.) The Court finds that counsel's oversight does not warrant an order striking the responses. Counsel must be aware of and follow the Local Civil Rules, even when updates or changes alter usual deadlines. And it is for counsel, not staff, to ensure that the deadlines are calendared and that briefs are timely filed. That said, Defendants have not identified any prejudice from the late responses and Defendants filed reply briefs without asking for additional time. Accordingly, the Court GRANTS Plaintiffs' Motion for Relief from Deadline and considers their responses in assessing Defendants' Motions.

**B.    Motion for Directed Verdict**

Defendants present five arguments in support of their renewed request for a directed verdict: (1) Plaintiffs failed to present sufficient evidence they were arrested and booked in retaliation for what they wrote; (2) Plaintiffs failed to present adequate evidence of an official, custom, or policy of the City of Seattle that caused their retaliatory booking; (3) Plaintiffs presented insufficient evidence of the Officer Defendants' mental state to award punitive

1   damages; (4) Defendants are entitled to qualified immunity due to inadequate evidence; and (5)

2   Defendants are entitled to qualified immunity because the law was not clearly established. After

3   reviewing the legal standard, the Court addresses Defendants' arguments.

4       **1.      Legal Standard**

5           A Rule 50(b) renewed motion for directed verdict may only advance those arguments

6   made in a pre-verdict Rule 50(a) motion—itself a pre-requisite to filing for relief under Rule

7   50(b). E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009). When reviewing

8   a properly-made motion under Rule 50(b), the Court reviews a jury's verdict for substantial

9   evidence. Janes v. Wal–Mart Stores, Inc., 279 F.3d 883, 888 (9th Cir. 2002). "Judgment as a

10  matter of law is appropriate when the evidence, construed in the light most favorable to the

11  nonmoving party, permits only one reasonable conclusion, which is contrary to the jury's

12  verdict." Hagen v. City of Eugene, 736 F.3d 1251, 1256 (9th Cir. 2013) (quotation and citation

13  omitted). If there is "such relevant evidence as reasonable minds might accept as adequate to

14  support [the jury's] conclusion," then a Rule 50(b) motion should be denied. Id. When

15  considering a Rule 50(b) motion, the court must review all of the evidence in the record in the

16  light most favorable to the non-moving party, and draw all reasonable inferences in favor of the

17  nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000)

18  (explaining that "[c]redibility determinations, the weighing of the evidence, and the drawing of

19  legitimate inferences from the facts are jury functions, not those of a judge" (quotation and

20  citation omitted)). "[A] reasonable inference cannot be supported by only threadbare conclusory

21  statements instead of significant probative evidence" and a jury's conclusion cannot be based on

22  mere speculation. Lakeside–Scott v. Multnomah Cnty., 556 F.3d 797, 802–03 (9th Cir. 2009).

23

24

### 2.      No Relief as to Retaliatory Arrest and Booking Verdicts

Defendants have not identified any basis on which to overturn the jury's verdict on Plaintiffs' retaliatory arrest and booking claims.

To prove their retaliatory arrest and booking claims, Plaintiffs had to present evidence that they were engaged in activity protected by the First Amendment, that being arrested and booked would chill a person of ordinary firmness, and that the activity was a substantial or motivating factor in each Officer Defendant's decision to arrest them. (See Jury Instruction Nos. 19 & 20 (Dkt. No. 160).) The jury was instructed to find that Plaintiffs were engaged in constitutionally protected activity and that their arrests would chill a person of ordinary firmness. (Id.) The jury was therefore tasked to determine whether Plaintiffs' protected activity was a substantial or motivating factor in each Defendant's decision to arrest them, where "[a] substantial or motivating factor is a significant factor, though not necessarily the only factor." (Id.)

Construing the evidence in the light most favorable to Plaintiffs, the Court cannot conclude that there is inadequate evidence to support the jury's verdict. First, the jury heard evidence about the general atmosphere in Seattle at the time of the incident, Plaintiffs' prior interactions with Seattle Police Department officers, and the Officer Defendants' association of Plaintiffs as "protestors." Additionally, the jury heard and saw evidence that Plaintiffs were known to officers at the Precinct, including a whiteboard prominently displayed at the Precinct listing prior arrests of several Plaintiffs. Officer Nelson documented that Plaintiffs were with a "known protestor" named "Future Crystals" and Nelson himself was watching Plaintiffs' charcoal and chalk through the live-stream before arresting several Plaintiffs. They jury also viewed video of a non-party officer, who knew Plaintiff Tucson, teased Tucson while he was in a

1   holding cell, and told fellow officers "I told you guys that was Derek Tucson." (See Trial Tr.

2   June 14, 2024 at 159-16 (Dkt. No. 183).) Second, the jury heard the Officer Defendants testify

3   they do not typically arrest individuals for chalking on a sidewalk and that doing so was not

4   reasonable. Indeed, the jury saw video of officers chalking pro-police messages on a public plaza

5   in front of the West Precinct. While the Officer Defendants testified to their belief that the eco-

6   block wall was different than a sidewalk, the jury was nonetheless able to reach its own

7   conclusion if this logic was reasonable or a cover for the Officers' retaliatory animus. Third, the

8   jury saw audio/video evidence of each arrest, including video showing Officer Letizia looking

9   closely at what each Plaintiff wrote and then radioing for other officers to arrest. While Letizia

10  testified he was just resting his head, the jury was free to find that testimony incredible. Fourth,

11  the jury heard evidence that the Officer Defendants had several less-intrusive means of

12  addressing Plaintiffs' behavior that did not require an arrest or booking. And they heard

13  testimony easily found to be incredible that the Officer Defendants did not know they could

14  simply write a ticket for the conduct they observed. Fifth, the jury also heard evidence that the

15  decision to book Plaintiffs required invoking a "protestor exception" that allowed the Officer

16  Defendants to book low-level misdemeanants in King County Jail even though the County did

17  not want such arrestees during the COVID-19 pandemic. While the Court's list is not exhaustive,

18  it summarizes several key aspects of the evidence that strongly support the jury's verdict.

19      The Court also notes that the jury's decision reflects credibility determinations that

20  cannot be lightly set aside. Given the nature of Plaintiffs' claims, the jury had to determine

21  whether the Officer Defendant harbored and acted on an animus against the views Plaintiffs

22  expressed. Much of the jury's work was to divine the witnesses' credibility from testimony that

23  could be viewed favorably to either party depending on how believable each witness was. The

24

jury here rejected Officer Defendants' testimony that they were merely enforcing the Ordinance in a content-neutral manner. Given the evidence available to the jury, the Court cannot disturb that determination merely because Defendants disagree with the jury's conclusion. See Reeves, 530 U.S. at 150–51. And the Court finds nothing unreasonable in how the jury reached its verdict. The record developed at trial does not "permit[] only one reasonable conclusion, which is contrary to the jury's verdict." Hagen, 736 F.3d at 1256. As before, the Court DENIES the Motion for Directed Verdict as to these claims.

### 3.      No Relief as to Claims Against City

Defendants argue that there was inadequate evidence of an official policy or a widespread or longstanding practice or custom sufficient for it to be liable under Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658 (1978). (See Final Jury Instr. No. 21 (Dkt. No. 160); Mot. at 4-5.) The argument lacks merit.

The jury was presented with sufficient evidence that the Officer Defendants chose to book Plaintiffs in jail through a "protestor exception" that formed an official City policy or custom. Defendants Kennard and Patton testified about the protestor exception that existed at the time, stating that it was "used within the department." (Trial Tr. June 18, 2024 at 53; see id. at 53, 56- 56; Trial Tr. June 13, 2024 at 100; Trial Tr. June 14, 2024 at 40.) They jury heard evidence that this exception allowed officers to bring low-level misdemeanants involved in protests to King County Jail for booking notwithstanding the Jail's request that such individuals not be brought. While the jury also learned that the Jail had discretion to deny entry, that alone did not undermine the evidence of the City's own policy to at least attempt to book such individuals. The Jury also heard evidence concerning Seattle Police Department leadership's and the Mayor's Office's knowledge of the custom and practice, including testimony from Caedmon

1   Cahill, a former City policy director, who raised concerns about the use of the exception to

2   retaliate against anti-police protestors. Based on the evidence adduced at trial, the Court cannot

3   say that the "only . . . reasonable conclusion . . . is contrary to the jury's verdict." <u>Hagen</u>, 736

4   F.3d at 1256. As before, the Court DENIES the Motion for Directed Verdict as to this claim.

5   **4.     No Relief as to Punitive Damages**

6   Defendants argue that the jury's award of punitive damages must be overturned for the

7   same reasons that the jury could not have found them liable for the retaliatory arrests and

8   booking. (Mot. at 6-7.) The argument is unconvincing. The jury was presented with sufficient

9   evidence that supports their determination that the Officer Defendants' conduct was malicious,

10   oppressive, or in reckless disregard of Plaintiffs' rights. (<u>See</u> Final Jury Instr. No. 25.) And the

11   jury's determination largely required it to divine the intent of the Officer Defendants by

12   weighing the credibility of their testimony. <u>See</u> <u>Reeves</u>, 530 U.S. at 150–51. That further

13   insulates their award of punitive damages. The Court DENIES the Motion for Directed Verdict

14   as to punitive damages.

15   **5.     No Qualified Immunity**

16   The Court finds no basis on which to grant qualified immunity under either of Defendants

17   two theories.

18   The Court previously examined qualified immunity in its Order on the Cross-Motions for

19   Summary Judgment, to which the Court refers the Parties. (<u>See</u> Order on Cross-SJ at 31-32 (Dkt.

20   No. 116).) As the Court explained, by January 1, 2021, the law was clearly established that an

21   officer may not arrest someone for a minor infraction such as chalking on a public wall that is

22   generally unenforced even if there was probable cause. (<u>Id.</u>) Specifically, <u>Nieves v. Bartlett</u>

23   clearly established that retaliatory arrests on account of the political message of the person

24

engaged in a minor crime that is traditionally unenforced is improper even if there is probable

cause for arrest. Id., 587 U.S. __, 139 S. Ct. 1715, 1727 (2019) 139 S. Ct. at 1727. A reasonable

officer in Defendants' position would have known they could not use the Ordinance to

criminalize chalking in a public space and as a pretext to retaliate against Plaintiffs for exercising

their right to speak their political messages publicly.

Additional, as previously explained, it was up to the jury to determine whether the

Officer Defendants acted with a retaliatory animus and whether their animus was a but-for cause

of the injury. (Order on Cross-SJ at 32.) Here, the jury was presented with sufficient evidence to

determine whether the Officer Defendants acted with a retaliatory animus and that this was a but-

for cause of the arrests and bookings. The Court finds no grounds to disturb this determination,

as explained above. The Officer Defendants are not entitled to qualified immunity because the

jury found that they violated clearly established law. The Court therefore DENIES the Motion

for Directed Verdict as to qualified immunity (the fourth and fifth arguments presented).

C.    **Motion for New Trial**

Defendants seek a new trial under Rule 59 on eight distinct theories, none of which

justifies this remedy.

1.    **Legal Standard**

Under Rule 59, the Court "may, on motion, grant a new trial on all or some of the

issues—and to any party—. . . after a jury trial, for any reason for which a new trial has

heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1). The

Court is "bound by those grounds that have been historically recognized" for a new trial, "which

include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that

the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'"

1  Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (quoting Montgomery Ward & Co.

2  v. Duncan, 311 U.S. 243, 251 (1940)). The court "has 'the duty . . . to weigh the evidence as [the

3  court] saw it, and to set aside the verdict of the jury, even though supported by substantial

4  evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight

5  of the evidence." Id. (quoting Murphy v. City of Long Beach, 914 F.2d 183, 187 (9th Cir.

6  1990)). The Circuit has also held that "[t]he trial court may grant a new trial only if the verdict is

7  contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to

8  prevent a miscarriage of justice." Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d

9  493, 510 n.15 (9th Cir. 2000).

10  **2.    Verdict Not Against Weight of Evidence**

11  Defendants argue that the jury's verdict as to the Officer Defendants, the City, and

12  punitive damages was against the weight of the evidence. The Court disagrees.

13  In ruling on this aspect of the motion, the Court has discretion to weigh the evidence,

14  assess witness credibility, and view the evidence in the light most favorable to either party. See

15  Landes Const. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371–72 (9th Cir. 1987). "[I]n most

16  cases the judge should accept the findings of the jury, regardless of his own doubts in the

17  matter." Id. (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2806, at 48–49

18  (1973)). But, "[i]f, having given full respect to the jury's findings, the judge on the entire

19  evidence is left with the definite and firm conviction that a mistake has been committed, it is to

20  be expected that he will grant a new trial." Id. (quoting 11 C. Wright & A. Miller, Federal

21  Practice and Procedure § 2806, at 48–49 (1973)).

22  The jury's verdict was not against the weight of the evidence. The jury heard substantial

23  evidence concerning the motives and animus of each Officer Defendant at trial, nearly all of

24

ORDER DENYING DEFENDANTS' MOTION FOR DIRECTED VERDICT AND MOTION FOR NEW TRIAL - 9

1    which required jurors to weigh credibility from the testimony presented at trial and view the

2    objective evidence presented through the video footage. The Court gives credence to the jury's

3    determination that the justification for the arrest and booking presented by Defendants was not

4    believable and that they acted for retaliatory purposes. The Court, too, found much of the Officer

5    Defendants' testimony as to why they felt compelled to arrest and book Plaintiffs to be

6    incredible. The Officer Defendants had substantial alternative means of addressing the conduct

7    they observed, and chose the most aggressive response possible. And many of the reasons the

8    Officer Defendants identified to support their response were illogical and suggested that they

9    acted out of a particular dislike for the content of Plaintiffs' speech and beliefs. Moreover, the

10   jury heard substantial evidence that the Officer Defendants decided to book Plaintiffs at King

11   County Jail through the "protestor exception"—a widespread custom and practice used to book

12   individuals for low-level misdemeanors who would not have been accepted by King County Jail

13   due to COVID-19 related restrictions. This raised substantial doubts about the motives of the

14   Officers' Defendants booking decision and it supported the jury's verdict as to the City. And,

15   lastly, the jury heard significant testimony and observed video of the arrests that more than

16   adequately supported their punitive damage award. Each Officer Defendant provided testimony

17   from which the jury reasonably concluded the Officer Defendants acted with a particular

18   hostility and reckless disregard to Plaintiffs'' First Amendment rights. The jury's punitive

19   damages award was not against the weight of the evidence. The Court therefore DENIES the

20   Motion as to these issues.

21          **3.      No Error Regarding <u>Nieves</u>**

22          Defendants argue that the Court erred by not requiring the jury to determine whether

23   Plaintiffs were "arrested when otherwise similarly situated individuals not engaged in the same

24

1  sort of protected speech had not been." <u>Nieves</u>, 587 U.S. at 408. Specifically, they argue that the

2  Court's Instruction No. 19 erroneously included the Court's determination that Plaintiffs had

3  satisfied the <u>Nieves</u> exception to permit a retaliatory arrest claim when there is probable cause

4  for the arrest. There are several flaws in Defendants' argument.

5      First, Defendants failed to object to Instruction 19's language about which they now

6  complain. (<u>See</u> Trial Tr. June 20, 2024 at 20-21 (Dkt. No. 186).) That alone is sufficient to

7  justify denial.

8      Second, Defendants are incorrect that the jury needed to determine whether Plaintiffs

9  satisfied the <u>Nieves</u> exception. As the Court in <u>Nieves</u> explained, "when a plaintiff presents

10  objective evidence that he was arrested when otherwise similarly situated individuals not

11  engaged in the same sort of protected speech had not been" then his claim "may proceed in the

12  same manner as claims where the plaintiff has met the <u>threshold</u> showing of the absence of

13  probable cause." <u>Id.</u> at 407-08 (emphasis added). The Supreme Court repeatedly made clear in

14  <u>Nieves</u> that this is a "threshold matter" and a "threshold showing," not an element of the claim.

15  587 U.S. at 400, 408. Indeed, Justice Alito recently reaffirmed that the <u>Nieves</u> exception is a

16  "threshold requirement before [the plaintiff] can advance their claims under the <u>Mt. Healthy</u>

17  framework." <u>Gonzalez v. Trevino</u>, 602 U.S. ___, 144 S. Ct. 1663, 1671 (2024) (Alito, J.,

18  concurring) (per curiam). Here, the Plaintiffs made a sufficient showing at summary judgment

19  satisfying this threshold matter, which allowed their claims to proceed to trial under the <u>Mt.</u>

20  <u>Healthy</u> framework as identified in Instruction No. 19. Defendants have not cited to any

21  authority that makes the "threshold" <u>Nieves</u> showing an element of the retaliatory arrest and

22  booking claim. Such a requirement would be at odds with <u>Nieves</u> itself, which explained that

23  once the exception is shown, then the claim "may proceed in the same manner as claims where

24

1 | the plaintiff has met the threshold showing of the absence of probable cause." <u>Nieves</u>, 587 U.S.

2 | at 407-08.

3 | Additionally, the Court properly instructed the jury as to its determination that other

4 | similarly-situated individuals were not arrested for engaging in similar conduct. This instruction

5 | was, in fact, consistent with Defendants' request that the jury be told of the Court's summary

6 | judgment determination that there was probable cause to arrest Plaintiffs. (<u>See</u> Pretrial Tr. June

7 | 5, 2024 at 28 (Dkt. No. 142).) The Court included that language, and determined that it was

8 | equally important to inform the jury of its determination that the <u>Nieves</u> exception had been

9 | satisfied and that probable cause alone did not bar the claim. This is consistent with <u>Nieves</u> and

10 | the Court finds no error in the instruction. The Court DENIES the Motion as to this issue.

11 | **4.      No Error in Jury Instructions**

12 | Defendants argue in their Motion that the "instruction" [sic] was "confusing, misleading,

13 | and implied suspicion of Defendants' motives" (Mot. at 7.) The Court cannot understand the

14 | nature of this ambiguous request. Indeed, Defendants have not provided any argument in reply,

15 | which the Court construes as an apparent concession that the Motion did not contain a fully

16 | formed idea in the first instance. The Court DENIES the Motion as to this request.

17 | Defendants also argue that the Court erred by not providing their proposed "clarifying"

18 | language to Instructions 19 and 20. (Mot. at 8.) Specifically, Defendants claim that the Court

19 | improperly rejected the following language: "[I]t is not sufficient to meet Plaintiffs' burden on

20 | [retaliation] if you find that the Defendants were motivated by the fact that plaintiffs marked on

21 | City property without express permission." (Mot. at 8 (quoting Dkt. No. 125 at 20, 23; Dkt. No.

22 | 154 at 2).) There are two problems with this argument. First, the Defendants did not request this

23 | language in the final jury instructions. They have therefore waived this objection. Second, the

24 |

language Defendants propose is both confusing and unnecessary. The jury was already instructed

that they had to determine whether "Plaintiffs have proven by a preponderance of the evidence

that their viewpoint, as expressed in their protected activity on January 1, 2021, was a substantial

or motivating factor in the defendants' decisions" to arrest and book them. (Final Instr. Nos. 19

& 20.) Defendants' proposed language would have injected needless confusion into an issue on

which the jury was fully instructed. The Court DENIES the Motion as to this issue.

### 5.    Bike Room Video Properly Admitted

Defendants argue that they are entitled to a new trial because the Court allowed the jury

to see body-cam video showing one of the arresting officers in a bike room with "political or

offensive" items at the Precinct. (Mot. at 9.) The Court appreciates that the materials inside of

the bike room were potentially divisive—there was Trump campaign flag, a "thin blue line" flag,

a replica tombstone of a person shot and killed by Seattle Police, and other items seized from

protests. But these materials accurately reflected the inside of the precinct in which the Officer

Defendants worked. Indeed, the jury saw several video clips depicting other "thin blue line"

paraphernalia and messages critical of protestors generally. And while the bike room may have

been a place not frequently used by the Officer Defendants themselves, they had access to the

room and at least Nelson and Patton testified to accessing it. The materials inside of that room

were relevant to the retaliation claims, as it bore on the culture within the Precinct and the

general antagonistic relationship between police officers and protestors at the time. This

atmospheric evidence was relevant to and probative of the Officer Defendants' state of mind

when arresting and booking Plaintiffs. The Court found and continues to find that its relevance

was not outweighed by any prejudice. In their Motion, Defendants have not articulated how they

were prejudiced by the video evidence. As Defendants' reply itself states, the items in the bike

room contained not just a "Trump Flag, but also a poster with a raised fist associated with movements to the other end of the political spectrum." (Reply at 4.) The scene depicted in the bike room could have cut in favor of either party and the Court stands by its decision to allow the video. Defendants fail to identify any prejudice or error that would warrant a new trial, and the Court DENIES the Motion as to this issue.

### 6.     Vaccine Testimony Relevant

Defendants seek a new trial on the theory that Defendant Letizia should not have been asked about his beliefs about vaccines because they were irrelevant and prejudicial. This argument lacks merit. During a sidebar discussion about this very testimony, Plaintiffs' counsel explained that Letizia's outspoken criticism of government mandates for COVID-19 vaccines was relevant to the question of his own political views and his potential antipathy towards Plaintiffs. (Trial Tr. June 17, 2024 at 155-56 (Dkt. No. 184).) On the one hand Letizia was personally critical of what he saw as governmental intrusion into his own liberty, while he was willing to intrude on Plaintiffs' free speech activity by causing their arrests. This issue was relevant to present to the jury, as it probed Letizia's potential bias and animus towards Plaintiffs. And any prejudice has not been identified or explained. The Court DENIES the Motion as to this issue.

### 7.     Cahill Testimony and Exhibits do not Justify New Trial

Defendants argue that they are entitled to a new trial because Cahill provided hearsay testimony, including "testimony about Exhibits 43 and 52 containing inadmissible hearsay." (Mot. at 11.) The Court finds no merit in these arguments.

Defendants identify several pages of testimony from Cahill, claiming that she lacked foundation and was therefore providing inadmissible hearsay. Aside from identifying fragments

of testimony, Defendants do not provide any argument as to what specific statements were hearsay and why they should have been excluded. Such vague argument is not sufficient to entitle Defendants to a new trial. At trial, Cahill testified about her personal knowledge as Policy Director at the Seattle Office of Civil Rights, which included information she learned from various City officials. The Court found no merit to Defendants' objections during trial and Defendants have not carried their burden to show that they are entitled to a new trial even if this was hearsay.

The Court also finds no merit to Defendants objections to Cahill's testimony about Exhibits 42 and 53. These exhibits did not contain hearsay under Fed. R. Evid. 801(d)(2)(D), a rule that Defendants fail to cite. The emails document conversations between Cahill and other City employees and Cahill was entitled to provide testimony about them. Additionally, Defendants provide no reasoning to support their requested relief. Defendants admit that the Court allowed the documents as exceptions to hearsay, but contend "there was no showing for those rules to apply." (Mot. at 11.) Defendants fail to provide any reasoning or argument to support their claim. This is not adequate to obtain a new trial.

The Court DENIES the Motion as to this issue.

### 8.    No Cumulative Error

Defendants contend that the Court should order a new trial because of "numerous evidentiary issues" and flawed jury instructions. (Mot. at 12.) Having found no merit in Defendant's arguments concerning the evidence or jury instructions, the Court similarly finds no evidence of cumulative error that would warrant a new trial. The Court DENIES the Motion as to this issue.

**9.      The Court Did Not Advantage Either Party**

Defendants claim the Court unfairly helped Plaintiffs during closing and at two other points during the trial. This argument does not convince the Court that it acted improperly or that a new trial is warranted.

First, as to closing argument, the Court did nothing more than ensure it provided a complete and informed ruling on Plaintiffs' objections. Plaintiffs made an objection as to the completeness of certain trial testimony defense counsel quoted during closing, and, in order to consider the objection in full, the Court reviewed the transcript. (Trial Tr. June 20, 2024 at 118-23.) The Court then ruled on the objection in Plaintiffs' favor, and to ensure the jury was fully informed as to the Court's ruling, it provided Plaintiffs with the transcript. The Court so acted to avoid juror confusion and to address a problem of Defendants' own creation. The Court finds no flaw in its decision and Defendants cite to no authority that would justify a new trial based on the Court's actions.

Second, the Courts no merit in Defendants' argument that it improperly commented on the evidence. The Court pointed out that the Parties had created potential juror confusion regarding the terms "arrest" and "charge" and with regard to part of Cahill's testimony. The Court's instruction to clarify the confusion falls within the Court's role. As the Supreme Court long ago explained, "[i]n a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law." Quercia v. United States, 289 U.S. 466, 469 (1933). The Court may "assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, by drawing their attention to the parts of it which he thinks important, and he may express his opinion upon the facts, provided he makes it clear to the jury that all matters of fact are

1    submitted to their determination." Id. Defendants have not identified any impropriety or any

2    authority that would countenance a new trial based on the Court executing on its core function as

3    "governor of the trial." Id. The Court DENIES the Motion as to this issue.

4                                                **CONCLUSION**

5          Defendants do not advance any persuasive argument that would warrant a directed

6    verdict or a new trial. Both motions fail to identify any grounds to set aside the jury's verdict or

7    to empanel a new one. The Court DENIES both Motions, but GRANTS Plaintiffs' Motion for

8    Leave.

9          The clerk is ordered to provide copies of this order to all counsel.

10         Dated August 27, 2024.

11

12                                              Marsha J. Pechman
                                                United States Senior District Judge

13

14

15

16

17

18

19

20

21

22

23

24