UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEREK TUCSON, ROBIN SNYDER, MONSIEREE DE CASTRO, and ERIK MOYA-DELGADO, | CASE NO. C23-17 MJP |
| Plaintiffs, | ORDER ON PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION |
| v. | |
| CITY OF SEATTLE, ALEXANDER PATTON, DYLAN NELSON, RYAN KENNARD, and MICHELE LETIZIA, | |
| Defendants. | |

This matter comes before the Court on Plaintiffs' Motion for Permanent Injunction. (Dkt. No. 188.) Having reviewed the Motion, the Response (Dkt. No. 207), the Reply (Dkt. No. 213), and all supporting materials, the Court GRANTS in part and DENIES in part the Motion.

**BACKGROUND**

Having obtained a $680,000 jury verdict on their retaliatory arrest and retaliatory booking claims, Plaintiffs now seek a permanent injunction against Defendants. Plaintiffs ask the Court to

enjoin Defendants—four Seattle Police Officers and the City of Seattle—from enforcing the

City's property destruction ordinance, SMC 12A.08.020(A)(2) (the "Ordinance"), against them

for "writing in chalk, charcoal or other temporary, non-destructive media in the traditional public

forum based on the actual or perceived content or viewpoint of the writing." (Mot. at 1.) They

also ask the Court to "order that the City expunge records of the January 1, 2021, arrests from its

records and to notify other law enforcement agencies that the arrests and jail booking were in

violation of the United States Constitution." (Id.)

The Court reviews the evidence Plaintiffs highlight from trial that they believe is relevant

to their pending Motion. First, the jury found the Officer Defendants had arrested and booked

Plaintiffs because of the content of their messages. (Mot. at 3.) Second, the jury heard evidence

that in 2021 the City had a "protestor exception" that was used to book those engaged in protests

for low-level misdemeanors that would otherwise not have qualified for booking during the

COVID-19 pandemic. Third, the jury found the City liable for maintaining a retaliatory booking

policy that the Officer Defendants followed on January 1, 2021. Fourth, the jury heard evidence

that Seattle police officers, including the Officer Defendants, do not believe it reasonable to

arrest individuals for chalking on the sidewalk. (Mot. at 4-5.)

Plaintiffs also contend "each of the Plaintiffs testified that Defendants' actions caused

them to cease engaging in political chalking as they had done previously." (Mot. at 7 (citing

testimony from Plaintiffs Tucson and Moya-Delgado only).) Tucson testified that he "essentially

stopped protesting and chalking and all related activities" within a few weeks after being arrested

on January 1, 2021. (Trial Tr. June 13, 2023 at 18 (Dkt. No. 182).) Moya-Delgado testified that

"[a]t this point we were being arrested for children's sidewalk chalk ... . I was not allowed to

protest in the City of Seattle." (Trial Tr. June 14, 2024 at 118 (Dkt. No. 183).) Plaintiffs identify

no testimony from the other two Plaintiffs regarding their desire to chalk or the chilling thereof, citing instead their declarations filed with briefing on the cross-motions for summary judgment. (Mot. at 7.) In these March 2024 declarations, Plaintiff each state they are "currently prevented and deterred from engaging in my desired speech" because of their fear of being arrested for violated the Ordinance. (Dkt. Nos. 98-101.) Plaintiffs also cite to their March 2023 declarations, which generally state that each Plaintiff would likely chalk again in the presence of police if the Ordinance was not enforceable against them for chalking in the public right of way. (Dkt. Nos. 18-21.)

In support of their request to have the records of the January 1, 2021 arrest expunged, Plaintiffs cite to two pieces of evidence adduced at trial. First, De Castro testified that she was stopped at the border with Canada and asked questioned about her arrest record, which included her arrest for chalking on January 1, 2021. (Trial Tr. June 17, 2024 at 82-83 (Dkt. No. 184).) De Castro also testified that she was arrested three times by the Seattle Police Department and once by the Washington State Patrol. (Id. at 58.) Second, Moya-Delgado testified that he was "fairly certain" he was denied housing because his background check showed he was arrested for property destruction. (Trial Tr. June 14, 2024 at 132 (Dkt. No. 183); see id. at 116-17, 131-32.) But Defendants also elicited testimony from Moya-Delgado that his arrest records reflected a prior arrest for property damage, obstruction, and trespassing at an unrelated event, and that the landlord who denied him housing also cited his lack of credit score. (Id. at 131-32.)

## ANALYSIS

**A.    Legal Standard**

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." eBay Inc. v.

MercExchange, L.L.C., 547 U.S. 388, 391 (2006). "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." Id.

**B.      Plaintiffs Not Entitled to Permanent Injunction of the Ordinance**

The Court does not find that the equities weigh in favor of a permanent injunction preventing Defendants from enforcing the Ordinance against Plaintiffs for chalking in public areas. Plaintiffs fail to identify evidence of an irreparable harm likely to occur or that the jury's favorable verdict was inadequate to avoid future irreparable harm. The Court reviews the eBay factors, noting that the third and fourth factor are considered jointly.

**1.      Irreparable Injury**

There is little dispute that Plaintiffs' unconstitutional arrests deprived them of their First Amendment rights and caused an irreparable injury. See Elrod v. Burns, 427 U.S. 347, 373 (1976). But missing from Plaintiffs' Motion is evidence that they face an ongoing or cognizable threat of further deprivation of their First Amendment rights absent the permanent injunction. See MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (9th Cir. 1993) ("As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations.")

Plaintiffs identify no testimony from trial that they wish to engage in chalking in public rights of way, but do not because they fear being arrested for violating the Ordinance. Moya-Delgado and Tucson testified at trial that after their arrests they essentially stopped protesting. But they were not asked whether they feared being arrested again if they used chalk or charcoal

in public rights of way. Nor were they asked whether they wished to continue chalking in public rights of way, but felt chilled in doing so. Additionally, the testimony at trial made clear that Plaintiffs' chalking activities were part of the overall protest movement in Seattle after the murder of George Floyd. Once the protests wound down, Plaintiffs' chalking-related protest activities ceased. Indeed, Moya-Delgado himself no longer lives in Seattle. So while Plaintiffs filed declarations before trial suggesting that they may engage in future political chalking but fear arrest, (see Dkt. Nos. 18-21, 98-101), those declarations do not track the trial testimony. Had Plaintiffs wished to build a record of their chilled speech activities, they could have done so at trial. But the testimony elicited does not leave the Court with a record showing that Plaintiffs intend to chalk in public rights of way, but do not because they reasonably fear enforcement of the Ordinance against them.

Plaintiffs have also failed to identify a cogent reason why the jury's verdict and the Court's orders have had no impact on their purported fear of being arrested for chalking in the public right of way. Plaintiffs argue that during trial none of the Officers expressed contrition for having arrested Plaintiffs. But that is hardly surprising during a trial, where the legality of the arrests was hotly disputed and the testimony was presented before the jury reached its verdict. Defendants believed that their enforcement of the Ordinance for chalking on the eco-block wall and Precinct was legal and that the eco-block wall was distinct from the sidewalk—a location where Defendants agreed the Ordinance should not be enforced. Absent is any evidence that Defendants are likely to arrest Plaintiffs for chalking in the public right of way now that the jury found them liable for violating Plaintiffs' constitutional rights and awarded not only substantial compensatory but also punitive damages against them. The eco-block wall itself is now removed from the Precinct. And in its order on the cross-motions for summary judgment, the Court

clarified that any similar temporary wall erected over the sidewalk is entitled to the same

protections as a sidewalk—a space where the Officer Defendants agreed they would not enforce

the Ordinance. Taken together, this evidence does not support a finding that the Officer

Defendants are likely to arrest Plaintiffs again for chalking in public rights of way. See MAI, 991

F.2d at 520.

Additionally, the Court finds a lack of evidence that the City's "protestor exception" is

likely to cause Plaintiffs an irreparable injury. At trial, Plaintiffs adduced no evidence that this

COVID-19 era policy continues to be in place or that it might be used against Plaintiffs again.

And the mere fact that the City defended this policy is not evidence that it continues to be in

effect or might be used again. The Court finds inadequate evidence of irreparable injury arising

out of this policy.

Given the lack of evidence of an irreparable injury without a permanent injunction, the

Court DENIES Plaintiffs' Motion.

**2.      Availability of Other Remedies**

Even if Plaintiffs have shown potential irreparable harm, they have not explained why

Defendants are likely to arrest and book them for chalking in the public right of way or on

temporary structures erected over the right of way.

Plaintiffs argue that because Defendants stood by their actions through trial, they cannot

be trusted to act any differently in the future. (Mot. at 16-17.) This argument lacks evidentiary

and logical support. While Defendants testified that they believed their arrest and booking of

Plaintiffs was lawful, they did not testify they would arrest Plaintiffs again even if the jury found

them liable. The Court finds no evidence to back up Plaintiffs' assumption that Defendants will

not change their future conduct in light of the jury's substantial monetary award and significant

1  finding that Defendants' conduct was malicious, oppressive, or in reckless disregard of

2  Plaintiffs' rights. (See Final Jury Instr. No. 25 (Dkt. No. 160).) The jury sent a clear message to

3  the Officer Defendants and the City that their arrests and booking were unlawful retaliation. The

4  Court sees no evidence that Defendants will not heed the jury's verdict. And the Court lacks any

5  evidence that the City has or is likely to use a protestor exception to book individuals on account

6  of the content of their speech.

7          Plaintiffs also ignore the impact from the Court's finding at summary judgment that the

8  temporary eco-block wall was legally indistinguishable from sidewalks—both are traditional

9  public fora. At trial, Defendants testified that they viewed the eco-block wall as part of the

10 Precinct and separate from the sidewalks. So while Defendants all agreed chalking on sidewalks

11 was not criminal, they believed marking a wall was impermissible. The Court's Order has now

12 explained why that view is incorrect. And the Court has no reason to believe that Defendants and

13 the City will not heed that ruling in shaping their future behavior. Again, Plaintiffs offer no

14 evidence to support a finding that Defendants will engage in similar future conduct.

15         Absent evidence to the contrary, the Court puts faith in the City and the Officers to learn

16 from this incident and take to heart the Jury's verdict and the Court's substantive rulings.

17 Plaintiffs have not cited to facts or logic sufficient to show that the substantial monetary award,

18 punitive damage finding, and other legal determinations from this litigation are inadequate to

19 protect their rights. For this independent reason, the Court DENIES the Motion.

20         **3.      Public Interest and Balance of Hardships**

21         Given the Court's findings as to the first two elements of the eBay test, it does not

22 separately balance the public interest and hardships.

23

24

**C.      An Injunction Proper as to Expungement**

Plaintiffs have also asked the Court to issue permanent injunction ordering the City to expunge "Plaintiffs' arrest record dated January 1, 2021, and to take all steps necessary to ensure the record is removed from other local and national databases[.]" (Mot. at 14.) In opposition, Defendants argue that the request is vague and overbroad. The Court finds that an order of expungement is appropriate.

As Plaintiffs note, the Court has equitable power to expunge criminal arrests that are the result of unconstitutional police action. See Maurer v. Individually & as Members of Los Angeles Cnty. Sheriff's Dep't, 691 F.2d 434, 437 (9th Cir. 1982) ("It is well settled that the federal courts have inherent equitable power to order "'the expungement of local arrest records as an appropriate remedy in the wake of police action in violation of constitutional rights.'" (quoting Sullivan v. Murphy, 478 F.2d 938, 968 (D.C. Cir.), cert. denied, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973))). But this also requires a showing that the Plaintiff "has no adequate remedy under state law for his claim." Id.

The Court finds that an injunction is appropriate under the eBay injunction standard. Id., 547 U.S. at 391. First, though slim, Plaintiffs have identified evidence of irreparable injury should their arrest records continue to reflect the January 1, 2021 arrests that have been found unconstitutional. De Castro testified that she was subject to questioning at the Canada border that included questions about this arrest, and Moya-Delgado believes this arrest prevented him from obtaining housing. These harms are likely to continue should the arrest records remain on each Plaintiffs' criminal record. That said, the Court recognizes that each Plaintiff has also been arrested multiple times by Seattle Police, meaning that they will not have clean arrest records. But that fact does not mean that there is no harm from this additional arrest, particularly given

1   the nature of the arrest and its cumulative effect. Second, the harm from having an arrest found

2   to be unconstitutional on one's criminal history cannot been remedied through the award of

3   monetary damages. Being denied housing or being detained at the border for a criminal arrest

4   that was unconstitutional are injuries the jury's verdict has not and cannot remedy. Third, as to

5   the public interest and hardship, the balance weighs in Plaintiffs' favor. Defendants have not

6   identified any public interest that weighs in favor of criminal records reflecting unconstitutional

7   arrests. And as to the claimed burden, Defendants argue that the term "expunge" is vague and

8   that any order requiring all departments of the City to destroy records about this case and the

9   arrests would be overbroad. Defendants raise a reasonable concern concerning the lack of

10  specificity in Plaintiffs' request and their failure to identify the specific data sources that should

11  be impacted. But these are technical issues which the Court addresses in its order below.

12      The Court finds that a permanent injunction should issue to ensure the arrest records the

13  City of Seattle maintains as to each Plaintiff reflects the jury's verdict. Specifically, the Court

14  ORDERS as follows: (1) the Seattle Police Department shall identify all databases that it

15  possesses and maintains which report or reflect the January 1, 2021 arrest of each Plaintiff; (2) as

16  to each Plaintiff, the Seattle Police Department shall delete from these databases any information

17  reflecting or reporting each Plaintiff's arrest on January 1, 2021; (3) the Seattle Police

18  Department shall ensure that all data it provides to any third party, whether public or private,

19  about each Plaintiff's arrest record omits the January 1, 2021 arrests; and (4) the Seattle Police

20  Department shall send notice to the Washington State Patrol and the Federal Bureau of

21  Investigations that each Plaintiff's January 1, 2021 arrest was found unconstitutional and has

22  been removed from the criminal records held by the Seattle Police Department. Within 30 days

23  of entry of this Order, the City of Seattle must complete all four steps listed above and file on the

24

docket a certification attesting to its completion of the four steps. The Court finds this an adequate remedy to ensure complete and accurate criminal records are maintained by the Seattle Police Department and which reflect the jury's verdict. By limiting this to the Seattle Police Department's records, the Court has narrowed the reach of the injunction to identify the database of criminal records that appears to be the source of the harm. While Plaintiffs' request could have been better researched and more specific, the Court believes this tailoring addresses the City's breadth and burden concerns.

**D.      Request to Strike**

Defendants ask the Court to strike the proposed order Plaintiffs' submitted with their Motion. (Resp. at 11.) The Court appreciates Defendants' concern about exceeding the word limit, but finds that the proposed order was appropriate. Detailed proposed orders are always appreciated by the Court. They help inform the Court as to the specific nature of the relief requested. It was for that very reason the Court invited Plaintiffs to prepare and file a proposed order that identified the specific language of the injunction they sought. (See Trial Tr. June 21, 2024 at 16 ("[I]f you're going to ask me for an injunction, I would surely like to know exactly what wording you think would be appropriate.").) For these reasons, the Court finds that Plaintiffs' proposed order was an appropriate filing to which no word limit applies and which does not count against their briefing word limit. The Court thus DENIES the request to strike.

**CONCLUSION**

The Court finds no merit in Plaintiffs' request for an order enjoining the Defendants from enforcing the Ordinance against them for future chalking activities in the public right of way. Plaintiffs have not identified sufficient evidence necessary to justify this equitable remedy. The Court therefore DENIES the Motion as to this request. But the Court finds a permanent

injunction is appropriate to require the City of Seattle to ensure the Seattle Police Department updates its criminal database(s) to remove data showing that Plaintiffs were arrested on January 1, 2021. This targets an irreparable injury that cannot be remedied through other relief, while imposing a limited burden on the City that serves the public interest in having accurate records. As to this request alone the Court GRANTS the Motion on the terms and timeline identified above.

The clerk is ordered to provide copies of this order to all counsel.

Dated September 6, 2024.

Marsha J. Pechman
United States Senior District Judge